# EXHIBIT "A"

S1400CV201400971

FILED
2014 SEP -2 PM 4: 08
LYNN CEE
CLERK OF SUPERIOR COURT
YUMA ARIZONA 85364

1  K. Thomas Slack, Bar No. 013412
2  Beale, Micheaels & Slack, P.C.
   7012 N. 18th St.
3  Phoenix, AZ 85020
   tslack@beale-micheaels.com
4
5  Thomas M. Richardson, Bar No. 018582
   tommy@friedlrichardson.com
6  Krista T. McCarthy, Bar No. 026969
7  krista@friedlrichardson.com
   **FRIEDL RICHARDSON**
8  19840 N. Cave Creek Road
   Phoenix, Arizona 85024
9  (602) 553-2220
10 Attorneys for Plaintiffs

11            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
12
                 IN AND FOR THE COUNTY OF YUMA
13

14 **MICHAEL THOMPSON and RHONDA**        )  NO. S1400CV20140O971
   **THOMPSON, Husband and Wife;**         )
15                                          )
16              **Plaintiffs,**             )  **COMPLAINT**
                                            )
17         vs.                              )  (Tort Motor Vehicle)
                                            )
18 **JET RENT, a Tradename; MARK**          )       LARRY KENWORTHY
   **FRANDSEN and JANE DOE FRANDSEN,**      )
19 **Husband and Wife; DOES 1-10; ABC**     )
   **CORPORATIONS 1-10; XYZ**               )
20 **PARTNERSHIPS 1-10,**                   )
                                            )
21                                          )
              **Defendants.**               )
22

23      Plaintiffs through the law firm of FRIEDL RICHARDSON, allege as follows:

24  1.  Plaintiffs are residents of the State of Illinois.

25  2.  Defendant Mark Frandsen is a resident of Yuma County, State of Arizona, and the cause

26      of action as hereinafter alleged, arose in said County and State.

27  3.  All allegations alleged herein occurred on or about February 19, 2014.

28

1

4. At all times alleged herein, Defendant Mark Frandsen was acting individually and on behalf of the marital community of Mark Frandsen and Jane Doe Frandsen, and that in this regard, Plaintiffs requests leave of this Court to supply the correct name of Defendant Jane Doe Frandsen when ascertained.

5. At all times material, employees or agents of Defendant Mark Frandsen were acting vicariously through Defendant Mark Frandsen, or under such other circumstances as to justify imputing responsibility to Defendant Mark Frandsen for the negligent, willful and wanton conduct alleged herein.

6. Does 1-10 are fictitiously named Defendants whose action/inaction and/or negligent conduct in the events herein described caused injuries to the Plaintiffs. These fictitiously named Defendants were acting in furtherance of their marital communities. These Defendants are sued under a fictitious name until their true identify becomes known.

7. ABC Corporations 1-10 are corporations existing under the laws of an unknown jurisdiction whose action/inaction and/or negligent conduct in the events herein described caused injuries to the Defendant.

8. XYZ Partnerships 1-10 are partnerships existing under the laws of an unknown jurisdiction whose action/inaction and/or negligent conduct in the events herein described caused injuries to the Plaintiff.

9. Jurisdiction and venue are appropriate in the Superior Court of Yuma County, State of Arizona.

10. Before February 19, 2014, Defendant Mark Frandsen operated a business with the tradename Jet Rents located at 2972 S. Kyla Avenue, Yuma, Arizona (Hereinafter "Jet Rent").

11. Before February 19, 2014, Defendant Mark Frandsen was engaged in the business of leasing off-highway vehicles for rent to the general public.

12. Before February 19, 2014, Defendant Mark Frandsen and/or his employees/agents purchased a Polaris RZR.

13. The Polaris RZR came with instructions for operation and warnings for speed and obstacles.

14. Before February 19, 2014, Defendant Mark Frandsen was engaged in the business of

leasing a Polaris RZR to the general public.

15. Before February 19, 2014, Defendant Mark Frandsen and/or his employees/agents would direct customers to specific areas to operate the off highway vehicles.

16. Before February 19, 2014, Defendant Mark Frandsen and/or his employees/agents were familiar with the speed capacity of the Polaris RZR that Jet Rent would rent to customers.

17. Before February 19, 2014, Defendant Mark Frandsen and/or his employees/agents were familiar with the obstacles the Polaris RZR would likely encounter in the customer's use of the Polaris RZR.

18. Before February 19, 2014, Defendant Mark Frandsen and/or his employees/agents were familiar with hidden obstacles and the dangers of the trails where Defendant Mark Frandsen and/or his employees/agents would direct the customers use the Polaris RZR.

19. On February 19, 2014, Defendant Mark Frandsen and/or his employees/agents leased a Polaris RZR to Plaintiff Michael Thompson.

20. On February 19, 2014, Defendant Mark Frandsen and/or his employees/agents failed to provide a warning to Plaintiff Michael Thompson regarding the obstacles Plaintiff Michael Thompson would encounter.

21. On February 19, 2014, Defendant Mark Frandsen and/or his employees/agents failed to provide instructions to Plaintiff Michael Thompson regarding the use of the Polaris other than to say how to turn the machine on and place it in gear.

22. On February 19, 2014, Defendant Mark Frandsen and/or his employees/agents directed Plaintiff Michael Thompson and Plaintiff Rhonda Thompson to an area known by Defendant Mark Frandsen and/or his employees/agents to ride the Polaris RZR.

23. On February 19, 2014, Defendant Mark Frandsen and/or his employees/agents failed to provide a warning to Plaintiff Michael Thompson regarding the speed potential of the Polaris.

24. On February 19, 2014, Defendant Mark Frandsen and/or his employees/agents represented to Plaintiff Michael Thompson that the Polaris RZR was safe for the obstacles where Defendant Mark Frandsen directed Plaintiff Michael Thompson to ride the Polaris RZR.

3

## COUNT ONE
### (Negligence)

25. All paragraphs of this pleading are re-alleged and incorporated as though fully set forth herein.

26. On February 19, 2014, a reasonably careful renter of off-highway vehicles had a duty to provide the necessary instructions and warning to customers to assist with customer safety.

27. On February 19, 2014, Defendant Mark Frandsen and/or his employees/agents breached the aforementioned duties because he/they failed to provide any instruction or warning for the use of the Polaris RZR.

28. Defendant Mark Frandsen and/or his employees/agents knew or should have known that allowing customers to ride the Polaris RZR on the dangerous terrain with no isnstruction or warning presented an unreasonable and/or substantial risk of harm to others.

29. As a direct and proximate result of Defendant Mark Frandsen and/or his employees/agents breach of these duties, Plaintiff Michael Thompson sustained physical injuries and damages.

## COUNT TWO
### (A.R.S. § 12-681 Failure to Warn)

30. All paragraphs of this pleading are re-alleged and incorporated as though fully set forth herein.

31. Defendant Mark Frandsen had a duty as the lessor of a Polaris RZR, to warn or protect against a danger or hazard in the use or misuse of the Polaris RZR.

32. On February 19, 2014, Defendant Mark Frandsen breached the aforementioned duties because he failed to provide a warning or protection against the dangers of the use or misuse of the Polaris RZR and knew or should have know that such failure presented an unreasonable and/or substantial risk of harm to others.

33. By failing to warn as described above, Defendant Mark Frandsen violated A.R.S. § 12-681; violation of this statute is negligence *per se*.

34. As a direct and proximate result of Defendant Mark Frandsen's breach of his duties, Plaintiff Michael Thompson sustained physical injuries and damages resulting from the use of the Polaris RZR.

### COUNT THREE
### (Negligence)
### (A.R.S. § 12-681 Failure to Provide Proper Instructions)

35. All paragraphs of this pleading are re-alleged and incorporated as though fully set forth herein.

36. Defendant Mark Frandsen had a duty as the lessor of a Polaris RZR, to provide proper instructions for the use of the Polaris RZR to Plaintiff Michael Thompson when leasing the product to Plaintiff Michael Thompson.

37. On February 19, 2014, Defendant Mark Frandsen breached the aforementioned duties because he failed to provide proper instructions in the use of the Polaris RZR and knew or should have know that such failure presented an unreasonable and/or substantial risk of harm to others.

38. By failing to provide proper instructions for the use of the Polaris RZR as described above, Defendant Mark Frandsen violated A.R.S. § 12-681; violation of this statute is negligence *per se.*

39. As a direct and proximate result of Defendant Mark Frandsen's breach of his duties, Plaintiff Michael Thompson sustained physical injuries and damages resulting from the use of the Polaris RZR.

40. As a direct and proximate result of Defendant Mark Frandsen's breach of his duties, Plaintiff Michael Thompson lost wages as a result of his injuries.

41. As a direct and proximate result of Defendant Mark Frandsen's breach of his duties, Plaintiff Michael Thompson incurred medical expenses and will incur future medical expenses physical injuries and damages resulting from the use of the Polaris RZR.

42. As a direct and proximate result of Defendant Mark Frandsen's breach of his duties, Plaintiff Rhonda Thompson sustained a loss of consortium and loss of companionship.

43. WHEREFORE, Plaintiff Michael Thompson, seeks judgment against Defendants and each of them as follows:

1. For general damages in amounts to be determined at trial;

1

2. For special damages in amounts to be determined at trial;

2

3. For lost wages; and

3

4. For such other and further relief as this court deems just and proper.

4

DATED this 26 day of August, 2014.

5

FRIEDL RICHARDSON

6

7

By _____

8

THOMAS M. RICHARDSON
19840 N. Cave Creek Road

9

Phoenix, Arizona 85024
Attorney for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

| | |
|---|---|
| 1 | Thomas H. Allen, State Bar #11100 |
| | Katherine A. Sanchez, State Bar #30051 |
| 2 | **ALLEN MAGUIRE & BARNES, PLC** |
| | 1850 N. Central Avenue, Suite 1150 |
| 3 | Phoenix, Arizona 85004 |
| | Office: (602) 256-6000 |
| 4 | Fax: (602) 252-4712 |
| | Email: tallen@ambazlaw.com |
| 5 | Email: ksanchez@ambazlaw.com |

FILED

2014 DEC 16 PM 2: 14

LYNN FAZZ
CLERK OF SUPERIOR COURT
YUMA ARIZONA 85364

6  Attorneys for Defendants
7  Mark and Veronica Frandsen

8  **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9  **IN AND FOR THE COUNTY OF YUMA**

| | | |
|---|---|---|
| 10 | MICHAEL THOMPSON and RHONDA THOMPSON, husband and wife, | Case No. S1400CV201400971 |
| 11 | | |
| 12 | Plaintiffs, | |
| 13 | v. | **ANSWER TO COMPLAINT** |
| 14 | JET RENT, a Tradename; MARK FRANDSEN and JANE DOE FRANDSEN, husband and wife; DOES 1-10; ABC Corporations 1-10; XYZ PARTNERSHIPS 1-10, | |
| 15 | | |
| 16 | | |
| 17 | Defendants. | |

18      Mark and Veronica Frandsen (the "Frandsens" or "Defendants"), by and through

19  undersigned counsel, hereby answer Plaintiffs' Complaint as follows:

20      1.      Lack information sufficient to form a belief as to the truth of the allegations

21  contained in Paragraph 1 and therefore deny the same.

22      2.      Admit the allegations contained in Paragraph 2.

23      3.      Deny the allegations contained in Paragraph 3.

24      4.      Admit the allegations contained in Paragraph 4.

25      5.      Deny the allegations contained in Paragraph 5.

26      6.      Lack information sufficient to form a belief as to the truth of the allegations

27  contained in Paragraph 6 and therefore deny the same.

28      7.      Lack information sufficient to form a belief as to the truth of the allegations

1    contained in Paragraph 7 and therefore deny the same.

2        8.      Lack information sufficient to form a belief as to the truth of the allegations

3    contained in Paragraph 8 and therefore deny the same.

4        9.      Admit the allegations contained in Paragraph 9.

5       10.      Admit the allegations contained in Paragraph 10.

6       11.      Admit the allegations contained in Paragraph 11.

7       12.      Admit the allegations contained in Paragraph 12.

8       13.      Admit the allegations contained in Paragraph 13.

9       14.      Admit the allegations contained in Paragraph 14.

10      15.      Deny the allegations contained in Paragraph 15.

11      16.      Admit the allegations contained in Paragraph 16.

12      17.      Deny the allegations contained in Paragraph 17.

13      18.      Deny the allegations contained in Paragraph 18.

14      19.      Admit the allegations contained in Paragraph 19.

15      20.      Deny the allegations contained in Paragraph 20.

16      21.      Deny the allegations contained in Paragraph 21.

17      22.      Deny the allegations contained in Paragraph 22.

18      23.      Deny the allegations contained in Paragraph 23.

19      24.      Deny the allegations contained in Paragraph 24.

20                               **COUNT ONE**

21                               **(Negligence)**

22      25.      Defendants incorporate by reference all of the preceding responses as if fully

23    restated herein.

24      26.      Deny the allegations contained in Paragraph 26.

25      27.      Deny the allegations contained in Paragraph 27.

26      28.      Deny the allegations contained in Paragraph 28.

27      29.      Deny the allegations contained in Paragraph 29.

28    ///

1

## COUNT TWO

2

### (A.R.S. § 12-681 Failure to Warn)

3       30.     Defendants incorporate by reference all of the preceding responses as if fully

4   restated herein.

5       31.     Deny the allegations contained in Paragraph 31.

6       32.     Deny the allegations contained in Paragraph 32.

7       33.     Deny the allegations contained in Paragraph 33.

8       34.     Deny the allegations contained in Paragraph 34.

9

## COUNT THREE

10

### (Negligence)

11

### (A.R.S. § 12-681 Failure to Provide Proper Instructions)

12      35.     Defendants incorporate by reference all of the preceding responses as if fully

13   restated herein.

14      36.     Deny the allegations contained in Paragraph 36.

15      37.     Deny the allegations contained in Paragraph 37.

16      38.     Deny the allegations contained in Paragraph 38.

17      39.     Deny the allegations contained in Paragraph 39.

18      40.     Deny the allegations contained in Paragraph 40.

19      41.     Deny the allegations contained in Paragraph 41.

20      42.     Deny the allegations contained in Paragraph 42.

21

## AFFIRMATIVE DEFENSES

22      1.      For their first separate and affirmative defense to Plaintiffs' Complaint, and each

23   allegation therein, Defendants allege that Plaintiffs have waived the right to maintain the action
     filed in this case.  *See* Rental Agreement and Waiver attached as **Exhibit A**.

24      2.      For their second separate and affirmative defense to Plaintiffs' Complaint, and

25   each allegation therein, Defendants allege that Plaintiffs failed to mitigate the alleged damages, if
     any, which they claim to have sustained, and their recovery, if any, should be barred or
26   diminished accordingly.

27

28

I:\3000\3900\3926 - Frandsen, Mark & Veronica\02 Pleadings\Thompson v. Jet Rent et al\AnswertoComplaint.doc

3.      For their third separate and affirmative defense to Plaintiffs' Complaint, and each allegation therein, Defendants allege that the Complaint fails to state a claim, or any cause of action against Defendants.

4.      For their fourth separate and affirmative defense to Plaintiffs' Complaint, and each allegation therein, Defendants allege that Plaintiffs knew, or should have known, of the purported facts alleged to constitute each and every purported cause of action for an unreasonably long period of time prior to the commencement of this action and did not give notice of the same to Defendants.

5.      For their fifth separate and affirmative defense to Plaintiffs' Complaint, and each allegation therein, Defendants allege that Plaintiffs' causes of action fail for lack of privity.

6.      For their sixth separate and affirmative defense to Plaintiffs' Complaint, and each allegation therein, Defendants allege that on the basis of future discovery and without waiver of any appropriate affirmative defenses, those affirmative defenses contained within Rule 8(c) of the Arizona Rules of Civil Procedure, are hereby incorporated by this reference, just as fully and to the extent as if fully set forth herein at length.

7.      All allegations not specifically admitted herein are hereby denied.

**WHEREFORE**, Defendant prays for judgment as follows:

      A.  That Plaintiffs take nothing by way of their Complaint against Defendants;

      B.  For a declaration that Defendants are not liable to Plaintiffs;

      C.  For costs and attorneys' fees incurred herein;

      D.  For such other relief as the Court deems just and proper.

DATED:  December 16, 2014.

      **ALLEN MAGUIRE & BARNES, PLC**

Katherine A. Sanchez
1850 N. Central, Suite 1150
Phoenix, Arizona  85004
Attorneys for Mark and Veronica Frandsen

-4-

1    **FILED** on December 16, 2014 with the
     Yuma County Superior Court and a copy
2    served same date via email to:

3    K. Thomas Slack
     Beale, Michaels & Slack, P.C.
4    7012 N. 18th Street
     Phoenix, AZ  85020
5    tslack@beale-michaels.com
     *Attorneys for Plaintiffs*
6
     Thomas M. Richardson
7    Krista T. McCarthy
     Friedl Richardson
8    19840 N. Cave Creek Road
     Phoenix, AZ  85024
9    tommy@friedlrichardson.com
     krista@friedlrichardson.com
10   *Attorneys for Plaintiffs*

11
     */s/ Misty Hinshaw*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "B"

S1400CV201400971

FILED

2015 JUL 14  PM 2:02

LYNN FAZZ
CLERK OF SUPERIOR COURT
YUMA ARIZONA 85364

| | |
|---|---|
| 1 | K. Thomas Slack, Bar No. 013412 |
| | Beale, Micheaels & Slack, P.C. |
| 2 | 7012 N. 18th St. |
| | Phoenix, AZ 85020 |
| 3 | tslack@beale-micheaels.com |
| 4 | Thomas M. Richardson, Bar No. 018582 |
| | tommy@friedlrichardson.com |
| 5 | Krista T. McCarthy, Bar No. 026969 |
| | krista@friedlrichardson.com |
| 6 | **FRIEDL RICHARDSON** |
| | 19840 N. Cave Creek Road |
| 7 | Phoenix, Arizona 85024 |
| | (602) 553-2220 |
| 8 | Attorneys for Plaintiffs |

<div align="center">

9

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10

IN AND FOR THE COUNTY OF YUMA

</div>

| | | |
|---|---|---|
| 11 | | |
| 12 | MICHAEL THOMPSON and RHONDA THOMPSON, Husband and Wife; | NO. S1400CV201400971 |
| 13 | Plaintiffs, | |
| 14 | vs. | **ORDER DISMISSING CASE WITHOUT PREJUDICE** |
| 15 | JET RENT, a Tradename; MARK FRANDSEN and JANE DOE FRANDSEN, Husband and Wife; DOES 1-10; ABC CORPORATIONS 1-10; XYZ PARTNERSHIPS 1-10, | |
| 16 | | |
| 17 | | |
| 18 | Defendants. | |

19   Pursuant to Counsels Stipulation for Dismissal, and good cause appearing herein;

20   IT IS HEREBY ORDERED that this dismissal without prejudice is effective to all

21 parties.

22   DONE IN OPEN COURT this _____14th_____ day of _____July_____, 2015.

23

24   _____
    Judge of the Yuma County Superior Court

25

# EXHIBIT "C"

MICHAEL K. JEANES
Clerk of the Superior Court
By Bory Reth, Deputy
Date 11/18/2015 Time 13:31:24
Description                      Amount
------ CASE# CV2015-054561 ------
CIVIL NEW COMPLAINT              319.00

TOTAL AMOUNT                     319.00
            Receipt# 24897764

1  | Larry E. Coben (SBN 15673)
   | Jo Ann Niemi (SBN 020873)
2  | **ANAPOL WEISS**
   | 8700 E. Vista Bonita Drive, Suite 268
3  | Scottsdale, Arizona 85255
   | Telephone: (480) 515-4745
4  | Facsimile: (480) 515-4744
5  | Minute Entries: ME@anapolschwartz.com

6  *Attorneys for Plaintiffs*

7          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8              IN AND FOR THE COUNTY OF MARICOPA

9  | **MICHAEL THOMPSON and RHONDA**
10 | **THOMPSON, Husband and Wife;**          Case No.  CV2015-054561

11 |              Plaintiffs,

12 | vs.                                       **COMPLAINT**

13 | **POLARIS INDUSTRIES, INC.; a foreign**
14 | **corporation, POLARIS SALES, INC., a**   **TORT – STRICT LIABILITY;**
   | **foreign corporation; LIBERTY**          **NEGLIGENCE; PUNITIVE**
15 | **MOTORSPORTS, an Arizona corporation,**  **DAMAGES**
   | **and DOE DEFENDANTS 1-100,**
16 |
17 |              Defendants:                  **JURY TRIAL DEMANDED**

18

·19         Plaintiffs, by and through their undersigned counsel, and for their claims against the

20  Defendants, allege as follows:

21              **ALLEGATIONS COMMON TO ALL COUNTS**

22         1.     The Plaintiffs, Michael Thompson and Rhonda Thompson, his wife, have at all

23  relevant times resided at 288 W. 11000 N. Road, Manteno, Illinois 60950.

24         2.     Defendant Polaris Industries, Inc. (hereinafter referred to as "Polaris") has been at

25  all times relevant a foreign corporation incorporated in the State of Minnesota and conducting

26  continuous and substantial business in the State of Arizona and Maricopa County. At all relevant

1   times, Defendant "Polaris" has designed, manufactured, marketed, supplied and sold its products

2   including off-road vehicles (ORVs) such as the Polaris RZR to its Arizona dealership network—

3   included the defendant Liberty Motorsports. The Polaris RZR which was operated by the

4   Plaintiffs at the time of the incident described below was distributed by "Polaris" (and/or its

5   subsidiary defendant Polaris Sales, Inc.) throughout the State of Arizona including Maricopa

6   County.

7           3.      Defendant Polaris Sales, Inc. (hereinafter referred to as "Polaris Sales") has been

8   at all times relevant hereto a subsidiary corporation fully owned by "Polaris" with its offices at

9   2100 Highway 55, Medina, Minnesota. "Polaris Sales" is authorized to conduct business in the

10  State of Arizona and it has marketed and sold new Polaris products to the Polaris Dealership

11  network in this State, including the 2011 Polaris RZR being operated by the Plaintiff Michael

12  Thompson at the time of the incident described below. Polaris Sales, Inc. conducts substantial

13  business regularly throughout the State of Arizona including Maricopa County.

14          4.      Defendant Liberty Motorsports is a business entity and/or corporation established

15  and licensed in the State of Arizona. As an Arizona citizen/corporation, Liberty Motorsports

16  holds itself out to the public as an official dealership of Polaris products and it markets these

17  products to potential customers who live and work in Arizona communities including Maricopa

18  County. This defendant marketed Polaris products including the 2011 Polaris RZR that it sold

19  new to Mark Frandsen in 2011. At the time it sold this product to Mr. Frandsen, this defendant

20  knew or should have known that this Polaris ORV would be marketed by Mr. Frandsen as a

21  rental vehicle in his business, trading as "Jet Rent". The 2011 Polaris RZR at issue in this case

22  has VIN 4XAVE76A3BB076570 (hereinafter referenced as "the RZR").

23          5.      The Doe Defendants, 1 through 100, inclusive, are unknown to Plaintiffs and are

24  therefore sued by such fictitious names. Plaintiffs are informed and believe and thereon allege

25  that each of the defendants designated herein as Doe may be responsible in some manner for the

26  events and happenings referred to herein and caused injury and damages proximately thereby to

2

1    Plaintiffs as herein alleged.  Plaintiffs further believe that the Doe defendants are Arizona

2    citizens.  Plaintiffs will ask leave of the court to amend this Complaint to insert the true names

3    and capacities of said Doe defendants 1 through 100, inclusive, when same have been

4    ascertained by Plaintiffs, together with appropriate charging allegations and to join such

5    Defendants in this action.

6         · 6.·      On February 19, 2014, the Plaintiffs rented "the RZR" at a facility called Jet Rent.

7    On this same day, at about 4:00 P.M., Plaintiff Michael Thompson was driving and his wife

8    Rhonda was riding as a passenger on "the RZR" in the desert area east of South Fortuna Road

9    (per the police report: N32 41.658 W 114 26.492) when the incident occurred. The plaintiffs

10   were wearing the available seat belts and helmets and operating "the RZR" in an ordinary

11   fashion. While traversing the desert, "the RZR" was caused to rollover. During the rollover

12   event, and because of defects in "the RZR" and its lack of crashworthiness, the Plaintiff Michael

13   Thompson suffered a devastating and catastrophic injury to his cervical spine resulting in

14   permanent quadriplegia and other secondary injuries, harm and damages as set forth below.

15        7.      As a result of the misconduct of the Defendants and the product defects as set

16   forth below, the Plaintiff Michael Thompson has suffered serious and catastrophic injury,

17   including spinal cord injury resulting in paralysis, the loss of bladder and bowel function and

18   other functional losses, together with pain and suffering, disfigurement, secondary

19   complications, disability, loss of life's pleasures, past and future loss of earnings and earning

20   capacity, as well as past and future costs and expenses for medical treatment, rehabilitation,

21   attendant care related expenses and other related and anticipated expenditures.  As a result of his

22   spinal cord injury and resulting paralysis, Plaintiff required lengthy hospitalization and

23   rehabilitation in medical facilities located in Maricopa County, Arizona.

24        8.      As a result of the negligence and product defects and intentional wrongdoing

25   described herein, the spinal cord injury suffered by Plaintiff is permanent and it has caused

26

3

1   associated medical and functional complications, losses and disabilities, which will continue in

2   the future.

3          9.      As a result of the misconduct described herein and the injuries suffered by the

4   Plaintiff Michael Thompson, his wife suffered in the past and will in the future suffer a loss of

5   consortium, society and other intangible losses for which seek fair compensation.

6          10.     Each of the named defendants is liable to the Plaintiffs for their respective

7   corporate negligence, design, manufacture, sale and/or distribution of a defective product and the

8   misconduct of their respective agents, employees and servants.

9                                    <u>COUNT ONE</u>

10                            <u>Strict Products Liability</u>

11         11.     Paragraphs 1 through 10 are incorporated herein by reference as though fully set

12   forth.

13         12.     The "RZR" was at the time it left the hands of the defendants, defective and

14   unreasonably dangerous, unsafe and not crashworthy in accordance with applicable law, both

15   generally and in the following respects:

16              a.     The "RZR" was equipped with inappropriate and unsafe restraint system

17                     necessary to provide occupant protection in the event of foreseeable

18                     collisions, crashes and rollovers;

19              b.     The "RZR" was designed with a seat belt system that was defective and

20                     unsafe from both a geometric configuration and dynamic performance

21                     under foreseeable collisions, crashes and rollovers;

22              c.     The "RZR" was unstable causing it to rollover when used under

23                     foreseeable conditions;

24              d.     The "RZR's" rollover protection system was not safe, it was defective and

25                     not crashworthy to provide appropriate protection against head impact,

26                     leading to spinal cord injury in foreseeable accidental rollovers;

4

e.   The "RZR's" seat belt system was defective and not crashworthy to provide appropriate protection for its intended use during foreseeable accidental rollovers;

f.   The "RZR's" seat belt system was defective in design and/or manufacture and the defendant failed to remedy these defects;

g.   The "RZR's" seat belt system was defective so that during foreseeable accident events it did not prevent head impact leading to catastrophic spinal cord injury;

h.   The "RZR's" seat belt system was defective in design or manufacture because it did not include appropriate and necessary alternative restraint systems to minimize and/or eliminate harmful but (with the included belt system) foreseeable excursion which belted occupants would experience while riding in this vehicle and involved in foreseeable rollover incidents;

i.   Failing to include a reasonable, necessary and technologically feasible alternative seat belt system that would appropriately and safely minimize or eliminate occupant excursion during foreseeable rollover accidents, thereby minimizing or eliminating the risk of significant head impact leading to spinal cord injury;

j.   Other defects or omissions rendering the "RZR" defective as will be discovered during the processing of this action to hold the defendants liable to the Plaintiffs.

13.   As a direct and legal result of the defects in design and manufacture of the "RZR" as set forth above, the product did not perform as would be expected by an ordinary consumer.

14.   Because the design, manufacture, production and marketing of the "RZR" caused it to be unreasonably dangerous, the defendants should not have marketed this product without

5

1   offering the safety features needed to prevent motorists from incurring foreseeable harm in

2   rollovers.

3        15.    The severe injuries suffered by the Plaintiff and the damages and other losses

4   suffered by the Plaintiffs were caused by the design, manufacture, sale, and supply of the "RZR"

5   in a defective condition, for which the Defendants are strictly liable to the Plaintiffs.

<div align="center">

**COUNT TWO**

**<u>Negligence - Defendants</u>**

</div>

8        16.    Paragraphs 1 through 15 are incorporated herein by reference as though fully set

9   forth.

10        17.    The Defendants acting by and through their duly authorized agents, servants and

11   employees and are guilty of carelessness, negligence, gross negligence, and reckless disregard

12   for the safety of others, including the Plaintiffs, both generally and in the following respects:

13             a.     Failing to design the "RZR" to include a reasonably configured vehicle to

14                     minimize or avoid vehicle tip-up or rollover under foreseeable operating

15                     conditions;

16             b.     Failing to remedy or offer an alternative safety system to minimize or

17                     eliminate the dangers associated with the installation of an unsafe,

18                     carelessly designed restraint system based upon their awareness of the

19                     associated dangers;

20             c.     Failing to design the "RZR" to include a reasonable alternative restraint

21                   system that they had designed, assembled, marketed and supplied with

22                     other ORVs to provide improved restraint in foreseeable incidents

23                     including rollovers;

24             d.     Failing to incorporate into the design of the "RZR" an appropriately

25                     designed alternative restraint system to minimize or eliminate the risk of

26

<div align="center">

6

</div>

occupant excursion causing injurious head and spinal cord injury in foreseeable rollover incidents;

e.  Failing to design and/or intentionally and wantonly withholding from installation in the "RZR" an alternative, reasonably designed restraint system that would provide substantially improved protection against head impacts and spinal cord injury in foreseeable rollover incidents–in the face of corporate knowledge of the high risk of serious and catastrophic spinal cord injury to occupants in rollover crashes—despite the defendants' awareness of alternative, superior and non-defective restraint systems;

f.  Designing, manufacturing, selling, and/or supplying the "RZR" in such a manner that it was not safe and it was not crashworthy;

g.  Failing to design the "RZR" in accordance with the state of the art;

h.  Failing to reasonably and properly test and/or analyze the testing of the "RZR" under reasonably foreseeable rollover circumstances;

i.  Failing to adequately warn/instruct motorists of the foreseeable dangers of the risks posed by "RZR's" defective and unsafe design;

j.  Failing to use due care under the circumstances;

k.  Making a corporate decision to deprive motorists of necessary safety systems based on economic criteria instead of design/safety criteria; and

l.  Designing and releasing for sale, and then subsequently failing to take corrective action to rectify the danger associated with the seat belt system in question;

m.  Such other acts or omissions constituting carelessness, negligence, gross negligence, wantonness, and reckless disregard of safety as may appear during the course of discovery or that might be adduced at the trial of this matter.

7

18.     Because of the misconduct of Defendants and the unsafe design of the "RZR", the Defendants breached the duty they owed to motorists and increased the risk of harm to the Plaintiff, which resulted in the Plaintiff's severe injuries and the damages and losses suffered by the Plaintiffs.

19.     Defendant "Polaris" breached its duty to the Plaintiff by consciously disregarding a substantial risk that its conduct would significantly injure the rights of others.

20.     Defendant "Polaris'" wrongful conduct in design and manufacture of the "Polaris" was guided by either reckless indifference or wanton disregard of the interests of others.

21.     Defendant "Polaris" knew, realized, or should have reasonably known or realized that it created an unreasonable risk of causing physical harm to another by the design of the "RZR" and failed to exercise reasonable care to prevent such risk from taking effect.

## COUNT THREE

### Punitive Damages - Defendant "Polaris"

22.     Paragraphs 1 through 21 are incorporated herein by reference as though fully set forth.

23.     Defendant "Polaris" acting by and through its duly authorized agents, servants and employees, is guilty of gross negligence and reckless disregard for the safety of others, including the Plaintiffs, both generally and in the following respects:

    a.     Failing to design and/or intentionally and wantonly withholding from use in the "RZR" a reasonably designed and necessary rollover protection system in the face of corporate knowledge of the high risk of serious and catastrophic spinal cord injury to occupants in rollover crashes and despite the defendants' awareness of alternative restraint systems it was marketed in other similar products;

     b.    Failing to remedy the defective and unreasonably dangerous restraint system after it had tested and understood that an alternative restraint system provided needed safety protection;

     c.    Intentionally rejecting the use of an alternative restraint system that it knew provided needed protection in rollovers, thereby deciding it was acceptable to expose ordinary customers to unreasonable risk of injury;

     d.    Making a corporate decision to deprive motorists of necessary safety systems based on economic criteria instead of design/safety criteria;

     e.    Such other acts or omissions constituting gross negligence, wantonness, and reckless disregard of safety as may appear during the course of discovery or that might be adduced at the trial of this matter.

24.    Defendant "Polaris" breached its duty to the Plaintiffs by consciously disregarding a substantial risk that its conduct would significantly injure the rights of others.

25.    Defendant "Polaris" knew and realized that it created an unreasonable risk of causing physical harm to another by the design of the "RZR" with a woefully inadequate restraint system.

26.    The severe misconduct of Defendant "Polaris" and the unsafe and defective design of the "RZR", as set forth herein, warrants the imposition of punitive damages against the Defendant.

## DAMAGES

WHEREFORE, Plaintiffs request judgment be entered against the Defendants, and each of them, as follows:

     a.    Past and future reasonable and necessary medical, hospital and rehabilitation care and services, nursing care and services, medication, therapy, housing costs, and other expenses;

1    b.    Past and future pain and suffering, emotional distress, loss of life's

2          pleasures, loss of consortium and services and all other intangible losses

3          recoverable under the law;

4    c.    Past and future impairment and loss of the quality of life and life's

5          pleasures and loss of services and consortium;

6    d.    Past loss of earnings and the future loss of earnings capacity;

7    e.    Any and all other losses and damages sustained by the Plaintiffs and

8          punitive damages (as to defendant "Polaris" only) to which they are

9          legally entitled either by statute or by the common law;

10   f.    Attorney's fees, interest and costs as allowed by law; and

11   g.    Any other relief to which the Court finds Plaintiffs are entitled.

12

13   DATED this **18** day of November, 2015.

14

15                          ANAPOL WEISS

16

17                          Larry E. Coben
                            JoAnn Niemi
18                          *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

10

# EXHIBIT "D"

Paul G. Cereghini (Bar No. 009641)
Jeffrey C. Warren (Bar No. 021383)
Amanda Heitz (Bar No. 026519)
**BOWMAN AND BROOKE LLP**
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona  85012-2736
(602) 643-2300
Fax: (602)-248-0947
paul.ceregini@bowmanandbrooke.com
jeff.warren@bowmanandbrooke.com
amanda.heitz@bowmanandbrooke.com
Minute Entries: mme@phx.bowmanandbrooke.com


Attorneys for Defendant Polaris Industries, Inc. and Polaris Sales, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL THOMPSON and RHONDA THOMPSON, Husband and Wife,<br><br>Plaintiffs,<br><br>v.<br><br>POLARIS INDUSTRIES, INC.; a foreign corporation, POLARIS SALES, INC., a foreign corporation; LIBERTY MOTORSPORTS, an Arizona corporation, and DOE DEFENDANTS 1-100,<br><br>Defendants. | No.<br><br>**DEFENDANTS POLARIS INDUSTRIES INC.'S AND POLARIS SALES INC.'S NOTICE OF REMOVAL** |

Pursuant to the terms and provisions of 28 U.S.C. §§ 1441 and 1446, Polaris Industries Inc. and Polaris Sales Inc. (collectively, "the Polaris Defendants"), Defendants in the cause styled "Michael Thompson and Rhonda Thompson, Husband and Wife, Plaintiffs, v. Polaris Industries, Inc., a foreign corporation; Polaris Sales, Inc., a foreign corporation; Liberty Motorsports, an Arizona corporation, and Doe Defendants 1-100," originally pending as Cause No. CV2015-054561, in the Maricopa County Superior Court, files this Notice of Removal of the cause to the United State District Court for the District of Arizona, Phoenix Division.

///

12938866v1

I.   <u>BASIS FOR REMOVAL — DIVERSITY JURISDICTION</u>

The basis of the removal of this action is diversity jurisdiction under 28 U.S.C. § 1332. Diversity jurisdiction exists because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiffs and the properly joined Defendants. 28 U.S.C. § 1331.

II.   <u>CITIZENSHIP OF PLAINTIFFS</u>

In their Complaint, Plaintiffs Michael Thompson and Rhonda Thompson assert that they are residents of the State of Illinois. *See* Plaintiffs' Complaint, ¶ 1, attached as Ex. A.

III.   <u>CITIZENSHIP OF DEFENDANTS</u>

The Polaris Defendants are corporations duly incorporated and organized under the laws of Minnesota. As such, they are not and have not been citizens of the state of Arizona. Copies of a business entity filing records obtained from an official website of the state of Minnesota confirm their corporate citizenship and are attached as Exhibit B to this Notice of Removal.

Plaintiffs sued Liberty Motorsports, an Arizona corporation, as a participant in the chain of distribution of a 2011 Polaris RZR bearing the VIN 4XAVE76A3BB076570. Ex. A. ¶ 4. Specifically, they assert that Polaris Sales, Inc. distributed the subject vehicle to Liberty Motorsports, and that Liberty Motorsports sold it new to Mark Frandsen, the owner of a rental business. *Id.* Liberty Motorsports, however, is not a properly joined defendant. As evidenced by the Warranty Registration Inquiry attached as Exhibit C to this Notice of Removal, this vehicle was originally sold by Imperial Valley Cycle Center, and not Liberty Motorsports. A copy of a business entity filing record obtained from an official website of the state of California is attached as Exhibit D to this Notice of Removal and confirms that Imperial Valley Cycle Center is a citizen of California.

Therefore, because Liberty Motorsports is a sham defendant, this Court should not consider its citizenship in evaluating the diversity of the parties. The Polaris defendants are the only properly named defendants and are citizens of Minnesota. Because Plaintiffs are Illinois residents, there is complete diversity between the parties.

## IV.   AMOUNT IN CONTROVERSY

This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332§.  The amount in controversy is in excess of $75,000 exclusive of interest and costs. According to Plaintiffs' complaint, one of the plaintiffs sustained "serious and catastrophic injury, including spinal cord injury resulting in paralysis, the loss of bladder and bowel function and other functional losses" and seeks compensation for pain and suffering, disfigurement, loss of earning capacity, attendant care, past and future medical treatment, which includes costs associated with "a lengthy hospitalization and rehabilitation." Ex. A at ¶ 7. Plaintiffs also seek punitive damages against the Polaris defendants. Ex. A. at ¶ 22.

## V.   VENUE

According to plaintiffs' complaint, the event that gives rise to this lawsuit occurred in Arizona.  Thus, venue is appropriate in the District of Arizona.

## VI.   NATURE OF THE CASE

This is a product liability case involving the crashworthiness of the 2011 Polaris RZR off road vehicle. Plaintiffs seek compensatory damages as the result of injuries that they allegedly sustained when Plaintiff Michael Thompson crashed while operating the subject vehicle.

Plaintiffs filed their Complaint on November 18, 2015.  They assert strict products liability, negligence, and punitive damages claims against the Polaris Defendants.

## VII.   JURY DEMAND

The Polaris Defendants demand that a jury be empaneled to try the facts and issues of this case.

## VIII.   REMOVAL IS TIMELY

The Polaris Defendants filed this Notice of Removal within thirty days of their receipt of service, which occurred on November 20, 2015.  Further, more than one year has not passed since the commencement of the action in state court. 28 U.S.C. § 1446.

/ / /

/ / /

12938866v1                                                  3

| | |
|---|---|
| 1 | IX.   <u>**NOTICE TO THE STATE COURT**</u> |
| 2 | The Polaris Defendants have filed with the Superior Court of Maricopa County, |
| 3 | Arizona, a Notice of Removal to Federal Court simultaneously with/or immediately after the |
| 4 | filing of this Notice of Removal, which is attached as Exhibit E. |
| 5 | X.   <u>**STATE COURT PLEADINGS PROVIDED**</u> |
| 6 | Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders in this |
| 7 | case are contained in Exhibit A. |
| 8 | WHEREFORE, PREMISES CONSIDERED, The Polaris Defendants respectfully |
| 9 | request that this Notice of Removal of Action be filed; that the civil action pending in the |
| 10 | Superior Court of Maricopa County, Arizona with Cause No. CV2015-054561 be removed to |
| 11 | and proceed in this Court; that no further proceedings be had in the Superior Court of |
| 12 | Maricopa County, Arizona; and for any further relief, both at law or in equity, to which the |
| 13 | Polaris Defendants shall show themselves justly entitled. |
| 14 | DATED this 14th day of December, 2015. |
| 15 | BOWMAN AND BROOKE LLP |
| 16 | By: s/ Amanda Heitz |
| 17 | Paul G. Cereghini |
| | Jeffrey C. Warren |
| 18 | Amanda Heitz |
| | Attorneys for Defendant(s) |
| 19 | Polaris Industries, Inc. and Polaris Sales, Inc. |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

12938866v1

4

1

### CERTIFICATE OF SERVICE

2    I hereby certify that on December 14, 2015, I electronically transmitted the attached

3    document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4    Notice of Electronic Filing to the following CM/EDF registrants:

5    Larry E. Coben
     JoAnn Niemi
6    ANAPOL WEISS
     8700 E. Vista Bonita Drive, Ste. 268
7    Scottsdale, Arizona 85255
     Attorneys for Plaintiffs
8

9    s/ Sandy Wickham
10   _____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "E"

1  Larry E. Coben (SBN 15673)
   Jo Ann Niemi (SBN 020873)
2  **ANAPOL WEISS**
3  8700 E. Vista Bonita Drive, Suite 268
   Scottsdale, Arizona 85255
4  Telephone: (480) 515-4745
   Facsimile: (480) 515-4744
5  lcoben@anapolweiss.com
6  jniemi@anapolweiss.com
   Minute Entries: ME@anapolweiss.com
7
   *Attorneys for Plaintiffs*
8
9              UNITED STATES DISTRICT COURT
10                  DISTRICT OF ARIZONA
11  MICHAEL THOMPSON and RHONDA
    THOMPSON, Husband and Wife;          No. _____
12
13          Plaintiffs,                   Maricopa County Superior Court Case No.
                                          CV2015-054561
14  vs.
15  POLARIS INDUSTRIES, INC.; a foreign
16  corporation, POLARIS SALES, INC., a   **NOTICE OF VOLUNTARY**
    foreign corporation; LIBERTY          **DISMISSAL WITHOUT PREJUDICE**
17  MOTORSPORTS, an Arizona corporation,
    and DOE DEFENDANTS 1-100,
18
19          Defendants.
20
21        Plaintiffs, by and through their undersigned counsel, and pursuant to Federal Rule of
22  Civil Procedure 41(a)(i), voluntarily dismiss the above-captioned matter without prejudice, no
23  opposing party having served either an answer or a motion for summary judgment.
24        DATED this __18th__ day of December, 2015.
25                                        ANAPOL WEISS
26
27                                        _____/s/ Larry E. Coben_____
                                          Larry E. Coben
28                                        Jo Ann Niemi
                                          *Attorneys for Plaintiffs*

1    ORIGINAL of the foregoing e-filed this
2     18th    day of December, 2015.

3
     COPY of the foregoing mailed this
4     18th    day of December, 2015 to:

5    Paul G. Cereghini
6    Jeffrey C. Warren
     Amanda Heitz
7    BOWMAN AND BROOKE
     Suite 1600, Phoenix Plaza
8    2901 North Central Avenue
9    Phoenix, Arizona 85012
     *Attorneys for Defendants Polaris Industries, Inc.*
10   *and Polaris Sales, Inc.*

11

12

13

14   By _____Ted Pepin_____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "F"

Skip To MainContent

[ ] [Search]

⚠ **ADVERTENCIA:** Estafa por medio de llamadas telefónicas y correo electrónico.   **Leer Mas...**

Civil Court Case Information - Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2015-053625 | Judge: | Brnovich, Susan |
| File Date: | 12/23/2015 | Location: | Northeast |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Michael Thompson | Plaintiff | Male | Larry Coben |
| Rhonda Thompson | Plaintiff | Female | Larry Coben |
| Polaris Industries Inc | Defendant | | Amanda Heitz |
| Polaris Sales Inc | Defendant | | Amanda Heitz |
| Jet Rent | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 8/9/2016 | 028 - ME: Status Conference Set | 8/9/2016 | |
| 7/25/2016 | REQ - Request | 7/26/2016 | |
| NOTE: PLAINTIFFS' REQUEST FOR RULE 16 SCHEDULING CONFERENCE; [PROPOSED] FORM OF ORDER | | | |
| 6/28/2016 | ORD - Order | 6/28/2016 | |
| NOTE: PROTECTIVE ORDER | | | |
| 6/22/2016 | STP - Stipulation | 6/23/2016 | |
| NOTE: Stipulation and Protective Order Regarding Confidentiality of Documents and Materials | | | |
| 5/25/2016 | 311 - ME: 150 Day Minute Entry | 5/25/2016 | |
| 2/22/2016 | NJT - Not Demand For Jury Trials | 2/22/2016 | |
| NOTE: DEMAND FOR TRIAL BY JURY BY POLARIS INDUSTRIES, INC. AND POLARIS SALES, INC. | | | |
| 2/22/2016 | CAA - Cert Of Agreement/Arbitration | 2/22/2016 | |
| NOTE: Certificate of Agreement re Arbitration by Polaris Industries, Inc. and Polaris Sales, Inc. | | | |
| 2/22/2016 | ANS - Answer | 2/22/2016 | |
| NOTE: COMBINED ANSWER TO PLAINTIFFS' COMPLAINT ON BEHALF OF POLARIS SALES INC. AND POLARIS INDUSTRIES INC. / E-FILE BILLING $237 | | | |
| 1/11/2016 | AFS - Affidavit Of Service | 1/14/2016 | |
| NOTE: JET RENT | | | |
| 1/11/2016 | SUM - Summons | 1/14/2016 | |
| 12/23/2015 | COM - Complaint | 12/24/2015 | |
| 12/23/2015 | CCN - Cert Arbitration - Not Subject | 12/24/2015 | |
| 12/23/2015 | CSH - Coversheet | 12/24/2015 | |
| 12/23/2015 | NJT - Not Demand For Jury Trials | 12/24/2015 | |

## Case Calendar

| Date | Time | Event |
|---|---|---|
| 9/1/2016 | 9:30 | Pre-Trial Conference |

## Judgments

There are no judgments on file

# EXHIBIT "G"

1    Paul G. Cereghini (Bar No. 009641)
      Jeffrey C. Warren (Bar No. 021383)
2    Amanda Heitz (Bar No. 026519
      **BOWMAN AND BROOKE LLP**
3    Suite 1600, Phoenix Plaza
      2901 North Central Avenue
4    Phoenix, Arizona  85012-2736
      (602) 643-2300
5    Fax: (602)-248-0947
      paul.ceregini@bowmanandbrooke.com
6    jeff.warren@bowmanandbrooke.com
      amanda.heitz@bowmanandbrooke.com
7
      Attorneys for Defendants Polaris Industries, Inc. and Polaris Sales, Inc.
8

9            **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

10              **IN AND FOR THE COUNTY OF MARICOPA**

11    MICHAEL THOMPSON and RHONDA
      THOMPSON, Husband and Wife,
12                     Case No. CV2015-053625
            Plaintiffs,
13                   **AMENDED** NOTICE OF TAKING
   v.                  **ORAL/VIDEOTAPED 30(b)(6)**
14                   **DEPOSITION OF DEFENDANT JET**
   POLARIS INDUSTRIES, INC., a foreign    **RENT**
15    corporation; POLARIS SALES, INC., a foreign
      corporation; JET RENT, an Arizona business;
16    DOE DEFENDANTS 1-10; ABC
      CORPORATIONS 1-10; and BLACK AND
17    WHITE PARTNERSHIPS 1-10,

18             Defendants.

19

20    TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD

21          PLEASE TAKE NOTICE that Defendants Polaris Industries, Inc. and Polaris Sales,

22    Inc. will take the deposition(s) of the following person(s) upon oral and videotaped

23    examination, pursuant to Rules 26 and 30 of the Superior Court Rules of Civil Procedure for

24    the State of Arizona, before a notary public or before some other officer authorized by law to

25    administer oaths:

26    PERSONS TO BE EXAMINED:    Corporate Representative(s) of Defendant Jet Rent

27    DATE/TIME OF EXAMINATION:   August 16, 2016 at **12:00 p.m.**

28

16386360v1

PLACE OF EXAMINATION:      Bowman and Brooke, LLP
                          Suite 1600, Phoenix Plaza
                          2901 North Central Avenue
                          Phoenix, Arizona 85012

Please be advised that pursuant to Arizona Rules of Civil Procedure 30(b)(6), Defendant Jet Rent is instructed to provide one or more individuals as corporate representative(s) knowledgeable to testify about the following matters:

## DEFINITIONS

*The following definitions shall apply to this Notice.*

A.      Document includes all written or graphic material of every kind and nature, including, but not limited to, testimony and exhibits, memoranda, interoffice memoranda, interoffice memoranda, correspondence, letters, proposals, reports (including drafts, preliminary , intermediate, and final reports), surveys, analyses, studies (including economic and market studies), test results, summaries, comparisons, tabulations, charts, books, pamphlets, photographs, slides, videotapes, maps, charts, books, pamphlets, photographs , slides, videotapes maps, charts, graphs, bulletins, corporate or other minutes, notes, diaries, log sheets, ledgers, transcripts, microfilm, microfiche, electronic communications ("e-mail"), electronically-stored data, digital data, computer data, computer files, computer tapes, computer inputs, computer financial statements, canceled checks, check stubs, budgets, work papers, engineering diagrams (including one-line diagrams), radiographic studies, mechanical and electrical recordings, telephone and telegraphic communications, speeches, scientific tests or results, medical records, medical bills, learned treatises, contracts, agreements, and portions or parts thereof in whatever form, safety rules and regulations, safety guidelines,  safety manuals, directives, corporate charters, consolidated tax returns, and all other records, written, electrical, mechanical or otherwise, and drafts of any of the above and any and all other such material not included in the foregoing relating in any way to the subject matter specified. "Document" includes copies of documents, where originals are not in your possession, custody or control. "Document" includes every non-identical copy of a document which contains handwritten or other notations, which otherwise does not duplicate the original or any other copy. "Document" also includes any attachments or appendices of any document. "Document" includes  electronically stored information, including  (by way of  example  and  not  as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically, or otherwise stored as:

A.      Digital communications (e.g., e-mail, voice mail, instant messages);
B.      E-mail Server Stores (e.g., Lotus Domino, .NSF or Microsoft Exchange .EDB);
C.      Word processed documents (e.g., Microsoft Word or WordPerfect files and drafts);
D.      Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
E.      Image and Facsimile Files (e.g., .PDF, .TIF, .JPG, .GIF images);
F.      Databases (e.g., Access, Oracle, SQL Server data, SAP);

16386360v1                                2

G.    Contact and Relationship Management Data (e.g., Outlook, ACT!);
H.    Calendar and Diary Application Data (e.g., Outlook PST, blog entries);
I.     Online Access Data (e.g., Temporary Internet Files, History, Cookies);
J.    Presentations (e.g., PowerPoint);
K.    Network Access and Server Activity Logs;
L     Project Management Application Data; and
M.   Backup and Archival Files (e.g., Veritas, Zip, .GHO).

*** *Electronically stored information may be produced in the same format in which such was kept in the ordinary course of business on  CD, DVD, hard drive, or other digital  data storage   device.  Defendants request that if any such file  requires  a password  or other  code  to be entered  to  access same, that Defendants be provided with such password or other code so Defendants' counsel may access the file.*

B.    Plaintiffs refer to Michael Thompson and Rhonda Thompson.

C.     You or yours means Jet Rent and its predecessors, its officers, agents, servants, employees and representatives.  When you or your is used in the context of Documents, the term includes all Documents in the possession, custody, and control of Jet Rent, which includes the documents in the possession, custody and control of Jet Rent's parent company, subsidiaries, affiliates, and/or entities owned in part by Jet Rent or Jet Rent's parent company, if any.

D.     Jet Rent entities shall mean Jet Rent, its parent company, subsidiaries, affiliates, and/or entities owned in whole or in part by Jet Rent's parent company, if any.

E.     Subject vehicle refers to the 2011 Polaris RZR S with vehicle identification number 4XAVE76A3BB076570.

## TOPICS OF TESTIMONY

1.  The 2011 Polaris RZR S VIN 4XAVE76A3BB076570 that was rented to Michael Thompson and/or Rhonda Thompson on or about February 19, 2014 ("the subject vehicle").

2.  Any communications—verbal or otherwise—with Michael Thompson or Rhonda Thompson ("plaintiffs") or any of their attorneys, investigators, representatives, insurers, or any other person purporting to represent plaintiffs or their interests.

3.  The maintenance, repair, and service history of the subject vehicle from the time it was first acquired by Jet Rent until February 19, 2014.

4.  The preservation, repairs, sale, or disposal of the subject vehicle from February 19, 2014 until the present.

1        DATED this 2nd day of August, 2016.

2                      BOWMAN AND BROOKE LLP

3

4                      By: _____

5                         Paul G. Cereghini
                         Jeffrey C. Warren

6                         Amanda Heitz
                         Attorneys for Defendants

7                         Polaris Industries, Inc. and Polaris Sales, Inc.

8    COPY of the foregoing mailed
    this 2nd day of August, 2016 to:

9

10   Larry E. Coben
    JoAnn Niemi

11   ANAPOL WEISS
    8700 E. Vista Bonita Drive, Ste. 268

12   Scottsdale, Arizona 85255
    Attorneys for Plaintiffs

13

    Esquire Deposition Solutions

14   3800 North Central Avenue
    Suite 1700, City Square

15   Phoenix, Arizona 85012

16

17   _____

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

Pursuant to Arizona Rules of Civil Procedure 30(b)(5) and 34, Defendant Jet Rent is requested to produce the items or things described herein that are within Defendant Jet Rent's possession, custody or control, for inspection and copying at the date and time indicated in the foregoing Notice of Taking Oral/Videotaped 30(b)(6) Deposition.

## DEFINITIONS

Please refer to the definitions contained in the foregoing Notice of Taking Oral/Videotaped 30(b)(6) Deposition.

## ITEMS TO BE PRODUCED

1. You are commanded to produce all documents relating to the subject vehicle, including, but not limited to:

    a. Purchase documents;

    b. Repair records;

    c. Maintenance records;

    d. Rental logs or records relating to the subject vehicle;

    e. Receipts or documents evidencing the sale, storage, or other disposition of the subject vehicle after February 19, 2014;

    f. Photographs of the subject vehicle;

    g. Video of the subject vehicle.

2. You are commanded to produce all records relating to the rental of the subject vehicle to plaintiffs on or about February 19, 2014, including, but not limited to:

    a. Rental receipts;

    b. Rental contracts;

    c. Instructions or safety materials provided to plaintiffs with the rental of the subject vehicle;

    d. Safety or instructional materials that Jet Rent made available to its customers generally (*e.g.*, brochures, videos, pamphlets) on or about February 19, 2014.

3. You are commanded to produce the subject vehicle and/or any components of the subject vehicle in your possession, control or custody.

16386360v1

5

4. You are commanded to produce all records relating to communications since February 19, 2014 with plaintiffs, their attorneys, insurers, representatives, or anyone else purporting to act on their behalf, including, but not limited to:

    a.  Written correspondence (letters, emails);

    b.  Notes regarding telephone calls or in-person communications;

    c.  Agreements relating to this or any other lawsuit involving plaintiffs.

# EXHIBIT "H"

1          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2              IN AND FOR THE COUNTY OF MARICOPA

3


4  MICHAEL THOMPSON and RHONDA)
   THOMPSON, Husband and wife,) No. CV2015-053625
5                              )
                Plaintiffs,    )
6                              )
           vs.                 )
7                              )
   POLARIS INDUSTRIES, INC.,   )
8  et al.,                     )
                               )
9             Defendants.      )
                               )
10

11

12

13              VIDEOTAPED DEPOSITION OF

14                  MARK FRANDSEN

15                AUGUST 16, 2016

16                  12:14 p.m.

17            2901 NORTH CENTRAL AVENUE

18                PHOENIX, ARIZONA

19

20

21

22

23

24            Claudine Kelly, RPR
              Certificate No. 50896
25



```
 1                        -   -   -   -   -
 2              (Thereupon, Defendants' Deposition
 3              Exhibit 2 was marked for purposes of
 4              identification.)
 5                        -   -   -   -   -
 6   A.    We actually had an agreement that if I gave them
 7         the frame they weren't going to sue me.  That's
 8         apparently not an agreement.
 9   Q.    So when you say you had an agreement that if you
10         gave them the frame that they wouldn't sue you, who
11         was that agreement with?
12                   MS. NIEMI:  Objection.
13                   I'm sorry.  Go ahead.
14                   Object to form.
15   A.    What?
16   Q.    She's allowed to make -- I should have explained
17         that before.  At times we may make legal objections
18         to preserve something for the judge.
19   A.    Does that mean I don't answer?
20   Q.    No.  You can go ahead and answer.
21   A.    Okay.
22                   MS. NIEMI:  If you can.
23   A.    I had them send me a letter stating that they were
24         not going to sue me in exchange for the frame.
25   Q.    And when you say they sent you a letter saying they
```



```
 1           wouldn't sue you, is that in this stack of
 2           materials today?
 3    A.     No.  It's not.
 4    Q.     And do you still have a copy of that letter?
 5    A.     Yes.  I made sure I have that somewhere.
 6    Q.     Why didn't you bring that letter with you today?
 7    A.     I didn't know.
 8    Q.     Well, I would certainly like to have a copy of that
 9           letter.  If you can make a copy and send that to my
10           office.  I'll be sure to give you a business card
11           before you leave today so you know who to send it
12           to and wherever.
13    A.     Yeah.  I'll send you a copy.
14    Q.     Now, this letter that you received that said they
15           would not sue you if you sent them the frame, was
16           that from Mr. Thompson's lawyers?
17    A.     Yes.
18    Q.     The Anapol Weiss firm?
19    A.     Yes.
20    Q.     And did they pay you for giving them the frame?
21    A.     No.
22    Q.     You gave them the frame in return for their
23           agreement that they were not going to sue you?
24                 MS. NIEMI:  Object to the form.
25    A.     I can answer?
```



1  Q.   Sure.

2  A.   Yes.

3  Q.   And do you remember when it was that they sent you

4       this letter saying they wouldn't sue you?

5  A.   I believe it was right after they got -- they hired

6       them.

7  Q.   And how did you get the frame to Mr. Thompson's

8       lawyer?

9  A.   They came with the tow truck and picked it up from

10       my shop.

11  Q.   And you agreed to release it to them based on the

12       letter they had sent you saying --

13  A.   The letter indicates that that's what the -- what

14       it was about in exchange.

15  Q.   And was that letter signed by the lawyers?

16  A.   Yes.

17  Q.   Do you remember --

18  A.   In fact, we even had them rewrite it so it was

19       clear, because the first letter was a little vague

20       so they sent a second one.

21            MS. NIEMI:  I'm sorry.  I need to make a

22       record.

23            We've got some gestures going on by Mrs.

24       Frandsen, who is not on camera.  And I'm going to

25       either have to ask her to step out or she needs to



```
 1            guy.
 2   Q.    And what was it that you asked to have changed from
 3         the first letter to the second?
 4   A.    It was like a couple words.  It was just something
 5         to say there was no misunderstanding that I was
 6         giving them the frame in exchange that I would not
 7         be named in any lawsuit by them.  I believe that's
 8         what it said in the letter.
 9   Q.    And did it say that you personally, Mark Frandsen,
10         would not be named in the lawsuit?
11   A.    Yes.
12   Q.    Did it say that Jet Rent would not?
13   A.    I believe it did.  I think reading it, it was
14         pretty clear that there was no loopholes to try to
15         get around.
16   Q.    Do you think you still have the e-mails that would
17         have been exchanged with Mr. Thompson's lawyers
18         relating to the letter?
19   A.    Um, it was phone calls.  There probably is some
20         e-mails.
21   Q.    Will you agree to look for e-mails --
22   A.    Yes.
23   Q.    -- and provide me with copies of any e-mails you
24         have?
25   A.    Yes.
```



```
 1    Q.    The letter that you said was provided to you where

 2          it was agreed that you would not be sued, is that

 3          something that you signed as well?

 4                    MS. NIEMI:   Object to the form.

 5    A.    I didn't sign.  No.

 6    Q.    Have you had any --

 7    A.    I don't think.

 8    Q.    -- communications with the Thompsons' lawyers since

 9          they did sue Jet Rent as to why they were suing

10          you?

11    A.    Yes.  I called.  I said, why are you suing me?  I

12          thought we had this agreement.

13    Q.    And what did they tell you?

14    A.    They said they had to because my business was in

15          Arizona and they needed it to be in Arizona.

16          Because the razor was purchased in California.

17    Q.    Did you express to them that they shouldn't be

18          suing you?

19    A.    Yes.

20    Q.    And did you -- in that conversation did they give

21          you any understanding as to whether they were ever

22          going to try and collect from you?

23    A.    He said, don't worry about it.  They weren't trying

24          to -- they weren't coming after me, I guess.

25    Q.    Do you remember who you had that conversation with?
```



```
 1              what I should file.  And I even asked him for help
 2              like send me something so that I can file it.  But
 3              he didn't.
 4   Q.   What did --
 5   A.   I actually never filed anything.
 6   Q.   What did he say when you told him you didn't want
 7        to pay to hire another attorney to answer it?
 8   A.   I don't think he really said anything about that.
 9   Q.   Based on that phone conversation you had, when you
10        hung up was it your understanding that you didn't
11        need to do anything because the Thompsons were not
12        going to try and collect any money from you?
13             MS. NIEMI:  Object to the form.
14   A.   Yes.  That is what I understood.
15   Q.   Is that what you had understood from the written
16        agreement that you had with their lawyers as well?
17             MS. NIEMI:  Object to the form.
18             There is no written agreement.
19   Q.   Is that what you understood from your discussions
20        with the lawyers when you agreed to give them the
21        frame for the vehicle, that they weren't going to
22        ever try to collect money from you?
23   A.   Yes.
24             MS. NIEMI:  Object to the form.
25   Q.   Tell me about the first lawsuit where the Thompsons
```



```
 1   A.    Yes.

 2   Q.    Did he agree to that during the first phone call?

 3               MS. NIEMI:   Object to the form.

 4   A.    Yes.

 5   Q.    And then he sent you a letter; is that correct?

 6   A.    Yes.   Then he gave the letter.  I think we had him

 7         change a couple words and then we got the letter.

 8         And then it was like okay.

 9   Q.    So he sent you an initial letter.  Did he send it

10         to you by e-mail, you think?

11   A.    Yes.

12   Q.    And you think you still have that in your e-mail

13         back at office?

14   A.    Do we?  I don't know.  I mean we should.

15   Q.    It's something you could look for and send to me

16         when you get back, if you have it?

17   A.    Yes.

18   Q.    And then did you have the phone call with Mr. Pepin

19         about the changes you wanted made to the first

20         letter he sent you?

21   A.    Yes.

22   Q.    And what did you discuss with Mr. Pepin in the

23         phone call?

24   A.    Something was a little vague.  So we said, can you

25         clarify it.  Yep.  They did it.  And so this letter
```



```
 1           sounds like it's pretty straight forward.
 2    Q.     And did you have any other phone calls with Mr.
 3           Pepin about the letter or the terms of this letter?
 4    A.     No.  Not that I remember.
 5    Q.     It was your understanding based on the phone calls
 6           that you had with Mr. Pepin, and the letters, that
 7           when you gave them the cab of the vehicle that you
 8           were doing so in response to their having agreed to
 9           not sue you or Jet Rent?
10                  MS. NIEMI:  Object to the form.
11    A.     Yes.  I thought it was exactly what it said here.
12           We have no intentions of the naming Jet Rent in a
13           subsequent lawsuit that may be filed by Mr.
14           Thompson.
15    Q.     And when you got sued --
16    A.     Wait.  This is the first letter.
17                  I think intentions was the word.  I think
18           we changed the word intentions.  Because this is
19           saying we don't intend to, but we still can.  And
20           then it was changed to we will not.  I remember.
21    Q.     So you think Exhibit 13 is the first letter?
22    A.     This is the first letter.  That's -- I just
23           remembered that.
24    Q.     And it's your recollection based on your subsequent
25           phone conversation with Mr. Pepin that they sent
```



```
 1          you a letter that said we will not --
 2   A.     We will not name you.  Yes.
 3   Q.     -- name you?
 4                You described earlier a phone
 5          conversation that you had after you got sued a
 6          second time with somebody at the law firm of Anapol
 7          Schwartz.  Is Mr. Pepin the person you talked to
 8          again?
 9   A.     I believe he's the only one I ever talked to.  Yes.
10   Q.     And then what was it Mr. Pepin told you when you
11          called him after you were sued in this lawsuit?
12   A.     Yeah.  So I got served.  So I called him and said,
13          what about the letter.  And he just -- I don't know
14          the exact words.  But, it was, don't worry, we just
15          had to.  It had to be filed in Arizona.  So we had
16          to put you on the lawsuit because the razor was
17          purchased in California.
18                I guess that meant you couldn't file a
19          lawsuit in Arizona.  So he said, just file a
20          response and then you don't have to worry about it
21          after that.  And I asked him, can you help me file
22          a response.  He's like, I don't know if I can do
23          that.  I would have to talk to the lawyers.
24                And I said, well, the time is almost up,
25          the 20 days.  So he sent me an e-mail saying we're
```

# EXHIBIT "I"



**Anapol Schwartz**
PERSONAL INJURY LAWYERS

1710 Spruce Street
Philadelphia, PA 19103

1040 Kings Highway North
Suite 304
Cherry Hill, NJ 08034

Olde Liberty Square
4807 Jonestown Road
Suite 148
Harrisburg, PA 17109

8700 East Vista Bonita Drive
Suite 268
Scottsdale, AZ 85255

866-735-2792 Toll Free

www.AnapolSchwartz.com

August 25, 2015

**VIA HAND DELIVERY**
Mark Frandsen
JET RENT
2972 S Kyla Avenue, Suite A
Yuma, AZ 85365

     **RE:   2011 Polaris RZR S ATV**

Dear Mr. Frandsen,

     We represent Michael Thompson.  As you are aware, Mr. Thompson was catastrophically injured while riding a 2011 Polaris RZR S ATV that he had rented from Jet Rent on or about February 19, 2014.  As we discussed earlier, we will take possession of the said ATV and we have no intentions of naming Jet Rent or yourself in any subsequent lawsuit that maybe filed by Mr. Thompson.

     If you have any questions, feel free to contact me at (480) 515-4745.

                 Sincerely,

                 Ted Pepin
                 For the Firm

DEFENDANT'S
EXHIBIT
13
8-16-16   CK
PENGAD 800-631-6989

# EXHIBIT "J"

1   Larry E. Coben (SBN 15673)
Jo Ann Niemi (SBN 020873)

2   **ANAPOL WEISS**
8700 E. Vista Bonita Drive, Suite 268

3   Scottsdale, Arizona 85255
Telephone: (480) 515-4745

4   Facsimile: (480) 515-4744

5   Minute Entries: ME@anapolschwartz.com

6   *Attorneys for Plaintiffs*

**COPY**

DEC **2 3** 2015

(seal) MICHAEL K. JEANES, CLERK
        G. SHAMON
        DEPUTY CLERK

7

8            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9              IN AND FOR THE COUNTY OF MARICOPA

10

11  MICHAEL THOMPSON and RHONDA
THOMPSON, Husband and Wife;

12

13            Plaintiffs,

14  vs.

15  POLARIS INDUSTRIES, INC.; a foreign
corporation; POLARIS SALES, INC., a foreign

16  corporation; JET RENT, an Arizona business;
DOE DEFENDANTS 1-10; ABC

17  CORPORATIONS 1-10; and BLACK AND
WHITE PARTNERSHIPS 1-10,

18

19            Defendants.

20

Case No. CV2015-053625

**COMPLAINT**

**TORT – STRICT LIABILITY;
NEGLIGENCE; PUNITIVE
DAMAGES**

**JURY TRIAL DEMANDED**

21       Plaintiffs, by and through their undersigned counsel, and for their claims against the

22  Defendants, allege as follows:

23               **ALLEGATIONS COMMON TO ALL COUNTS**

24       1.    The Plaintiffs, Michael Thompson and Rhonda Thompson, his wife, have at all

25  relevant times resided at 288 W. 11000 N. Road, Manteno, Illinois 60950.

26       2.    Defendant Polaris Industries, Inc. (hereinafter referred to as "Polaris") has been

1   at all times relevant a foreign corporation incorporated in the State of Minnesota and

2   conducting continuous and substantial business in the State of Arizona and Maricopa County.

3   At all relevant times, Defendant "Polaris" has designed, manufactured, marketed, supplied and

4   sold its products including off-road vehicles (ORVs) such as the 2011 Polaris RZR at issue in

5   this case (VIN 4XAVE76A3BB076570, hereinafter referenced as "the Polaris RZR") to its

6   dealership networks across the United States and knew or should have known that its ORVs,

7   including the  Polaris RZR, could and/or would be marketed and sold by its dealership

8   networks to companies that rent these vehicles to recreational users/customers.  The Polaris

9   RZR that was operated by the Plaintiffs at the time of the incident described below was

10  distributed by Polaris (and/or its subsidiary defendant Polaris Sales, Inc.) throughout the State

11  of Arizona including Maricopa County.

12          3.      Defendant Polaris Sales, Inc. (hereinafter referred to as "Polaris Sales") has been

13  at all times relevant hereto a subsidiary corporation fully owned by "Polaris" with its offices at

14  2100 Highway 55, Medina, Minnesota.  Polaris Sales is authorized to conduct business in the

15  State of Arizona and it has marketed and sold new Polaris products to the Polaris Dealership

16  network in this State, including the 2011 Polaris RZR being operated by the Plaintiff Michael

17  Thompson at the time of the incident described below.  Polaris Sales, Inc. conducts substantial

18  business regularly throughout the State of Arizona including Maricopa County.  Polaris and

19  Polaris Sales are referred to collectively herein as "the Polaris Defendants".

20          4.      Defendant Jet Rent is the trade name for the Arizona business entity which has at

21  all times materials hereto conducted business at 2972 South Kyla Avenue, Suite A, Yuma,

22  Arizona 85365.  Jet Rent is in the business of advertising, marketing, and renting recreational

23  off-road vehicles ("ORVs") including but not limited to Polaris ORVs.

24          5.      Under the trade name Jet Rent, this business holds itself out to the public as the

25  renter of Polaris products and it advertises these products to potential rental customers who live

26  and work in and visit Arizona communities including Maricopa County.  This defendant

2

1   advertised Polaris products including the 2011 Polaris RZR that it rented to the Plaintiffs.

2        6.    Defendant Jet Rent, by and through its duly authorized agents, employees and/or

3   servants provided, rented and supplied the subject 2011 Polaris RZR to Plaintiffs, Michael

4   Thompson and Rhonda Thompson, on February 19, 2014.

5        7.    There may exist additional Defendants which the Plaintiffs have been unable to

6   determine to date. For purposes of the within Complaint, said individuals or business entities

7   have been nominated as Doe Defendants 1-10, ABC Corporations 1-10, and Black and White

8   Partnerships 1-10. The Plaintiffs reserve the right to amend the within Complaint when the

9   identity of said individuals or business entities become known.

10       8.    The Doe Defendants 1-10, ABC Corporations 1-10, and Black and White

11  Partnerships 1-10 are presently unknown to Plaintiffs and are therefore sued by such fictitious

12  names. Plaintiffs are informed and believe and thereon allege that each of the defendants

13  designated herein as Doe may be responsible in some manner for the events and happenings

14  referred to herein and caused injury and damages proximately thereby to Plaintiffs as herein

15  alleged. Plaintiffs will ask leave of the court to amend this Complaint to insert the true names

16  and capacities of said Doe Defendants 1-10, ABC Corporations 1-10, and Black and White

17  Partnerships 1-10 when same have been ascertained by Plaintiffs, together with appropriate

18  charging allegations and to join such Defendants in this action.

19       9.    On February 19, 2014, the Plaintiffs rented the Polaris RZR from defendant Jet

20  Rent. On this same day, at about 4:00 P.M., Plaintiff Michael Thompson was driving and his

21  wife Rhonda was riding as a passenger on the Polaris RZR in the desert area east of South

22  Fortuna Road (per the police report: N32 41.658 W 114 26.492) when the incident occurred.

23  The Plaintiffs were wearing the available seat belts and helmets and operating the Polaris RZR

24  in an ordinary fashion. While traversing the desert, the Polaris RZR was caused to rollover.

25  During the rollover event, and because of defects in the Polaris RZR and its lack of

26  crashworthiness, Plaintiff Michael Thompson suffered a devastating and catastrophic injury to

1    his cervical spine resulting in permanent quadriplegia and other secondary injuries, harm and

2    damages as set forth below.

3        10.    As a result of the misconduct of the Defendants and the product defects as set

4    forth below, Plaintiff Michael Thompson has suffered serious and catastrophic injury, including

5    spinal cord injury resulting in paralysis, the loss of bladder and bowel function and other

6    functional losses, together with pain and suffering, disfigurement, secondary complications,

7    disability, loss of life's pleasures, past and future loss of earnings and earning capacity, as well

8    as past and future costs and expenses for medical treatment, rehabilitation, attendant care related

9    expenses and other related and anticipated expenditures.  As a result of his spinal cord injury

10   and resulting paralysis, Plaintiff required lengthy hospitalization and rehabilitation in medical

11   facilities located in Maricopa County, Arizona.

12       11.    As a result of the negligence and product defects and intentional wrongdoing

13   described herein, the spinal cord injury suffered by Plaintiff Michael Thompson is permanent

14   and it has caused associated medical and functional complications, losses and disabilities, which

15   will continue in the future.

16       12.    As a result of the misconduct described herein and the injuries suffered by

17   Plaintiff Michael Thompson, his wife suffered in the past and will in the future suffer a loss of

18   consortium, society and other intangible losses for which seek fair compensation.

19       13.    Each of the named defendants is liable to the Plaintiffs for their respective

20   corporate negligence, design, manufacture, sale, distribution, rental and/or supply of a defective

21   product and the misconduct of their respective agents, employees and servants.

22                              **COUNT ONE**

23                    **Strict Products Liability – All Defendants**

24       14.    Paragraphs 1 through 13 are incorporated herein by reference as though fully set

25   forth.

26       15.    The Polaris RZR was at the time it left the hands of the defendants, defective and

4

1    unreasonably dangerous, unsafe and not crashworthy in accordance with applicable law, both

2    generally and in the following respects:

   a.  The Polaris RZR was equipped with inappropriate and unsafe restraint

     system necessary to provide occupant protection in the event of

     foreseeable collisions, crashes and rollovers;

   b.  The Polaris RZR was designed with a seat belt system that was defective

     and unsafe from both a geometric configuration and dynamic

     performance under foreseeable collisions, crashes and rollovers;

   c.  The Polaris RZR was unstable causing it to rollover when used under

     foreseeable conditions;

   d.  The Polaris RZR's rollover protection system was not safe, it was

     defective and not crashworthy to provide appropriate protection against

     head impact, leading to spinal cord injury in foreseeable accidental

     rollovers;

   e.  The Polaris RZR's seat belt system was defective and not crashworthy to

     provide appropriate protection for its intended use during foreseeable

     accidental rollovers;

   f.  The Polaris RZR's seat belt system was defective in design and/or

     manufacture and the defendants failed to remedy these defects;

   g.  The Polaris RZR's seat belt system was defective so that during

     foreseeable accident events it did not prevent head impact leading to

     catastrophic spinal cord injury;

   h.  The Polaris RZR's seat belt system was defective in design or

     manufacture because it did not include appropriate and necessary

     alternative restraint systems to minimize and/or eliminate harmful but

     (with the included belt system) foreseeable excursion which belted

5

occupants would experience while riding in this vehicle and involved in
foreseeable rollover incidents;

    i.    Failing to include a reasonable, necessary and technologically feasible
alternative seat belt system that would appropriately and safely minimize
or eliminate occupant excursion during foreseeable rollover accidents,
thereby minimizing or eliminating the risk of significant head impact
leading to spinal cord injury;

    j.    Other defects or omissions rendering the Polaris RZR defective as will be
discovered during the processing of this action to hold the defendants
liable to the Plaintiffs.

16.    As a direct and legal result of the defects in design and manufacture of the
Polaris RZR as set forth above, the product did not perform as would be expected by an
ordinary consumer.

17.    Because the design, manufacture, production and marketing of the Polaris RZR
caused it to be unreasonably dangerous, the defendants should not have marketed this product
without offering the safety features needed to prevent motorists from incurring foreseeable harm
in rollovers.

18.    Under Arizona strict products liability law, defendant Jet Rent, in renting the
Polaris RZR to the Plaintiffs, is liable to the Plaintiffs as this defendant is in the chain of
distribution of a defective product.

19.    The severe injuries suffered by the Plaintiff and the damages and other losses
suffered by the Plaintiffs were caused by the design, manufacture, sale, supply, and rental of the
Polaris RZR in a defective condition, for which the Defendants are strictly liable to the
Plaintiffs.

## COUNT TWO

### Negligence – The Polaris Defendants

6

1    20.    Paragraphs 1 through 19 are incorporated herein by reference as though fully set

2 forth.

3    21.    The Polaris Defendants acting by and through their duly authorized agents,

4 servants and employees and are guilty of carelessness, negligence, gross negligence, and

5 reckless disregard for the safety of others, including the Plaintiffs, both generally and in the

6 following respects:

7        a.    Failing to design the Polaris RZR to include a reasonably configured

8            vehicle to minimize or avoid vehicle tip-up or rollover under foreseeable

9            operating conditions;

10       b.    Failing to remedy or offer an alternative safety system to minimize or

11           eliminate the dangers associated with the installation of an unsafe,

12           carelessly designed restraint system based upon their awareness of the

13           associated dangers;

14       c.    Failing to design the Polaris RZR to include a reasonable alternative

15           restraint system that they had designed, assembled, marketed and

16           supplied with other ORVs to provide improved restraint in foreseeable

17           incidents including rollovers;

18       d.    Failing to incorporate into the design of the Polaris RZR an appropriately

19           designed alternative restraint system to minimize or eliminate the risk of

20           occupant excursion causing injurious head and spinal cord injury in

21           foreseeable rollover incidents;

22       e.    Failing to design and/or intentionally and wantonly withholding from

23           installation in the Polaris RZR an alternative, reasonably designed

24           restraint system that would provide substantially improved protection

25           against head impacts and spinal cord injury in foreseeable rollover

26           incidents–in the face of corporate knowledge of the high risk of serious

7

and catastrophic spinal cord injury to occupants in rollover crashes—despite the defendants' awareness of alternative, superior and non-defective restraint systems;

 f. Designing, manufacturing, selling, and/or supplying the Polaris RZR in such a manner that it was not safe and it was not crashworthy;

 g. Failing to design the Polaris RZR in accordance with the state of the art;

 h. Failing to reasonably and properly test and/or analyze the testing of the Polaris RZR under reasonably foreseeable rollover circumstances;

 i. Failing to adequately warn/instruct motorists of the foreseeable dangers of the risks posed by the Polaris RZR's defective and unsafe design;

 j. Failing to use due care under the circumstances;

 k. Making a corporate decision to deprive motorists of necessary safety systems based on economic criteria instead of design/safety criteria; and

 l. Designing and releasing for sale, and then subsequently failing to take corrective action to rectify the danger associated with the seat belt system in question;

 m. Such other acts or omissions constituting carelessness, negligence, gross negligence, wantonness, and reckless disregard of safety as may appear during the course of discovery or that might be adduced at the trial of this matter.

 22. Because of the misconduct of the Polaris Defendants and the unsafe design of the Polaris RZR, the Polaris Defendants breached the duty they owed to motorists and increased the risk of harm to the Plaintiff, which resulted in the Plaintiff's severe injuries and the damages and losses suffered by the Plaintiffs.

 23. The Polaris Defendants breached their duty to the Plaintiff by consciously disregarding a substantial risk that its conduct would significantly injure the rights of others.

8

24.    The Polaris Defendants' wrongful conduct in design, manufacture, sale, supply and distribution of the Polaris RZR was guided by either reckless indifference or wanton disregard of the interests of others.

25.    The Polaris Defendants knew, realized, or should have reasonably known or realized that it created an unreasonable risk of causing physical harm to another by the design of the Polaris RZR and failed to exercise reasonable care to prevent such risk from taking effect.

## COUNT THREE

### Punitive Damages – The Polaris Defendants

26.    Paragraphs 1 through 25 are incorporated herein by reference as though fully set forth.

27.    The Polaris Defendants acting by and through their duly authorized agents, servants and employees, is guilty of gross negligence and reckless disregard for the safety of others, including the Plaintiffs, both generally and in the following respects:

    a.    Failing to design and/or intentionally and wantonly withholding from use in the Polaris RZR a reasonably designed and necessary rollover protection system in the face of corporate knowledge of the high risk of serious and catastrophic spinal cord injury to occupants in rollover crashes and despite the defendants' awareness of alternative restraint systems it was marketed in other similar products;

    b.    Failing to remedy the defective and unreasonably dangerous restraint system after it had tested and understood that an alternative restraint system provided needed safety protection;

    c.    Intentionally rejecting the use of an alternative restraint system that it knew provided needed protection in rollovers, thereby deciding it was acceptable to expose ordinary customers to unreasonable risk of injury;

9

d.    Making a corporate decision to deprive motorists of necessary safety systems based on economic criteria instead of design/safety criteria;

e.    Such other acts or omissions constituting gross negligence, wantonness, and reckless disregard of safety as may appear during the course of discovery or that might be adduced at the trial of this matter.

28.    The Polaris Defendants breached their duty to the Plaintiffs by consciously disregarding a substantial risk that its conduct would significantly injure the rights of others.

29.    The Polaris Defendants knew and realized that it created an unreasonable risk of causing physical harm to another by the design of the Polaris RZR with a woefully inadequate restraint system.

30.    The severe misconduct of the Polaris Defendants and the unsafe and defective design of the Polaris RZR, as set forth herein, warrants the imposition of punitive damages against the Defendant.

## COUNT FOUR

### Negligence – Jet Rent

31.    Paragraphs 1 through 30 are incorporated herein by reference as though fully set forth.

32.    Defendant Jet Rent, acting by and through its duly authorized agents, servants and employees, and are guilty of carelessness, negligence, gross negligence, and reckless disregard for the safety of others, including the Plaintiffs, both generally and in the following respects:

a.    Providing, renting and supplying the Polaris RZR, which was defectively designed and manufactured;

b.    Providing, renting and supplying the Polaris RZR without providing proper and necessary instructions;

10

c.    Providing, renting and supplying the Polaris RZR without providing proper and necessary warnings

d.    Providing, renting and supplying the Polaris RZR without providing proper and necessary equipment;

e.    Failing to adequately warn/instruct motorists of the foreseeable dangers of the risks posed by the Polaris RZR's defective and unsafe design;

f.    Failing to use due care under the circumstances; and

j.    Such other acts or omissions constituting carelessness, negligence, gross negligence, wantonness, and reckless disregard of safety as may appear during the course of discovery or that might be adduced at the trial of this matter.

32.    Defendant Jet Rent breached its duty to the Plaintiff by disregarding a substantial risk that its conduct would significantly injure the rights of others.

33.    Defendant Jet Rent knew, realized, or should have reasonably known or realized that it created an unreasonable risk of causing physical harm to another by providing, renting and supplying the Polaris RZR and failed to exercise reasonable care to prevent such risk from taking effect.

34.    Because of the misconduct of Defendant Jet Rent and the unsafe design of the Polaris RZR, Defendant Jet Rent breached the duty it owed to motorists and increased the risk of harm to Plaintiff Michael Thompson, which resulted in the Plaintiff's severe injuries and the damages and losses suffered by the Plaintiffs.

## DAMAGES

WHEREFORE, Plaintiffs request judgment be entered against the Defendants, and each of them, as follows:

a.    Past and future reasonable and necessary medical, hospital and rehabilitation care and services, nursing care and services, medication,

1           therapy, housing costs, and other expenses;

2        b.     Past and future pain and suffering, emotional distress, loss of life's

3           pleasures, loss of consortium and services and all other intangible losses

4           recoverable under the law;

5        c.     Past and future impairment and loss of the quality of life and life's

6           pleasures and loss of services and consortium;

7        d.     Past loss of earnings and the future loss of earnings capacity;

8        e.     Any and all other losses and damages sustained by the Plaintiffs and

9           punitive damages (as to the Polaris Defendants only) to which they are

10          legally entitled either by statute or by the common law;

11       f.     Attorney's fees, interest and costs as allowed by law; and

12       g.     Any other relief to which the Court finds Plaintiffs are entitled.

13   DATED this __23rd__ day of December, 2015.

14                  ANAPOL WEISS

17                  Larry E. Coben

18                  JoAnn Niemi
                     *Attorneys for Plaintiffs*

# EXHIBIT "K"

# Business Record Details »

Minnesota Business Name
## Polaris Industries Inc.

**Business Type**
Business Corporation (Domestic)

**MN Statute**
302A

**File Number**
8K-15

**Home Jurisdiction**
Minnesota

**Filing Date**
09/23/1994

**Status**
Active / In Good Standing

**Renewal Due Date**
12/31/2017

**Registered Office Address**
100 S 5th Str #1075
Mpls, MN 55402
USA

**Number of Shares**
180,000,000

**Registered Agent(s)**
CT Corporation System Inc

**Principal Executive Office Address**
2100 HIGHWAY 55
Medina, MN 55340
USA

**Chief Executive Officer**
Scott W. Wine
2100 HIGHWAY 55
Medina, MN 55340
USA

Filing History

# Filing History

Select the item(s) you would like to order:    Order Selected Copies

| | Filing Date | Filing | Effective Date |
|---|---|---|---|
| ☐ | 09/23/1994 | Original Filing - Business Corporation (Domestic) | |

| | Filing Date | Filing | Effective Date |
|---|---|---|---|
| ☐ | 09/23/1994 | Business Corporation (Domestic) Business Name<br>(Business Name: Polaris Industries Inc.) | |
| ☐ | 10/03/1994 | Amendment - Business Corporation (Domestic) | |
| ☐ | 04/18/1996 | Registered Office and/or Agent - Business Corporation (Domestic) | |
| ☐ | 12/09/1996 | Consent to Use of Name - Business Corporation (Domestic) | |
| ☐ | 12/26/1996 | Merger - Business Corporation (Domestic) | |
| ☐ | 07/12/1999 | Registered Office and/or Agent - Business Corporation (Domestic) | |
| ☐ | 05/24/2000 | Business Corporation (Domestic) Other | |
| ☐ | 05/07/2001 | Registered Office and/or Agent - Business Corporation (Domestic) | |
| ☐ | 02/22/2010 | Registered Office and/or Agent - Business Corporation (Domestic) | |
| ☐ | 08/15/2011 | Business Corporation (Domestic) Change of Shares | |
| ☐ | 10/24/2011 | Amendment - Business Corporation (Domestic) | |
| ☐ | 3/14/2016 | Administrative Dissolution - Business Corporation (Domestic) | |
| ☐ | 4/5/2016 | Annual Reinstatement - Business Corporation (Domestic) | |

© 2016 Office of the Minnesota Secretary of State - terms and conditions

## Business Record Details »

Minnesota Business Name
## POLARIS SALES INC.

| | |
|---|---|
| **Business Type** | **MN Statute** |
| Business Corporation (Domestic) | 302A |
| **File Number** | **Home Jurisdiction** |
| 10I-849 | Minnesota |
| **Filing Date** | **Status** |
| 10/23/1998 | Active / In Good Standing |
| **Renewal Due Date** | **Registered Office Address** |
| 12/31/2016 | 100 S 5th STr #1075 |
| | Mpls, MN 55402 |
| | USA |
| **Number of Shares** | **Registered Agent(s)** |
| 15,000 | CT Corporation System Inc |
| **Chief Executive Officer** | **Principal Executive Office Address** |
| Scott W. Wine | 2100 HIGHWAY 55 |
| 2100 HIGHWAY 55 | Medina, MN 55340 |
| Medina, MN 55340 | USA |
| USA | |

**Comments**
Inc. holds RN-25128

Filing History

# Filing History

Select the item(s) you would like to order:    Order Selected Copies

| | Filing Date | Filing | Effective Date |
|---|---|---|---|
| ☐ | 10/23/1998 | Original Filing - Business Corporation (Domestic) | |

| ☐ | Filing Date | Filing | Effective Date |
|---|---|---|---|
| | 10/23/1998 | Business Corporation (Domestic) Business Name (Business Name: POLARIS SALES INC.) | |
| ☐ | 11/18/1998 | Business Corporation (Domestic) Change of Shares | |
| ☐ | 05/07/2001 | Registered Office and/or Agent - Business Corporation (Domestic) | |
| ☐ | 02/22/2010 | Registered Office and/or Agent - Business Corporation (Domestic) | |

© 2016 Office of the Minnesota Secretary of State - terms and conditions

# EXHIBIT "L"

1 Larry E. Coben (SBN 15673)
 Jo Ann Niemi (SBN 020873)
2 **ANAPOL WEISS**
 8700 E. Vista Bonita Drive, Suite 268
3 Scottsdale, Arizona 85255
 Telephone: (480) 515-4745
4 Facsimile: (480) 515-4744
 Minute Entries: ME@anapolschwartz.com
5

**COPY**

DEC **2 3** 2015

MICHAEL K. JEANES, CLERK
G. SHAMON
DEPUTY CLERK

6 *Attorneys for Plaintiffs*

7

8     IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9      IN AND FOR THE COUNTY OF MARICOPA

10

11 MICHAEL THOMPSON and RHONDA
 THOMPSON, Husband and Wife;
12          Case No. CV2015-053625

13    Plaintiffs,

14 vs.         **COMPLAINT**

15 POLARIS INDUSTRIES, INC.; a foreign
 corporation; POLARIS SALES, INC., a foreign **TORT – STRICT LIABILITY;**
16 corporation; JET RENT, an Arizona business; **NEGLIGENCE; PUNITIVE**
 DOE DEFENDANTS 1-10; ABC **DAMAGES**
17 CORPORATIONS 1-10; and BLACK AND
 WHITE PARTNERSHIPS 1-10,
18          **JURY TRIAL DEMANDED**
19    Defendants.

20

21    Plaintiffs, by and through their undersigned counsel, and for their claims against the

22 Defendants, allege as follows:

23         **ALLEGATIONS COMMON TO ALL COUNTS**

24    1.  The Plaintiffs, Michael Thompson and Rhonda Thompson, his wife, have at all

25 relevant times resided at 288 W. 11000 N. Road, Manteno, Illinois 60950.

26    2.  Defendant Polaris Industries, Inc. (hereinafter referred to as "Polaris") has been

1   at all times relevant a foreign corporation incorporated in the State of Minnesota and

2   conducting continuous and substantial business in the State of Arizona and Maricopa County.

3   At all relevant times, Defendant "Polaris" has designed, manufactured, marketed, supplied and

4   sold its products including off-road vehicles (ORVs) such as the 2011 Polaris RZR at issue in

5   this case (VIN 4XAVE76A3BB076570, hereinafter referenced as "the Polaris RZR") to its

6   dealership networks across the United States and knew or should have known that its ORVs,

7   including the Polaris RZR, could and/or would be marketed and sold by its dealership

8   networks to companies that rent these vehicles to recreational users/customers. The Polaris

9   RZR that was operated by the Plaintiffs at the time of the incident described below was

10  distributed by Polaris (and/or its subsidiary defendant Polaris Sales, Inc.) throughout the State

11  of Arizona including Maricopa County.

12          3.      Defendant Polaris Sales, Inc. (hereinafter referred to as "Polaris Sales") has been

13  at all times relevant hereto a subsidiary corporation fully owned by "Polaris" with its offices at

14  2100 Highway 55, Medina, Minnesota. Polaris Sales is authorized to conduct business in the

15  State of Arizona and it has marketed and sold new Polaris products to the Polaris Dealership

16  network in this State, including the 2011 Polaris RZR being operated by the Plaintiff Michael

17  Thompson at the time of the incident described below. Polaris Sales, Inc. conducts substantial

18  business regularly throughout the State of Arizona including Maricopa County. Polaris and

19  Polaris Sales are referred to collectively herein as "the Polaris Defendants".

20          4.      Defendant Jet Rent is the trade name for the Arizona business entity which has at

21  all times materials hereto conducted business at 2972 South Kyla Avenue, Suite A, Yuma,

22  Arizona 85365. Jet Rent is in the business of advertising, marketing, and renting recreational

23  off-road vehicles ("ORVs") including but not limited to Polaris ORVs.

24          5.      Under the trade name Jet Rent, this business holds itself out to the public as the

25  renter of Polaris products and it advertises these products to potential rental customers who live

26  and work in and visit Arizona communities including Maricopa County. This defendant

2

1    advertised Polaris products including the 2011 Polaris RZR that it rented to the Plaintiffs.

2         6.       Defendant Jet Rent, by and through its duly authorized agents, employees and/or

3    servants provided, rented and supplied the subject 2011 Polaris RZR to Plaintiffs, Michael

4    Thompson and Rhonda Thompson, on February 19, 2014.

5         7.       There may exist additional Defendants which the Plaintiffs have been unable to

6    determine to date. For purposes of the within Complaint, said individuals or business entities

7    have been nominated as Doe Defendants 1-10, ABC Corporations 1-10, and Black and White

8    Partnerships 1-10. The Plaintiffs reserve the right to amend the within Complaint when the

9    identity of said individuals or business entities become known.

10        8.       The Doe Defendants 1-10, ABC Corporations 1-10, and Black and White

11    Partnerships 1-10 are presently unknown to Plaintiffs and are therefore sued by such fictitious

12    names. Plaintiffs are informed and believe and thereon allege that each of the defendants

13    designated herein as Doe may be responsible in some manner for the events and happenings

14    referred to herein and caused injury and damages proximately thereby to Plaintiffs as herein

15    alleged. Plaintiffs will ask leave of the court to amend this Complaint to insert the true names

16    and capacities of said Doe Defendants 1-10, ABC Corporations 1-10, and Black and White

17    Partnerships 1-10 when same have been ascertained by Plaintiffs, together with appropriate

18    charging allegations and to join such Defendants in this action.

19        9.       On February 19, 2014, the Plaintiffs rented the Polaris RZR from defendant Jet

20    Rent. On this same day, at about 4:00 P.M., Plaintiff Michael Thompson was driving and his

21    wife Rhonda was riding as a passenger on the Polaris RZR in the desert area east of South

22    Fortuna Road (per the police report: N32 41.658 W 114 26.492) when the incident occurred.

23    The Plaintiffs were wearing the available seat belts and helmets and operating the Polaris RZR

24    in an ordinary fashion. While traversing the desert, the Polaris RZR was caused to rollover.

25    During the rollover event, and because of defects in the Polaris RZR and its lack of

26    crashworthiness, Plaintiff Michael Thompson suffered a devastating and catastrophic injury to

<center>3</center>

1  his cervical spine resulting in permanent quadriplegia and other secondary injuries, harm and

2  damages as set forth below.

3         10.    As a result of the misconduct of the Defendants and the product defects as set

4  forth below, Plaintiff Michael Thompson has suffered serious and catastrophic injury, including

5  spinal cord injury resulting in paralysis, the loss of bladder and bowel function and other

6  functional losses, together with pain and suffering, disfigurement, secondary complications,

7  disability, loss of life's pleasures, past and future loss of earnings and earning capacity, as well

8  as past and future costs and expenses for medical treatment, rehabilitation, attendant care related

9  expenses and other related and anticipated expenditures.  As a result of his spinal cord injury

10  and resulting paralysis, Plaintiff required lengthy hospitalization and rehabilitation in medical

11  facilities located in Maricopa County, Arizona.

12         11.    As a result of the negligence and product defects and intentional wrongdoing

13  described herein, the spinal cord injury suffered by Plaintiff Michael Thompson is permanent

14  and it has caused associated medical and functional complications, losses and disabilities, which

15  will continue in the future.

16         12.    As a result of the misconduct described herein and the injuries suffered by

17  Plaintiff Michael Thompson, his wife suffered in the past and will in the future suffer a loss of

18  consortium, society and other intangible losses for which seek fair compensation.

19         13.    Each of the named defendants is liable to the Plaintiffs for their respective

20  corporate negligence, design, manufacture, sale, distribution, rental and/or supply of a defective

21  product and the misconduct of their respective agents, employees and servants.

22  <div align="center">**COUNT ONE**</div>

23  <div align="center">**Strict Products Liability – All Defendants**</div>

24         14.    Paragraphs 1 through 13 are incorporated herein by reference as though fully set

25  forth.

26         15.    The Polaris RZR was at the time it left the hands of the defendants, defective and

<div align="center">4</div>

1   unreasonably dangerous, unsafe and not crashworthy in accordance with applicable law, both

2   generally and in the following respects:

3          a.     The Polaris RZR was equipped with inappropriate and unsafe restraint

4                  system necessary to provide occupant protection in the event of

5                  foreseeable collisions, crashes and rollovers;

6          b.     The Polaris RZR was designed with a seat belt system that was defective

7                  and unsafe from both a geometric configuration and dynamic

8                  performance under foreseeable collisions, crashes and rollovers;

9          c.     The Polaris RZR was unstable causing it to rollover when used under

10                foreseeable conditions;

11         d.     The Polaris RZR's rollover protection system was not safe, it was

12                defective and not crashworthy to provide appropriate protection against

13                head impact, leading to spinal cord injury in foreseeable accidental

14                rollovers;

15         e.     The Polaris RZR's seat belt system was defective and not crashworthy to

16                provide appropriate protection for its intended use during foreseeable

17                accidental rollovers;

18         f.     The Polaris RZR's seat belt system was defective in design and/or

19                manufacture and the defendants failed to remedy these defects;

20         g.     The Polaris RZR's seat belt system was defective so that during

21                foreseeable accident events it did not prevent head impact leading to

22                catastrophic spinal cord injury;

23         h.     The Polaris RZR's seat belt system was defective in design or

24                manufacture because it did not include appropriate and necessary

25                alternative restraint systems to minimize and/or eliminate harmful but

26                (with the included belt system) foreseeable excursion which belted

occupants would experience while riding in this vehicle and involved in foreseeable rollover incidents;

i. Failing to include a reasonable, necessary and technologically feasible alternative seat belt system that would appropriately and safely minimize or eliminate occupant excursion during foreseeable rollover accidents, thereby minimizing or eliminating the risk of significant head impact leading to spinal cord injury;

j. Other defects or omissions rendering the Polaris RZR defective as will be discovered during the processing of this action to hold the defendants liable to the Plaintiffs.

16. As a direct and legal result of the defects in design and manufacture of the Polaris RZR as set forth above, the product did not perform as would be expected by an ordinary consumer.

17. Because the design, manufacture, production and marketing of the Polaris RZR caused it to be unreasonably dangerous, the defendants should not have marketed this product without offering the safety features needed to prevent motorists from incurring foreseeable harm in rollovers.

18. Under Arizona strict products liability law, defendant Jet Rent, in renting the Polaris RZR to the Plaintiffs, is liable to the Plaintiffs as this defendant is in the chain of distribution of a defective product.

19. The severe injuries suffered by the Plaintiff and the damages and other losses suffered by the Plaintiffs were caused by the design, manufacture, sale, supply, and rental of the Polaris RZR in a defective condition, for which the Defendants are strictly liable to the Plaintiffs.

**COUNT TWO**

**<u>Negligence – The Polaris Defendants</u>**

6

20.     Paragraphs 1 through 19 are incorporated herein by reference as though fully set forth.

21.     The Polaris Defendants acting by and through their duly authorized agents, servants and employees and are guilty of carelessness, negligence, gross negligence, and reckless disregard for the safety of others, including the Plaintiffs, both generally and in the following respects:

      a.    Failing to design the Polaris RZR to include a reasonably configured vehicle to minimize or avoid vehicle tip-up or rollover under foreseeable operating conditions;

      b.    Failing to remedy or offer an alternative safety system to minimize or eliminate the dangers associated with the installation of an unsafe, carelessly designed restraint system based upon their awareness of the associated dangers;

      c.    Failing to design the Polaris RZR to include a reasonable alternative restraint system that they had designed, assembled, marketed and supplied with other ORVs to provide improved restraint in foreseeable incidents including rollovers;

      d.    Failing to incorporate into the design of the Polaris RZR an appropriately designed alternative restraint system to minimize or eliminate the risk of occupant excursion causing injurious head and spinal cord injury in foreseeable rollover incidents;

      e.    Failing to design and/or intentionally and wantonly withholding from installation in the Polaris RZR an alternative, reasonably designed restraint system that would provide substantially improved protection against head impacts and spinal cord injury in foreseeable rollover incidents–in the face of corporate knowledge of the high risk of serious

7

and catastrophic spinal cord injury to occupants in rollover crashes—despite the defendants' awareness of alternative, superior and non-defective restraint systems;

    f.    Designing, manufacturing, selling, and/or supplying the Polaris RZR in such a manner that it was not safe and it was not crashworthy;

    g.    Failing to design the Polaris RZR in accordance with the state of the art;

    h.    Failing to reasonably and properly test and/or analyze the testing of the Polaris RZR under reasonably foreseeable rollover circumstances;

    i.    Failing to adequately warn/instruct motorists of the foreseeable dangers of the risks posed by the Polaris RZR's defective and unsafe design;

    j.    Failing to use due care under the circumstances;

    k.    Making a corporate decision to deprive motorists of necessary safety systems based on economic criteria instead of design/safety criteria; and

    l.    Designing and releasing for sale, and then subsequently failing to take corrective action to rectify the danger associated with the seat belt system in question;

    m.    Such other acts or omissions constituting carelessness, negligence, gross negligence, wantonness, and reckless disregard of safety as may appear during the course of discovery or that might be adduced at the trial of this matter.

22.    Because of the misconduct of the Polaris Defendants and the unsafe design of the Polaris RZR, the Polaris Defendants breached the duty they owed to motorists and increased the risk of harm to the Plaintiff, which resulted in the Plaintiff's severe injuries and the damages and losses suffered by the Plaintiffs.

23.    The Polaris Defendants breached their duty to the Plaintiff by consciously disregarding a substantial risk that its conduct would significantly injure the rights of others.

8

1    24.    The Polaris Defendants' wrongful conduct in design, manufacture, sale, supply

2   and distribution of the Polaris RZR was guided by either reckless indifference or wanton

3   disregard of the interests of others.

4    25.    The Polaris Defendants knew, realized, or should have reasonably known or

5   realized that it created an unreasonable risk of causing physical harm to another by the design of

6   the Polaris RZR and failed to exercise reasonable care to prevent such risk from taking effect.

7                                    **COUNT THREE**

8                        **Punitive Damages – The Polaris Defendants**

9    26.    Paragraphs 1 through 25 are incorporated herein by reference as though fully set

10   forth.

11    27.    The Polaris Defendants acting by and through their duly authorized agents,

12   servants and employees, is guilty of gross negligence and reckless disregard for the safety of

13   others, including the Plaintiffs, both generally and in the following respects:

14          a.    Failing to design and/or intentionally and wantonly withholding from use

15                in the Polaris RZR a reasonably designed and necessary rollover

16                protection system in the face of corporate knowledge of the high risk of

17                serious and catastrophic spinal cord injury to occupants in rollover

18                crashes and despite the defendants' awareness of alternative restraint

19                systems it was marketed in other similar products;

20          b.    Failing to remedy the defective and unreasonably dangerous restraint

21                system after it had tested and understood that an alternative restraint

22                system provided needed safety protection;

23          c.    Intentionally rejecting the use of an alternative restraint system that it

24                knew provided needed protection in rollovers, thereby deciding it was

25                acceptable to expose ordinary customers to unreasonable risk of injury;

26

                                          9

d. Making a corporate decision to deprive motorists of necessary safety systems based on economic criteria instead of design/safety criteria;

e. Such other acts or omissions constituting gross negligence, wantonness, and reckless disregard of safety as may appear during the course of discovery or that might be adduced at the trial of this matter.

28. The Polaris Defendants breached their duty to the Plaintiffs by consciously disregarding a substantial risk that its conduct would significantly injure the rights of others.

29. The Polaris Defendants knew and realized that it created an unreasonable risk of causing physical harm to another by the design of the Polaris RZR with a woefully inadequate restraint system.

30. The severe misconduct of the Polaris Defendants and the unsafe and defective design of the Polaris RZR, as set forth herein, warrants the imposition of punitive damages against the Defendant.

## COUNT FOUR

### Negligence – Jet Rent

31. Paragraphs 1 through 30 are incorporated herein by reference as though fully set forth.

32. Defendant Jet Rent, acting by and through its duly authorized agents, servants and employees, and are guilty of carelessness, negligence, gross negligence, and reckless disregard for the safety of others, including the Plaintiffs, both generally and in the following respects:

a. Providing, renting and supplying the Polaris RZR, which was defectively designed and manufactured;

b. Providing, renting and supplying the Polaris RZR without providing proper and necessary instructions;

c.     Providing, renting and supplying the Polaris RZR without providing proper and necessary warnings

d.     Providing, renting and supplying the Polaris RZR without providing proper and necessary equipment;

e.     Failing to adequately warn/instruct motorists of the foreseeable dangers of the risks posed by the Polaris RZR's defective and unsafe design;

f.     Failing to use due care under the circumstances; and

j.     Such other acts or omissions constituting carelessness, negligence, gross negligence, wantonness, and reckless disregard of safety as may appear during the course of discovery or that might be adduced at the trial of this matter.

32.     Defendant Jet Rent breached its duty to the Plaintiff by disregarding a substantial risk that its conduct would significantly injure the rights of others.

33.     Defendant Jet Rent knew, realized, or should have reasonably known or realized that it created an unreasonable risk of causing physical harm to another by providing, renting and supplying the Polaris RZR and failed to exercise reasonable care to prevent such risk from taking effect.

34.     Because of the misconduct of Defendant Jet Rent and the unsafe design of the Polaris RZR, Defendant Jet Rent breached the duty it owed to motorists and increased the risk of harm to Plaintiff Michael Thompson, which resulted in the Plaintiff's severe injuries and the damages and losses suffered by the Plaintiffs.

## DAMAGES

WHEREFORE, Plaintiffs request judgment be entered against the Defendants, and each of them, as follows:

a.     Past and future reasonable and necessary medical, hospital and rehabilitation care and services, nursing care and services, medication,

11

1      therapy, housing costs, and other expenses;

2      b.      Past and future pain and suffering, emotional distress, loss of life's

3              pleasures, loss of consortium and services and all other intangible losses

4              recoverable under the law;

5      c.      Past and future impairment and loss of the quality of life and life's

6              pleasures and loss of services and consortium;

7      d.      Past loss of earnings and the future loss of earnings capacity;

8      e.      Any and all other losses and damages sustained by the Plaintiffs and

9              punitive damages (as to the Polaris Defendants only) to which they are

10             legally entitled either by statute or by the common law;

11     f.      Attorney's fees, interest and costs as allowed by law; and

12     g.      Any other relief to which the Court finds Plaintiffs are entitled.

13     DATED this __23rd__ day of December, 2015.

14                                          ANAPOL WEISS

15

16                                          _____

17                                          Larry E. Coben
                                            JoAnn Niemi
18                                          *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

12

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
K. Laird, Deputy
2/22/2016 11:09:00 AM
Filing ID 7213438

1 | Paul G. Cereghini (Bar No. 009641)
Jeffrey C. Warren (Bar No. 021383)
2 | Amanda Heitz (Bar No. 026519
**BOWMAN AND BROOKE LLP**
3 | Suite 1600, Phoenix Plaza
2901 North Central Avenue
4 | Phoenix, Arizona 85012-2736
(602) 643-2300
5 | Fax: (602)-248-0947
paul.ceregini@bowmanandbrooke.com
6 | jeff.warren@bowmanandbrooke.com
amanda.heitz@bowmanandbrooke.com
7 |
Attorneys for Defendant(s) Polaris Industries, Inc. and Polaris Sales, Inc.
8 |

9 | <center>**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**</center>

10 | <center>**IN AND FOR THE COUNTY OF MARICOPA**</center>

11 | MICHAEL THOMPSON and RHONDA
THOMPSON, Husband and Wife,

12 | Case No. CV2015-053625

13 |    Plaintiffs,

14 | v. | **COMBINED ANSWER TO PLAINTIFFS' COMPLAINT ON BEHALF OF POLARIS SALES INC. AND POLARIS INDUSTRIES INC.**

15 | POLARIS INDUSTRIES, INC., a foreign
corporation; POLARIS SALES, INC., a foreign
corporation; JET RENT, an Arizona business;
16 | DOE DEFENDANTS 1-10; ABC
CORPORATIONS 1-10; and BLACK AND
17 | WHITE PARTNERSHIPS 1-10,

18 |    Defendants.

19 |    Defendants Polaris Sales Inc. ("Polaris Sales") and Polaris Industries Inc. ("Polaris

20 | Industries") (collectively, "the Polaris Defendants"), for their Answer to Plaintiffs' Complaint,

21 | hereby admit, deny and allege as follows:

22 |    1.  The Polaris Defendants deny each and every allegation in the Complaint

23 | except those allegations that are hereinafter admitted, qualified, or otherwise answered.

24 |    2.  The Polaris Defendants lack knowledge or information sufficient to form a

25 | belief as to the truth or falsity of the allegations contained in paragraph 1 of the Complaint,

26 | and, accordingly, deny the same.

27 |    3.  Answering Paragraph 2 of Plaintiffs' Complaint, Polaris Industries admits that it

28 | is a corporation with its principal place of business in the State of Minnesota, that it is

authorized to do business in the State of Arizona, and that, through Polaris Sales Inc. it sells its products, including Polaris RZR vehicles, to independently owned and operated dealerships across the country, including dealers located in Arizona. Polaris further admits that it designs, in part, manufacturers, in part, markets, in part, supplies, in part, and sells, in part, certain off-road vehicles, including an off-road vehicle known as the Polaris RZR, and that it manufactured in part a Polaris RZR bearing the VIN 4XAVE76A3BB076570. Polaris denies the remaining allegations contained in paragraph 2 of the Complaint.

4. Answering paragraph 3 of Plaintiffs' Complaint, Polaris Sales admits only that it is a corporation with its principal place of business in the State of Minnesota, that it is authorized to do business in the State of Arizona, and that, it sells Polaris products, including Polaris RZR vehicles, to independently owned and operated dealerships across the country, including some located in Maricopa County, Arizona. Polaris Sales denies that it sold the specific vehicle identified in Plaintiffs' Complaint to an Arizona dealer.

5. Answering 4, 5, and 6 of Plaintiffs' Complaint, the Polaris Defendants respond that these paragraphs do not relate or refer to them and are not directed at them. Thus, they are not required to respond to these paragraphs. To the extent that any of these paragraphs are intended to allege liability of the Polaris Defendants, they are expressly denied.

6. Answering paragraphs 7 and 8 of Plaintiffs' Complaint, the Polaris Defendants respond that these paragraphs do not contain an allegation that they can admit or deny; accordingly, they are not required to respond to these paragraphs. To the extent that these paragraphs are intended to allege the liability of the Polaris Defendants, they are expressly denied.

7. The Polaris Defendants deny the allegations contained in paragraphs 9, 10, 11, 12, and 13 of the Complaint.

8. Answering paragraph 14 of the Complaint, the Polaris Defendants incorporate by reference their answers to paragraphs 1 through 13 of the Complaint.

9. The Polaris Defendants deny the allegations contained in paragraph 15 of the Complaint, including all subparts.

10.     The Polaris Defendants deny the allegations contained in paragraphs 16, 17, 18, and 19 of the Complaint.

11.     Answering paragraph 20 of the Complaint, the Polaris Defendants incorporate by reference their answers to paragraphs 1 through 19 of the Complaint.

12.     The Polaris Defendants deny the allegations contained in paragraph 21 of the Complaint, including all subparts.

13.     The Polaris Defendants deny the allegations contained in paragraph 22, 23, 24 and 25 of the Complaint.

14.     Answering paragraph 26 of the Complaint, the Polaris Defendants incorporate by reference their answers to paragraphs 1 through 25 of the Complaint.

15.     The Polaris Defendants deny the allegations contained in paragraph 27 of the Complaint, including all subparts.

16.     The Polaris Defendants deny the allegations contained in paragraphs 28, 29, and 30 of the Complaint.

17.     Answering paragraph 31 of the Complaint, the Polaris Defendants incorporate by reference their answers to paragraphs 1 through 30 of the Complaint.

18.     Answering both paragraphs numbered 32 and paragraphs 33 and 34, the Polaris Defendants respond that these paragraphs do not relate or refer to them and are not directed at them. Thus, they are not required to respond to these paragraphs. To the extent that any of these paragraphs are intended to allege liability of the Polaris Defendants, they are expressly denied.

19.     The Polaris Defendants specifically deny that Plaintiffs are entitled to the relief requested in their prayer following Paragraph 34, including subparts a. through g.

## AFFIRMATIVE DEFENSES

20.     The Polaris Defendants allege that Plaintiffs' Complaint, and each claim for relief therein, fails to state a claim against the Polaris Defendants upon which relief can be granted.

21.     The Polaris Defendants affirmatively allege that some or all of Plaintiffs'

1   claims for relief may be governed by the laws of a State other than Arizona.

2   22.   The Polaris Defendants affirmatively allege that Plaintiffs' claims may be

3   subject to dismissal or otherwise limited in whole or part as a sanction for spoliation of

4   evidence.

5   23.   The Polaris Defendants affirmatively allege that the negligence of someone

6   other than the Polaris Defendants, including but not limited to Plaintiffs, Jet Rent, and/or

7   Mark Frandsen, caused or contributed to the injuries alleged in the Complaint, and that

8   such negligence may serve to bar or reduce any recovery against the Polaris Defendants.

9   24.   Any damages described in Plaintiffs' Complaint were caused, in whole or in

10   part, by the conduct of Plaintiffs or others, for whom the Polaris Defendants are not

11   responsible and the Polaris Defendants' liability, if any, should be limited to their own fault.

12   Consequently, pursuant to Arizona Revised Statutes § 12-2506 or other applicable State

13   law, the relative degrees of fault of all parties and nonparties, including Plaintiffs, must be

14   determined and apportioned as a whole or at one time by the trier of fact.

15   25.   The Polaris Defendants affirmatively allege that Plaintiffs assumed the risk

16   of the injuries and damages claimed as a result of the events set forth in Plaintiffs'

17   Complaint and that Plaintiffs' assumption of the risk bars plaintiff's recovery.

18   26.   The Polaris Defendants affirmatively allege that the subject Polaris RZR was

19   not in a defective or unreasonably dangerous condition at the time it left the possession

20   and control of the Polaris Defendants.

21   27.   The Polaris Defendants affirmatively allege that the subject Polaris RZR

22   conformed with the state-of-the-art at the time it was distributed by the Polaris Defendants

23   and, therefore, Plaintiffs' claims are barred by application of the Arizona Revised Statutes

24   § 12-683(1) or other applicable State law.

25   28.   The Polaris Defendants affirmatively allege that the acts or omissions, if any,

26   of the Polaris Defendants were not a substantial factor in bringing about the Plaintiffs'

27   alleged injuries and, therefore, were not a contributing cause thereof, but were

28   superseded by the acts or omissions of Plaintiffs or others, which were the sole or

1    independent, intervening, and proximate cause of any such injuries or damages allegedly

2    suffered by Plaintiffs.

3        29.    The Polaris Defendants affirmatively allege that the proximate cause of the

4    incident giving rise to this action was an alteration or modification of the product that was

5    not reasonably foreseeable, made by a person other than the Polaris Defendants

6    subsequent to the time the product was sold.   Therefore, Plaintiffs' claims are barred

7    under Arizona Revised Statutes § 12-683(2) or other applicable State law.

8        30.    The Polaris Defendants affirmatively allege that the proximate cause of the

9    incident giving rise to this action was a use of the product that was for a purpose, in a

10   manner, or in an activity other than that which was reasonably foreseeable, or was

11   contrary to any express and adequate instructions or warnings appearing on or attached

12   to or delivered with the product about which Plaintiffs knew, or in the exercise of

13   reasonable diligence, should have known.   Therefore, Plaintiffs' claims are barred under

14   Arizona Revised Statutes §12-683(3) or other applicable State law.

15       31.    The Polaris Defendants affirmatively allege that Plaintiffs cannot show that

16   any alleged alternative design would render the product safer overall under the Restatement

17   (Third) of Torts: Product Liability § 2 cmt. f.

18       32.    The Polaris Defendants affirmatively allege that Plaintiffs failed to mitigate

19   their damages.

20       33.    The Polaris Defendants affirmatively allege that the State of Arizona's

21   judicially created definitions of manufacturing defect and design defect are unconstitutional

22   in that, among other things, they are void for vagueness, place an undue burden upon

23   interstate commerce, and constitute an impermissible effort to regulate in an area that has

24   previously been preempted by the federal government.

25       34.    The Polaris Defendants affirmatively allege that plaintiff's allegation for

26   punitive damages fails to state a claim or cause of action for punitive damages and

27   therefore, those claims for damages should be dismissed.

28       35.    Any claim for punitive damages, as in regards to the Polaris Defendants, is

13176822v1                                   5

constitutionally defective and otherwise improper and should be dismissed for one or more of the following reasons:

a.      A claim for punitive damages cannot be sustained because any award of punitive damages under Arizona law, without bifurcating the trial and trying all punitive damages issues only if and after liability on the merits has been found, would violate the Polaris Defendants' due process rights under the United States and Arizona Constitutions, and would be improper under common law and public policies of the State of Arizona and other applicable laws and statutes.

b.      A claim for punitive damages cannot be sustained because any award of punitive damages under Arizona law, subject to no pre-determined limit (such as a maximum multiple of compensatory damages or a maximum amount) on the amount of punitive damages that a jury may impose would violate the Polaris Defendants' due process rights under the United States and Arizona Constitutions and would be improper under common law and public policies of the State of Arizona and other applicable laws and statutes.

c.      A claim for punitive damages cannot be sustained because the standard for determining liability for punitive damages under Arizona law is vague and arbitrary and does not define with sufficient clarity the conduct or mental state, which gives rise to such a claim.  Therefore, any award of punitive damages would violate the Polaris Defendants' due process rights under the United States and Arizona Constitutions and would be improper under common law and public policies of the State of Arizona and other applicable laws and statutes.

d.      A claim for punitive damages cannot be sustained because there are no meaningful standards for determining the amount of any punitive damages award under Arizona law and because Arizona law does not state with sufficient clarity the consequences of conduct giving rise to a claim for punitive damages.  Therefore, any award of punitive damages would violate the Polaris Defendants' due process rights under the United States and Arizona Constitutions and other applicable laws and statutes.

e.     A claim for punitive damages cannot be sustained because any award of punitive damages under Arizona law by a jury that is not adequately instructed on the limits of punitive damages that may be imposed to further the applicable principles of deterrence and punishment would violate the Polaris Defendants' due process rights under the United States and Arizona Constitutions and would be improper under common law and public policies of the State of Arizona and other applicable laws and statutes.

f.     A claim for punitive damages cannot be sustained because any award of punitive damages under Arizona law by a jury that is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of the Polaris Defendants, would violate the Polaris Defendants' due process rights under the United States and Arizona Constitutions and would be improper under common law and public policies of the State of Arizona and other applicable laws and statutes.

g.     A claim for punitive damages cannot be sustained because any award of punitive damages that is not subject to trial court or appellate court review for reasonableness and furtherance of legitimate purposes on the basis of objective standards would violate the Polaris Defendants' due process rights under the United States and Arizona Constitutions and would be improper under common law and public policies of the State of Arizona and other applicable laws and statutes.

h.     A claim for punitive damages cannot be sustained because any award of punitive damages under Arizona law, without proof of every element beyond a reasonable doubt, would violate the Polaris Defendants' rights under Amendments IV, V, VI, and XIV of the United States Constitution and the related provisions of the Arizona Constitution and would be improper under common law and public policies of the State of Arizona and other applicable laws and statutes.

i.     A claim for punitive damages cannot be sustained because any judgment for punitive damages in this case cannot protect the Polaris Defendants' against multiple

punishments for the same alleged wrong in future cases.   Therefore, any award of punitive damages based on anything other than the Polaris Defendants' conduct in connection with the sale of the product identified in the Complaint would violate Polaris's due process rights under the United States and Arizona Constitutions and other applicable laws and statutes.

36.   The Polaris Defendants expressly preserve and do not knowingly or intentionally waive any of the other affirmative defenses set forth in Rule 8 or Rule 12(b) of the Rules of Civil Procedure, or in Arizona Revised Statutes § 12-683 or pursuant to other applicable State law, which discovery may reveal to be applicable, or any other matter constituting an avoidance or affirmative defense.   The Polaris Defendants affirmatively allege that, after appropriate discovery, the following affirmative defenses may be applicable: lack of subject matter jurisdiction, failure to join a necessary and proper party, abatement, estoppel, waiver, release, payment, res judicata, violation of a statute, violation of a public policy, spoliation, and failure to comply with a statutory requirement. The extent to which Plaintiffs' claims may be barred by one or more of the foregoing affirmative defenses cannot be determined until the Polaris Defendants have had an opportunity to complete discovery.

DATED this 22nd day of February, 2016.

BOWMAN AND BROOKE LLP


By: */s/ Amanda Heitz*
Paul G. Cereghini
Jeffrey C. Warren
Amanda Heitz
Attorneys for Defendant(s)
Polaris Industries, Inc. and Polaris Sales, Inc.

The foregoing document was electronically filed this 22nd day of February, 2016 with:

http://turbocourt.com

13176822v1                                        8

1    **COPY** of the foregoing mailed
      this 22nd day of February, 2016 to:

2

3    Larry E. Coben
      JoAnn Niemi
      ANAPOL WEISS

4    8700 E. Vista Bonita Drive, Ste. 268
      Scottsdale, Arizona 85255

5    Attorneys for Plaintiffs

6

7    */s/ Sandy Wickham*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13176822v1                 9

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
M. Mogel, Deputy
2/22/2016 11:14:00 AM
Filing ID 7213457

1   Paul G. Cereghini (Bar No. 009641)
    Jeffrey C. Warren (Bar No. 021383)
2   Amanda Heitz (Bar No. 026519
    **BOWMAN AND BROOKE LLP**
3   Suite 1600, Phoenix Plaza
    2901 North Central Avenue
4   Phoenix, Arizona  85012-2736
    (602) 643-2300
5   Fax: (602)-248-0947
    paul.cereghini@bowmanandbrooke.com
6   jeff.warren@bowmanandbrooke.com
    amanda.heitz@bowmanandbrooke.com
7
    Attorneys for Defendants Polaris Industries, Inc. and Polaris Sales, Inc.
8

9              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

10                **IN AND FOR THE COUNTY OF MARICOPA**

11   MICHAEL THOMPSON and RHONDA        )
     THOMPSON, Husband and Wife,         )
12                                        )      Case No. CV2015-053625
              Plaintiffs,                 )
13                                        )      **CERTIFICATE OF AGREEMENT RE**
     v.                                   )      **ARBITRATION BY POLARIS**
14                                        )      **INDUSTRIES, INC. AND POLARIS**
     POLARIS INDUSTRIES, INC., a foreign )      **SALES, INC.**
15   corporation; POLARIS SALES, INC., a foreign )
     corporation; JET RENT, an Arizona business; )
16   DOE DEFENDANTS 1-10; ABC             )
     CORPORATIONS 1-10; and BLACK AND    )
17   WHITE PARTNERSHIPS 1-10,             )
                                          )
18            Defendants.                 )
                                          )
19   ─────────────────────────────────────

20          Pursuant to Rule 3.10, Arizona Rules of Civil Procedure, Defendants Polaris

21   Industries, Inc. and Polaris Sales, Inc. (collectively, "the Polaris Defendants") agree with

22   Plaintiffs' Certificate of Compulsory Arbitration in which plaintiffs state that this case **IS NOT**

23   subject to compulsory arbitration.

24          DATED this 22nd day of February, 2016.

25                                    BOWMAN AND BROOKE LLP

26
                                      By:/s/ Amanda Heitz
27                                       Paul G. Cereghini
                                         Jeffrey C. Warren
28                                       Amanda Heitz
                                         Attorneys for Defendants

13230661v1

| | |
|---|---|
| 1 | Polaris Industries, Inc. and Polaris Sales, Inc. |
| 2 | The foregoing document was electronically filed this 22nd day of February, 2016 with: |
| 3 | |
| | http://turbocourt.com |
| 4 | |
| | COPY of the foregoing mailed |
| 5 | this 22nd day of February, 2016 to: |
| 6 | |
| 7 | Larry E. Coben |
| | JoAnn Niemi |
| 8 | ANAPOL WEISS |
| | 8700 E. Vista Bonita Drive, Ste. 268 |
| 9 | Scottsdale, Arizona 85255 |
| | Attorneys for Plaintiffs |
| 10 | |
| 11 | */s/ Sandy Wickham* |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

13230661v1                                    2

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
K. Laird, Deputy
2/22/2016 11:12:00 AM
Filing ID 7213462

Paul G. Cereghini (Bar No. 009641)
Jeffrey C. Warren (Bar No. 021383)
Amanda Heitz (Bar No. 026519)
**BOWMAN AND BROOKE LLP**
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona  85012-2736
(602) 643-2300
Fax: (602)-248-0947
paul.ceregini@bowmanandbrooke.com
jeff.warren@bowmanandbrooke.com
amanda.heitz@bowmanandbrooke.com

Attorneys for Defendants Polaris Industries, Inc. and Polaris Sales, Inc.

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| MICHAEL THOMPSON and RHONDA THOMPSON, Husband and Wife, <br><br> Plaintiffs, <br><br> v. <br><br> POLARIS INDUSTRIES, INC., a foreign corporation; POLARIS SALES, INC., a foreign corporation; JET RENT, an Arizona business; DOE DEFENDANTS 1-10; ABC CORPORATIONS 1-10; and BLACK AND WHITE PARTNERSHIPS 1-10, <br><br> Defendants. | Case No. CV2015-053625 <br><br> **DEMAND FOR TRIAL BY JURY BY POLARIS INDUSTRIES, INC. AND POLARIS SALES, INC.** |

Defendant Polaris Industries, Inc. and Polaris Sales, Inc. (collectively, "the Polaris Defendants") pursuant to Rule 38(b), Arizona Rules of Civil Procedure, hereby demand a trial by jury for all issues in the above-captioned matter.

DATED this 22nd day of February, 2016.

BOWMAN AND BROOKE LLP

By: */s/ Amanda Heitz*
_____
Paul G. Cereghini
Jeffrey C. Warren
Amanda Heitz
Attorneys for Defendants
Polaris Industries, Inc. and Polaris Sales, Inc.

13230649v1

1   | The foregoing document was electronically
    | filed this 22nd day of February, 2016 with:
2
    | http://turbocourt.com
3
    | COPY of the foregoing mailed
4   | this 22nd day of February, 2016 to:

5

6   | Larry E. Coben
    | JoAnn Niemi
    | ANAPOL WEISS
7   | 8700 E. Vista Bonita Drive, Ste. 268
    | Scottsdale, Arizona 85255
8   | Attorneys for Plaintiffs

9

10  | /s/ Sandy Wickham

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13230649v1                        2

RECEIVED
BOWMAN AND BROOKE

JUL 2 7 2016

TO_____

1  Larry E. Coben (SBN 15673)
   Jo Ann Niemi (SBN 020873)
2  ANAPOL WEISS
   8700 E. Vista Bonita Drive, Suite 268
3  Scottsdale, Arizona 85255
   Telephone: (480) 515-4745
4  Facsimile: (480) 515-4744
   lcoben@anapolweiss.com
5  jniemi@anapolweiss.com
   ME@anapolweiss.com
6

7  *Attorneys for Plaintiffs*

8

9            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10              IN AND FOR THE COUNTY OF MARICOPA

11

12  MICHAEL THOMPSON and RHONDA
    THOMPSON, Husband and Wife;          Case No:  CV2015-053625
13
             Plaintiffs,
14
    vs.                                  **PLAINTIFFS' REQUEST FOR RULE 16**
15                                        **SCHEDULING CONFERENCE;**
    POLARIS INDUSTRIES, INC.; a foreign   **[PROPOSED] FORM OF ORDER**
16  corporation, POLARIS SALES, INC., a
    foreign corporation; JET RENT, an Arizona
17  business; DOE DEFENDANTS 1-10; ABC
    CORPORATIONS 1-10; and BLACK AND      *(Assigned to the Hon. Susan Brnovich)*
18  WHITE PARTNERSHIPS 1-10,
19
             Defendants.
20

21

22       Plaintiffs Michael Thompson and Rhonda Thompson, pursuant to Rule 16(b) of the

23  Arizona Rules of Civil Procedure, move this Court for an Order scheduling a Comprehensive

24  Pre-Trial Scheduling Conference in this matter.

25  / / /

26  / / /

                                        1

DATED this ___25th___ day of July, 2016.

ANAPOL WEISS

/s/ Jo Ann Niemi

Larry E. Coben
Jo Ann Niemi
*Attorneys for Plaintiffs*

ORIGINAL filed with the Court and
COPY of the foregoing mailed/e-mailed
this ___25th___ day of July, 2016 to:

Paul G. Cereghini
Jeffrey C. Warren
Amanda Heitz
BOWMAN AND BROOKE LLP
Suite 1600, Phoenix, Plaza
2901 North Central Avenue
Phoenix, Arizona 85012
*Attorneys for Defendants Polaris Industries, Inc.*
*and Polaris Sales, Inc.*

COPY of the foregoing mailed this
___25th___ day of July, 2016 to:

Jet Rent
c/o Mark Frandsen
2972 South Kyla Avenue, Suite A
Yuma, Arizona 85365
Defendant *Pro Per*

By:___ /s/  Olivia Guay ___

2

RECEIVED
BOWMAN AND BROOKE

JUL 2 7 2016

TO_____

1  Larry E. Coben (SBN 15673)
   Jo Ann Niemi (SBN 020873)
2  ANAPOL WEISS
   8700 E. Vista Bonita Drive, Suite 268
3  Scottsdale, Arizona 85255
   Telephone: (480) 515-4745
4  Facsimile: (480) 515-4744
5  lcoben@anapolweiss.com
   jniemi@anapolweiss.com
6  ME@anapolweiss.com

7  *Attorneys for Plaintiffs*

8

9              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
10
                  IN AND FOR THE COUNTY OF MARICOPA
11

12 | MICHAEL THOMPSON and RHONDA | |
   | THOMPSON, Husband and Wife; | Case No:  CV2015-053625 |
13 | | |
   | Plaintiffs, | |
14 | | **ORDER RE:** |
   | vs. | |
15 | | **PLAINTIFFS' REQUEST FOR RULE 16** |
   | POLARIS INDUSTRIES, INC.; a foreign | **SCHEDULING CONFERENCE** |
16 | corporation, POLARIS SALES, INC., a | |
   | foreign corporation; JET RENT, an Arizona | |
17 | business; DOE DEFENDANTS 1-10; ABC | |
   | CORPORATIONS 1-10; and BLACK | *(Assigned to the Hon. Susan Brnovich)* |
18 | AND WHITE PARTNERSHIPS 1-10, | |
19 | | |
   | Defendants. | |
20

21

22          The Court having received Plaintiffs' Request for Rule 16 Scheduling Conference in this

23 matter,

24          **IT IS HEREBY ORDERED** setting a Telephonic Rule 16(d) Scheduling Conference

25 on _____, 2016 at _____ (30 minutes allotted) in this

26 division.  Counsel for Plaintiffs shall initiate the phone conference to (602) 372-2020.

1

1    **IT IS FURTHER ORDERED** that the parties shall confer regarding the subjects set

2  forth in Rule 16(B).  Not later than ten days before the Rule 16(d) Scheduling Conference, the

3  parties shall file a joint report and proposed scheduling order that complies with Rule 16(b),

4  Arizona Rules of Civil Procedure and that is substantially in the form set forth in Forms 11-13,

5  Ariz. R. Civ. P. 84, Appendix of Forms.  At the Scheduling Conference the court will resolve

6  disputed items and address additional issues as the parties may request.

7    DATED this _____ day of _____, 2016.

8

9

10                    HON. SUSAN BRNOVICH

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Office Distribution

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

**FILED**
05/25/2016
by Superior Court Admin
on behalf of Clerk of the
Superior Court

05/21/2016                          COURT ADMINISTRATION

Ct. Admin
Deputy

**CASE NUMBER:** CV2015-053625

RECEIVED
BOWMAN AND BROOKE

MAY 26 2016

**Michael Thompson**

**V.**

TO_____

**Polaris Industries Inc**

The Judge assigned to this action is the Honorable Susan Brnovich

## 150 DAY ORDER

This action was filed more than 150 days ago. If there is any conflict between this order and any order from the assigned judge, the assigned judge's order governs. This order provides notice of requirements, pursuant to Rule 38. 1, Arizona Rules of Civil Procedure. Rule 38. 1 applies to all civil actions including those cases subject to and in arbitration, except cases listed under Rule 16 (b) Arizona Rules of Civil Procedure.

IT IS HEREBY ORDERED:

Rule 38. 1 will be strictly enforced. The parties shall e-file the following documents:

1.  A Joint Report and Proposed Joint Scheduling Order, Rule 16 (b) (c) or an Appeal from Arbitration on or before 9/19/2016 12:00:00AM. If Rule 38.1 is not complied with, the case will be placed on the Dismissal Calendar on the date shown above and it will be dismissed pursuant to Rule 38.1(f) without further notice, on or after 11/17/2016 12:00:00AM. *

2.  All parties shall submit their specific objections to witnesses and exhibits listed by other parties in the Joint Pretrial Statement. Reserving all objections to witnesses or exhibits until time of trial will not be permitted.

IF THIS IS AN ARBITRATION CASE. If this case is subject to mandatory arbitration, Rule 74 (b) of the Arizona Rules of Civil Procedure establishes the time for beginning the arbitration hearing. In light of the deadlines established by Rule 38. I (d), counsel should be sure that arbitrators are timely' appointed and that arbitrators complete the arbitration process within the time provided under Rule 38.1(f). As Rule 77(a) of the Arizona Rules of Civil Procedure provides if parties wish to appeal the arbitration decision, they shall file an Appeal from Arbitration and Motion to Set for Trial within 20 days after either the filing of the award or the notice of the arbitrator's decision becomes an award under Rule 76(b), whichever comes first.



Office Distribution

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

**FILED**
05/25/2016
by Superior Court Admin
on behalf of Clerk of the
Superior Court

05/21/2016                                    COURT ADMINISTRATION

Ct. Admin
Deputy

**CASE NUMBER:** CV2015-053625

**Michael Thompson**

**V.**

**Polaris Industries Inc**

---

EXTENSIONS OF TIME TO SERVE PROCESS.  If there has been an extension of time to serve the summons and complaint, (a) Rule 38. 1(f) still applies and (b) some parties and counsel may not receive a copy of this order.  Plaintiff should send copies to each of them and retain a copy of the transmittal letter.

ALTERNATIVE DISPUTE RESOLUTION.   Pursuant to Rule 1 6 (b), (c) Arizona Rules of Civil Procedures, counsel for the parties. or the parties if not represented by counsel shall confer regarding the feasibility of resolving the parties' dispute through alternative dispute resolution  methods such as mediation or arbitration with a mediator or arbitrator agreed to by the parties.  Counsel shall discuss with their clients the resolution of the dispute through an alternative dispute resolution method prior to the conference with opposing counsel.

*RELIEF FROM  RULE 38.1 DEADLINES;CONTINUANCES ON THE DISMISSAL CALENDAR. The rules require a Joint Report and Joint Scheduling Order within 270 days after the action is filed.

For good cause, the assigned judge may extend time for dismissal or continue the action on the Dismissal Calendar to an appropriate date. If an arbitration hearing has been held. or is set in the near future, the date of that hearing should be included in any motion to extend Rule 38.1 deadlines or to continue on the Dismissal Calendar. Stipulations to continue and delays for settlement negotiations are not good cause. Except in extraordinary cases, the court will not grant trial continuances based on late discovery.

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
M. Paigen, Deputy
6/22/2016 3:28:00 PM
Filing ID 7516706

Paul G. Cereghini (Bar No. 009641)
Jeffrey C. Warren (Bar No. 021383)
Amanda Heitz (Bar No. 026519
**BOWMAN AND BROOKE LLP**
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona  85012-2736
(602) 643-2300
Fax: (602)-248-0947
paul.cereghini@bowmanandbrooke.com
jeff.warren@bowmanandbrooke.com
amanda.heitz@bowmanandbrooke.com

Attorneys for Defendants Polaris Industries, Inc. and Polaris Sales, Inc.

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| MICHAEL THOMPSON and RHONDA THOMPSON, Husband and Wife, | Case No. CV2015-053625 |
| Plaintiffs, | **STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIALITY OF DOCUMENTS AND MATERIALS** |
| v. | |
| POLARIS INDUSTRIES, INC., a foreign corporation; POLARIS SALES, INC., a foreign corporation; JET RENT, an Arizona business; DOE DEFENDANTS 1-10; ABC CORPORATIONS 1-10; and BLACK AND WHITE PARTNERSHIPS 1-10, | (Assigned to the Honorable Susan Brnovich) |
| Defendants. | |

WHEREAS, Michael Thompson and Rhonda Thompson ("plaintiffs"), by and through their attorneys, have requested Polaris Industries, Inc. and Polaris Sales, Inc. ("Polaris") to make available for inspection and/or copying, documents and various materials, including, but not limited to materials regarding the design, testing, manufacturing, and marketing of the subject 2011 Polaris RZR (VIN 4XAVE76A3BB076570); and

WHEREAS, Polaris contends that some of these documents, information and other materials, including materials regarding the design, testing, manufacturing, and marketing of the subject 2011 Polaris RZR are in whole or in part proprietary information, confidential

1  business records, and/or trade secrets, all of which is competitively sensitive data as herein
2  after defined;

3      WHEREAS, Polaris requires that the confidentiality of the documents and/or
4  materials, and the information contained in the documents and materials, be maintained, as
5  well as the confidentiality of the fact of the existence of the documents and materials and
6  their description and identity; and

7      WHEREAS, plaintiffs, and plaintiffs' attorneys have agreed to comply with the letter
8  and intent of said confidentiality;

9      IT IS HEREBY STIPULATED THAT:

10      1.    At such time as Polaris delivers to plaintiff or plaintiffs' attorneys any
11  documents or materials by way of discovery in this case, or divulges any documents or
12  materials or any information contained therein, Polaris shall designate as "confidential" any
13  such documents, materials, or information they claim constitute or contain trade secrets or
14  confidential business information.

15      2.    The burden of proving that a Protected Document contains confidential trade
16  secrets, technical information and/or commercially sensitive information is on Polaris. Prior
17  to designating any material as "Confidential," Polaris must make a bona fide determination
18  that the material is, in fact, a trade secret or other confidential research, development, or
19  commercial information. If plaintiffs' counsel contests the confidential designation of any item
20  produced pursuant to this Protective Order, plaintiffs' counsel and counsel for Polaris are
21  required by this Stipulation and Protective Order to consult in an attempt to come to an
22  agreement as to the materials that are claimed to be of a confidential and proprietary nature.
23  With respect to materials that plaintiffs' counsel and Polaris's counsel cannot agree are
24  proprietary, Polaris will have the burden of establishing the proprietary and confidential
25  nature of those materials pursuant to Arizona Rule of Civil Procedure Rule 26(c). Polaris
26  shall have 45 days to prepare this motion following the parties' final attempt to reach an
27  agreement. The contested materials will remain under the terms of this Stipulation and
28  Protective Order until such time as there is a ruling on the motion by Polaris. If the Court

denies Polaris's request for protection and Polaris states that it will seek a writ from that ruling, then the materials shall remain protected until the Court of Appeals rules on the writ from the order denying confidentiality.

3.　　Protected Documents and any copies thereof received pursuant to paragraph 4 (below) shall be maintained confidential by the receiving party, his/her attorney, other representatives, and expert witnesses, and shall be used only for preparation for the trial of this matter, subject to the limitations set forth below.

4.　　Counsel for plaintiffs may share proprietary and confidential materials produced pursuant to this Protective Order with other attorneys representing other plaintiffs alleged to be injured by the rollover of a Polaris RZR in another lawsuit alleging the existence of a seatbelt defect in the following manner:

　　　　a.　　Counsel will obtain a signed certification, in a form attached as Exhibit A, from such other attorneys representing the other plaintiffs alleged to be injured by the rollover of a Polaris RZR S in another lawsuit alleging the existence of a seatbelt defect and crashworthiness.

　　　　b.　　Upon receipt of any signed certification described above, plaintiffs' counsel shall forward same by first class mail to counsel for Polaris and shall not release the materials covered by this Protective Order until the 30th calendar day following the mailing of the signed certification to Polaris unless counsel for Polaris provides notice to counsel for plaintiffs that It has filed a motion in the other lawsuit to have the materials produced pursuant to a protective order in that other lawsuit.

5.　　Except as provided in paragraph (4) above, Protected Documents shall be disclosed only to "Qualified Persons," Qualified Persons are limited to:

　　　　a.　　Counsel of Record for the parties, and the parties;

　　　　b.　　Non-technical and clerical staff employed by Counsel of Record and involved in the preparation and trial of this action;

c.     Experts and non-attorney consultants retained by the parties for  the preparation or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Polaris; and

d.     The Court, the Court's staff, witnesses, and the jury in this case.

e.     Any such materials may be disclosed to any governmental agency, which has oversight authority to study public safety issues pertinent to the product at issue. However, at least 10 days before such data is furnished to the relevant governmental agency, the party making such disclosure shall give notice to the party that produced the materials in discovery to allow that party the opportunity to ask the governmental agency to maintain the materials as confidential.

6.     Plaintiffs and their attorneys shall not give, show or otherwise directly or indirectly disclose any such confidential documents, materials or information produced by Polaris in this action, or the substance thereof, or the existence thereof, or any copies, prints, negatives or summaries thereof, and will not disclose the fact of the existence thereof, to any entity or person except the plaintiffs herein, and any agents, experts or consultants, employed by plaintiffs or plaintiffs' attorneys, in connection with and solely for this action except as provided in Paragraph 4 above.

7.     Any and all of plaintiffs' experts, consultants and/or counsel associated in this litigation and any other individuals who have access to confidential documents and/or materials and/or information subject to this Protective Order, or to the substance hereof, or to any copies, prints, negatives or summaries thereof, shall be presented with a copy of this Protective Order. Those experts, consultants, counsel, and other individuals shall not give, show, or otherwise, directly or indirectly, disclose any of the confidential documents or materials or information subject to this Protective Order, or the substance thereof, or the existence thereof, or any copies, prints, negatives, or summaries thereof, to any entity or

person, except as may be necessary in preparing to render, or rendering, expert advice or assistance in this lawsuit only.

8.      At the conclusion of the work of such experts, consultants, counsel, or other persons as described in Paragraph 7 herein, all confidential documents and materials and all copies, prints, negatives, and summaries thereof shall be returned to the attorneys who retained the expert or consultant or otherwise provided access to the confidential documents and/or materials and/or information or shall be destroyed.  At the time of such redelivery or destruction, an Affidavit in the form of Exhibit B attached hereto shall be executed by such experts, consultants, counsel and/or other persons who have had access to the confidential documents and/or materials and/or information, stating that they have complied with the provisions of this Protective Order. Such Affidavit shall be returned to the attorneys who provided access to the confidential documents and/or materials and/or information and be maintained by them. Upon completion of the trial and any appeals in this action and the satisfaction of any judgment, or upon the conclusion of any settlement, plaintiffs' attorneys shall return to Polaris all competitively sensitive data produced under the terms of this Protective Order or destroy the confidential documents. Plaintiffs' attorney shall further provide to Polaris at such time of redelivery an Affidavit in the form of Exhibit B attached hereto representing compliance, as outlined herein, with the terms of this Protective Order and all Affidavits received by plaintiffs' counsel pursuant to this paragraph.

9.      The parties to this action and their attorneys agree that all objections, including, but not limited to, objections based on relevancy, materiality, and privilege, re reserved and all questions of admissibility may be asserted at the time of trial of any action in which such confidential documents and/or materials are used or proffered should any such party deem it proper.

10.     Confidential documents and materials, as those terms are used herein, mean information, including confidential and proprietary information about the Polaris Defendants' business, products, practices, or procedures that, in the ordinary course of business, is not voluntarily disclosed to the public or to third persons or entities who do not have a need to

know. Documents or materials that concern, reflect, embody or constitute the foregoing may include, but shall not be limited to, correspondence, memoranda, notes, plans, specifications, blueprints, drawings, test reports, test procedures, test manuals, photographs, motion pictures, accident reports, claims, videotapes, graphs, charts, financial and budget information, and deposition or trial transcripts and exhibits thereto. Confidential documents and materials shall be so designated by prominent markings placed on each document or item at or before the time the document or item is divulged or produced for inspection. To the extent possible, the designation will be placed on the document or other materials in a location that does not cover or mark over any textual materials. If plaintiff or plaintiffs' attorneys require more than one copy of any confidential document or material produced pursuant to this Protective Order, they must ensure that each copy is made with the original red marking designating the confidentiality of the document and/or material and the information contained therein.

11.    Plaintiff and plaintiffs' attorneys shall limit the number of copies to that which is absolutely necessary to adequately prepare plaintiff's case and shall ensure that copies are returned to plaintiffs' attorneys and that unnecessary copies are destroyed. Any and all copies shall be treated in accordance with the terms of this Protective Order.

12.    No party hereto shall be bound by this Protective Order as to any information that it possessed prior to this action, unless the information was obtained from the other party under circumstances requiring the first party to treat it as confidential.

13.    Any party claiming that information designated by the other party as confidential has been in the possession of such first party or has been in the possession of the public prior to disclosure of such information in discovery herein shall have the burden of proving such earlier possession or such public knowledge of such information.

14.    This Protective Order shall be without prejudice to the rights of the parties in any other action and applies solely to the above-captioned action.

15.    The parties do not waive any rights they may possess to compel further discovery responses or to object to any further discovery requests made by either party.

16.    To the extent that confidential documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, within 30 days after receipt of the deposition transcript, Polaris shall designate depositions or other testimony concerning the documents and the information contained therein as "confidential information" by sending written notice to plaintiffs' counsel designating by page and line the portions of the transcript or other testimony to be treated as "Confidential". Neither plaintiff nor plaintiffs' attorneys nor any other party hereto shall attack the propriety of the sealing or protection of such confidential documents and materials or any such depositions, exhibits, or papers filed with the Court, after the conclusion of this litigation, whether by judgment or settlement or by any other means of dispute resolution. The use of such confidential information during depositions in this action does not waive the terms of this Protective Order.

17.    Any confidential documents and materials produced during discovery and/or offered and/or admitted into evidence during pre-trial proceedings, trial, or post-trial proceedings, and any testimony relating to such confidential documents and materials, and any papers filed with the Court in this action, which attach, include, or summarize any such confidential information, shall be sealed and protected from disclosure by this Protective Order and neither plaintiff nor plaintiffs' attorneys nor any other party hereto shall attack the propriety of the sealing or protection of such confidential documents and materials or evidence after the conclusion of this litigation, whether by judgment or settlement or by any other means of dispute resolution. Such productions and/or offerings and/or admissions into evidence do not waive the terms of this Protective Order.

18.    The terms of this Protective Order shall remain fully active until released by written consent of the Polaris Defendants. The Court shall retain jurisdiction over the parties, this Protective Order, and recipients of confidential documents and materials, for the sole purpose of enforcing this Protective Order and adjudicating claims of breaches thereof and administering damages and other remedies related thereto. The provisions of this Protective

Order shall continue to be binding as to the confidential documents and materials produced pursuant to it.

IT IS SO STIPULATED:

DATED this 22ND day of June, 2016.

ANNAPOL WEISS                          BOWMAN AND BROOKE LLP

By: _Larry E. Coben (w/permission)_        By:_Amanda Heitz_
    Larry E. Coben                             Paul G. Cereghini
    JoAnn Niemi                                Jeffrey C. Warren
    ANAPOL WEISS                               Amanda Heitz
    8700 E. Vista Bonita Drive, Ste. 268       Attorneys for Defendants
    Scottsdale, Arizona 85255                  Polaris Industries, Inc. and Polaris Sales,
    Attorneys for Plaintiffs                   Inc.

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| MICHAEL THOMPSON and RHONDA THOMPSON, Husband and Wife, ) | Case No. CV2015-053625 |
| Plaintiffs, ) | |
| v. ) | **EXHIBIT A** |
| ) | |
| POLARIS INDUSTRIES, INC., a foreign corporation; POLARIS SALES, INC., a foreign corporation; JET RENT, an Arizona business; DOE DEFENDANTS 1-10; ABC CORPORATIONS 1-10; and BLACK AND WHITE PARTNERSHIPS 1-10, ) | |
| Defendants. ) | |

EXHIBIT A

I,_____, am an attorney representing the plaintiff in the following action:

Case title:          _____

Court:               _____

Cause or             _____

Case number:         _____

I seek copies of the documents produced under the terms of the Stipulation and Protective Order regarding confidentiality of documents and materials entered in Juan Eylicio v. Polaris Motor Co., Ltd., et al., to the Superior Court of the State of Arizona, in and for the County of Maricopa, Case No. CV2009-052431, and agree to the terms of that order. At the time a final dismissal or judgment is entered in the Eylicio v. Polaris matter, I agree to return copies of any materials produced under the terms of the Stipulation and Protective Order to American Polaris as described in paragraph 4 of the Stipulation and Protective Order, I consent to the personal jurisdiction of the Court in Evlicio v. Polaris for purpose of enforcement of the Protective Order covering the confidential materials I seek.

_____

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| MICHAEL THOMPSON and RHONDA THOMPSON, Husband and Wife,<br><br>          Plaintiffs,<br><br>v.<br><br>POLARIS INDUSTRIES, INC., a foreign corporation; POLARIS SALES, INC., a foreign corporation; JET RENT, an Arizona business; DOE DEFENDANTS 1-10; ABC CORPORATIONS 1-10; and BLACK AND WHITE PARTNERSHIPS 1-10,<br><br>          Defendants. | Case No. CV2015-053625<br><br>EXHIBIT A |

EXHIBIT B

STATE OF _____ )
                         )ss.
County of_____ )

_____, being first duly sworn, upon his or her oath, deposes and says:

1.    I have been provided copies of, or access to, confidential documents, materials, and information that are subject to a Stipulation and Protective Order Re: Confidentiality of Documents and Materials ("Stipulation and Protective Order) in the above-captioned action (hereinafter "Confidential Data").

2.    I have read and complied with all of the provisions of the Stipulation and Protective Order entered in the action regarding the Confidential Data.

3.    In formulating my opinions or in preparing for and/or assisting in the trial of the above-captioned action, I have provided the following individuals copies of, or access to, the Confidential Data at the address stated:

_____

_____

_____

4.    The individuals listed in Paragraph 3 are the only individuals to whom provided

copies of, or access to, the Confidential Data.

5.     Before providing copies of, or access to, the Confidential Data to the individuals listed in Paragraph 3, I required that said individuals read a copy of the Stipulation and Protective Order in this action.

6.     The individuals listed in Paragraph 3 have executed Affidavits stating that they have complied with the terms of the Stipulation and Protective Order and have returned all copies of Confidential Data and a copy of each such Affidavit is attached hereto.

7.     I have made no copies of the Confidential Data provided pursuant to the Stipulation and Protective Order, other than those that have been returned to plaintiff's counsel.

8.     With the Affidavit, I have returned all copies of confidential documents and materials provided to me in the above-captioned action pursuant to the Stipulation and Protective Order and have returned all Affidavits to those individuals to whom I provided copies of, or access to, the Confidential Data.

9.     After submitting this Affidavit and the attached Affidavit(s) Re: Confidential Data and all copies of confidential documents and materials to plaintiff's counsel, pursuant to the requirements set forth in the Stipulation and Protective order, I will not have any copies of the Confidential Data.

10.     I have otherwise complied with all of the terms of the Stipulation and Protective Order covering confidential documents and materials produced in the above-captioned action.

SUBSCRIBED AND SWORN to before me this day_____ of _____., 2016.


_____

NOTARY PUBLIC

My Commission Expires:_____

Granted as Submitted
***See eSignature page***

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
K. Hartley, Deputy
6/28/2016 8:00:00 AM
Filing ID 7523800

1 | Paul G. Cereghini (Bar No. 009641)
Jeffrey C. Warren (Bar No. 021383)
2 | Amanda Heitz (Bar No. 026519)
**BOWMAN AND BROOKE LLP**
3 | Suite 1600, Phoenix Plaza
2901 North Central Avenue
4 | Phoenix, Arizona  85012-2736
(602) 643-2300
5 | Fax: (602)-248-0947
paul.ceregini@bowmanandbrooke.com
6 | jeff.warren@bowmanandbrooke.com
amanda.heitz@bowmanandbrooke.com
7 |
Attorneys for Defendants Polaris Industries, Inc. and Polaris Sales, Inc.
8 |

9 | **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

10 | **IN AND FOR THE COUNTY OF MARICOPA**

11 | MICHAEL THOMPSON and RHONDA
THOMPSON, Husband and Wife,
12 |                                                    Case No. CV2015-053625
Plaintiffs,
13 |                                                    **(PROPOSED) PROTECTIVE ORDER**
v.
14 |
POLARIS INDUSTRIES, INC., a foreign
15 | corporation; POLARIS SALES, INC., a foreign    (Assigned to the
corporation; JET RENT, an Arizona business;     Honorable Susan Brnovich)
16 | DOE DEFENDANTS 1-10; ABC
CORPORATIONS 1-10; and BLACK AND
17 | WHITE PARTNERSHIPS 1-10,

18 |                                                   Defendants.

19 |

20 |        Pursuant to stipulation of the parties, and for good cause appearing,

21 |        IT IS HEREBY ORDERED AS FOLLOWS:

22 |        1.      At such time as Polaris delivers to plaintiff or plaintiffs' attorneys any documents

23 | or materials by way of discovery in this case, or divulges any documents or materials or any

24 | information contained therein, Polaris shall designate as "confidential" any such documents,

25 | materials, or information they claim constitute or contain trade secrets or confidential

26 | business information.

27 |        2.      The burden of proving that a Protected Document contains confidential trade

28 | secrets, technical information and/or commercially sensitive information is on Polaris. Prior to

designating any material as "Confidential," Polaris must make a bona fide determination that the material is, in fact, a trade secret or other confidential research, development, or commercial information. If plaintiffs' counsel contests the confidential designation of any item produced pursuant to this Protective Order, plaintiffs' counsel and counsel for Polaris are required by this Stipulation and Protective Order to consult in an attempt to come to an agreement as to the materials that are claimed to be of a confidential and proprietary nature. With respect to materials that plaintiffs' counsel and Polaris's counsel cannot agree are proprietary, Polaris will have the burden of establishing the proprietary and confidential nature of those materials pursuant to Arizona Rule of Civil Procedure Rule 26(c). Polaris shall have 45 days to prepare this motion following the parties' final attempt to reach an agreement. The contested materials will remain under the terms of this Stipulation and Protective Order until such time as there is a ruling on the motion by Polaris. If the Court denies Polaris's request for protection and Polaris states that it will seek a writ from that ruling, then the materials shall remain protected until the Court of Appeals rules on the writ from the order denying confidentiality.

3.   Protected Documents and any copies thereof received pursuant to paragraph 4 (below) shall be maintained confidential by the receiving party, his/her attorney, other representatives, and expert witnesses, and shall be used only for preparation for the trial of this matter, subject to the limitations set forth below.

4.   Counsel for plaintiffs may share proprietary and confidential materials produced pursuant to this Protective Order with other attorneys representing other plaintiffs alleged to be injured by the rollover of a Polaris RZR in another lawsuit alleging the existence of a seatbelt defect in the following manner:

a.   Counsel will obtain a signed certification, in a form attached as Exhibit A, from such other attorneys representing the other plaintiffs alleged to be injured by the rollover of a Polaris RZR S in another lawsuit alleging the existence of a seatbelt defect and crashworthiness.

b.   Upon receipt of any signed certification described above, plaintiffs' counsel shall forward same by first class mail to counsel for Polaris and shall not release the materials covered by this Protective Order until the 30th calendar day following the mailing of the signed certification to Polaris unless counsel for Polaris provides notice to counsel for plaintiffs that It has filed a motion in the other lawsuit to have the materials produced pursuant to a protective order in that other lawsuit.

5.   Except as provided in paragraph (4) above, Protected Documents shall be disclosed only to "Qualified Persons," Qualified Persons are limited to:

a.   Counsel of Record for the parties, and the parties;

b.   Non-technical and clerical staff employed by Counsel of Record and involved in the preparation and trial of this action;

c.   Experts and non-attorney consultants retained by the parties for the preparation or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Polaris; and

d.   The Court, the Court's staff, witnesses, and the jury in this case.

e.   Any such materials may be disclosed to any governmental agency, which has oversight authority to study public safety issues pertinent to the product at issue. However, at least 10 days before such data is furnished to the relevant governmental agency, the party making such disclosure shall give notice to the party that produced the materials in discovery to allow that party the opportunity to ask the governmental agency to maintain the materials as confidential.

6.   Plaintiffs and their attorneys shall not give, show or otherwise directly or indirectly disclose any such confidential documents, materials or information produced by Polaris in this action, or the substance thereof, or the existence thereof, or any copies, prints, negatives or summaries thereof, and will not disclose the fact of the existence thereof, to any

1   entity or person except the plaintiffs herein, and any agents, experts or consultants,

2   employed by plaintiffs or plaintiffs' attorneys, in connection with and solely for this action

3   except as provided in Paragraph 4 above.

4        7.    Any and all of plaintiffs' experts, consultants and/or counsel associated in this

5   litigation and any other individuals who have access to confidential documents and/or

6   materials and/or information subject to this Protective Order, or to the substance hereof, or to

7   any copies, prints, negatives or summaries thereof, shall be presented with a copy of this

8   Protective Order. Those experts, consultants, counsel, and other individuals shall not give,

9   show, or otherwise, directly or indirectly, disclose any of the confidential documents or

10  materials or information subject to this Protective Order, or the substance thereof, or the

11  existence thereof, or any copies, prints, negatives, or summaries thereof, to any entity or

12  person, except as may be necessary in preparing to render, or rendering, expert advice or

13  assistance in this lawsuit only.

14       8.    At the conclusion of the work of such experts, consultants, counsel, or other

15  persons as described in Paragraph 7 herein, all confidential documents and materials and all

16  copies, prints, negatives, and summaries thereof shall be returned to the attorneys who

17  retained the expert or consultant or otherwise provided access to the confidential documents

18  and/or materials and/or information or shall be destroyed.  At the time of such redelivery or

19  destruction, an Affidavit in the form of Exhibit B attached hereto shall be executed by such

20  experts, consultants, counsel and/or other persons who have had access to the confidential

21  documents and/or materials and/or information, stating that they have complied with the

22  provisions of this Protective Order. Such Affidavit shall be returned to the attorneys who

23  provided access to the confidential documents and/or materials and/or information and be

24  maintained by them. Upon completion of the trial and any appeals in this action and the

25  satisfaction of any judgment, or upon the conclusion of any settlement, plaintiffs' attorneys

26  shall return to Polaris all competitively sensitive data produced under the terms of this

27  Protective Order or destroy the confidential documents. Plaintiffs' attorney shall further

28  provide to Polaris at such time of redelivery an Affidavit in the form of Exhibit B attached

hereto representing compliance, as outlined herein, with the terms of this Protective Order and all Affidavits received by plaintiffs' counsel pursuant to this paragraph.

9.     The parties to this action and their attorneys agree that all objections, including, but not limited to, objections based on relevancy, materiality, and privilege, re reserved and all questions of admissibility may be asserted at the time of trial of any action in which such confidential documents and/or materials are used or proffered should any such party deem it proper.

10.     Confidential documents and materials, as those terms are used herein, mean information, including confidential and proprietary information about the Polaris Defendants' business, products, practices, or procedures that, in the ordinary course of business, is not voluntarily disclosed to the public or to third persons or entities who do not have a need to know. Documents or materials that concern, reflect, embody or constitute the foregoing may include, but shall not be limited to, correspondence, memoranda, notes, plans, specifications, blueprints, drawings, test reports, test procedures, test manuals, photographs, motion pictures, accident reports, claims, videotapes, graphs, charts, financial and budget information, and  deposition or trial transcripts and exhibits thereto. Confidential documents and materials shall be so designated by prominent markings placed on each document or item at or before the time the document or item is divulged or produced for inspection. To the extent possible, the designation will be placed on the document or other materials in a location that does not cover or mark over any textual materials. If plaintiff or plaintiffs' attorneys require more than one copy of any confidential document or material produced pursuant to this Protective Order, they must ensure that each copy is made with the original red marking designating the confidentiality of the document and/or material and the information contained therein.

11     Plaintiff and plaintiffs' attorneys shall limit the number of copies to that which is absolutely necessary to adequately prepare plaintiff's case and shall ensure that  copies are returned to plaintiffs' attorneys and that unnecessary copies are destroyed. Any and all copies shall be treated in accordance with the terms of this Protective Order.

12.    No party hereto shall be bound by this Protective Order as to any information that it possessed prior to this action, unless the information was obtained from the other party under circumstances requiring the first party to treat it as confidential.

13.    Any party claiming that information designated by the other party as confidential has been in the possession of such first party or has been in the possession of the public prior to disclosure of such information in discovery herein shall have the burden of proving such earlier possession or such public knowledge of such information.

14.    This Protective Order shall be without prejudice to the rights of the parties in any other action and applies solely to the above-captioned action.

15.    The parties do not waive any rights they may possess to compel further discovery responses or to object to any further discovery requests made by either party.

16.    To the extent that confidential documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, within 30 days after receipt of the deposition transcript, Polaris shall designate depositions or other testimony concerning the documents and the information contained therein as "confidential information" by sending written notice to plaintiffs' counsel designating by page and line the portions of the transcript or other testimony to be treated as "Confidential". Neither plaintiff nor plaintiffs' attorneys nor any other party hereto shall attack the propriety of the sealing or protection of such confidential documents and materials or any such depositions, exhibits, or papers filed with the Court, after the conclusion of this litigation, whether by judgment or settlement or by any other means of dispute resolution. The use of such confidential information during depositions in this action does not waive the terms of this Protective Order.

17.    Any confidential documents and materials produced during discovery and/or offered and/or admitted into evidence during pre-trial proceedings, trial, or post-trial proceedings, and any testimony relating to such confidential documents and materials, and any papers filed with the Court in this action, which attach, include, or summarize any such confidential information, shall be sealed and protected from disclosure by this Protective Order and neither plaintiff nor plaintiffs' attorneys nor any other party hereto shall attack the

1  propriety of the sealing or protection of such confidential documents and materials or

2  evidence after the conclusion of this litigation, whether by judgment or settlement or by any

3  other means of dispute resolution. Such productions and/or offerings and/or admissions into

4  evidence do not waive the terms of this Protective Order.

5      18.    The terms of this Protective Order shall remain fully active until released by

6  written consent of the Polaris Defendants. The Court shall retain jurisdiction over the parties,

7  this Protective Order, and recipients of confidential documents and materials, for the sole

8  purpose of enforcing this Protective Order and adjudicating claims of breaches thereof and

9  administering damages and other remedies related thereto. The provisions of this Protective

10 Order shall continue to be binding as to the confidential documents and materials produced

11 pursuant to it.

12      DONE IN OPEN COURT this ____day of _____, 2016.

13

14             By:_____

15                The Honorable Susan Brnovich
                  Maricopa County Superior Court Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

# eSignature Page 1 of 1

Filing ID: 7523800   Case Number: CV2015-053625
Original Filing ID: 7516706

Granted as Submitted



/S/ Susan Brnovich Date: 6/27/2016
Judicial Officer of Superior Court

ENDORSEMENT PAGE

CASE NUMBER: CV2015-053625               SIGNATURE DATE: 6/27/2016

E-FILING ID #: 7523800                   FILED DATE: 6/28/2016 8:00:00 AM


AMANDA E HEITZ


LARRY E COBEN


JET RENT
NO ADDRESS ON RECORD

# EXHIBIT "M"

1   Paul G. Cereghini (Bar No. 009641)
    Jeffrey C. Warren (Bar No. 021383)
2   Amanda Heitz (Bar No. 026519
    **BOWMAN AND BROOKE LLP**
3   Suite 1600, Phoenix Plaza
    2901 North Central Avenue
4   Phoenix, Arizona  85012-2736
    (602) 643-2300
5   Fax: (602)-248-0947
    paul.ceregini@bowmanandbrooke.com
6   jeff.warren@bowmanandbrooke.com
    amanda.heitz@bowmanandbrooke.com
7
    Attorneys for Defendants Polaris Industries, Inc. and Polaris Sales, Inc.
8

9              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

10                 **IN AND FOR THE COUNTY OF MARICOPA**

11   MICHAEL THOMPSON and RHONDA          )
     THOMPSON, Husband and Wife,          )
12                                        )   Case No. CV2015-053625
                  Plaintiffs,             )
13                                        )   **DEFENDANT POLARIS**
     v.                                   )   **INDUSTRIES, INC.'S AND POLARIS**
14                                        )   **SALES, INC.'S NOTICE OF FILING**
     POLARIS INDUSTRIES, INC., a foreign  )   **OF NOTICE OF REMOVAL**
15   corporation; POLARIS SALES, INC., a foreign )
     corporation; JET RENT, an Arizona business; )
16   DOE DEFENDANTS 1-10; ABC            )
     CORPORATIONS 1-10; and BLACK AND    )
17   WHITE PARTNERSHIPS 1-10,            )
                                          )
18                Defendants.            )
                                          )
19   ─────────────────────────────────────

20       **PLEASE TAKE NOTICE** that Defendants Polaris Industries Inc. and Polaris Sales

21   Inc. have filed a Notice of Removal of Action in the Office of the Clerk of the United States

22   District Court of Arizona. A copy of the Notice is attached hereto as Exhibit A.

23       DATED this 26TH day of August, 2016.

24                                   BOWMAN AND BROOKE LLP

25
                                     By: /s/ Jeffrey C. Warren
26                                       Paul G. Cereghini
                                         Jeffrey C. Warren
27                                       Amanda Heitz
                                         Attorneys for Defendants
28                                       Polaris Industries, Inc. and Polaris Sales,
                                         Inc.

16503941v1

The foregoing document was electronically filed this 26th day of August, 2016 with:

http://turbocourt.com

COPY of the foregoing mailed this 26th day of August, 2016 to:

Larry E. Coben
JoAnn Niemi
ANAPOL WEISS
8700 E. Vista Bonita Drive, Ste. 268
Scottsdale, Arizona 85255
Attorneys for Plaintiffs


/s/ Sandy Wickham

16503941v1                                      2