**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Thompson, et al., | No. CV-16-02868-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Polaris Industries Incorporated, et al., | |
| Defendants. | |

Before the Court are Plaintiffs' twenty Motions in Limine (Docs. 186-89, 203, 204, 206, 209, 210, 213-27) and Defendants' Responses in Opposition (Docs. 230-42, 244, 245-49), and Defendants' eighteen Motions in Limine (Doc. 190-202, 205, 207, 208, 211, 212) and Plaintiffs' Responses in Opposition (Docs. 288, 229, 250-254, 255, 256-65).

## I. LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984). The Ninth Circuit has explained that motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted). Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Motions in limine are "entirely within the discretion of the Court."

*Jaynes Corp. v. American Safety Indem. Co.*, 2014 WL 1154180, at *1 (D. Nev. March 20, 2014) (citing *Luce*, 469 U.S. at 41–42). Moreover, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has pass." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015) (citing *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001).

Motions in limine are "provisional" in nature. *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036 (D. Nev. 2013), *aff'd in part, rev'd in part, and dismissed in part on other grounds,* 613 F. App'x 610 (9th Cir. 2015). The Court issues its rulings on motions in limine based on the record currently before it. Therefore, rulings on such motions "'are not binding on the trial judge [who] may always change his [or her] mind during the course of a trial.'" *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner))). "'Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.'" *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

## II.    DISCUSSION

### A.    Plaintiffs' Motions in Limine

#### 1.    <u>Doc. 186</u>

In this Motion in Limine, Plaintiffs argue that because they have withdrawn their claim of "defect predicated upon inadequate warnings[,]" the Court should preclude the testimony of Defendants' expert, Dr. Dorris, because his opinions regarding the Polaris RZR warnings are irrelevant. (Doc. 186 at 1-2). Defendants contend that there were warning labels affixed to the Polaris RZR that "clearly stat[ed] that the RZR [could] overturn, resulting in serious injury or death." (Doc. 231 at 2). Defendants further argue that evidence of the warning labels is essential to its assumption of the risk defense.

In Arizona, the two recognized affirmative defenses to a strict products liability claim are: (1) assumption of risk and (2) product misuse. *See Jimenez v. Sears, Roebuck & Co.*, 904 P.2d 861, 864 (Ariz. 1995) (*en banc*). Thus, the Court finds that Dr. Dorris's testimony may be relevant to Defendants' defenses of misuse or assumption of the risk. Furthermore, as discussed *infra* Sections II(A)(18) and II(A)(20), whether Plaintiffs misused the product or assumed the risk, under Arizona law, is an issue that must be submitted to a jury (if the requisite evidence for an instruction on the defense is adduced). *See Sw. Pet Products*, 273 F. Supp. 2d at 1061 n.31. *See States Aviation Underwriters, Inc. v. Aerospatiale, Societe Nationale Industrielle*, 2005 WL 8161454, at *2 (D. Ariz. Nov. 1, 2005). Accordingly, Plaintiffs' Motion is denied without prejudice.

### 2. **Doc. 187**

In this Motion in Limine, Plaintiffs argue that the Court should exclude any reference to Exponent's Incident Specific Orientation Inversion Test ("Spit Test"). (Doc. 187 at 1). Specifically, Plaintiffs contend that the Spit Test did not rotate the Polaris RZR twice, the surrogate used in the test was two inches taller than Mr. Thompson, and the test was not filmed. (*Id.* at 2). Defendants contend that the Spit Test was "conducted by [Defendants'] experts to demonstrate and illustrate engineering principles that will be helpful to the jury's understanding of the experts' testimony, as well as the physics at work during the subject accident." (Doc. 230 at 1). Defendants further argue that "Plaintiffs' critiques of the [Spit] Test go solely to the weight, not to the admissibility, of the evidence." (*Id.* at 2). The Court agrees. As previously discussed in the Court's Order on the parties' *Daubert* motions (Doc. 268), Plaintiffs' challenges to the Spit Test go to the weight of the testimony and its credibility, not its admissibility. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."). Accordingly, Plaintiffs' Motion is denied without prejudice.

### 3. **Doc. 188**

In this Motion in Limine, Plaintiffs argue that the Court should exclude all

"testimony, opinions, and arguments by [D]efendants regarding [Mr.] Thompson's alleged fault" because, "[i]n Arizona, the defense of contributory negligence and/or comparative fault is not available in a claim based on strict product liability." (Doc. 188 at 1-2). In other words, Plaintiffs urge the Court to find that Arizona's bar of the contributory negligence defense in strict products liability actions requires the exclusion of evidence of Plaintiffs' conduct.

Defendants contend that under Arizona law, a comparative fault instruction for misuse can be proper, even if there is no negligence theory.[1] *See Jimenez*, 904 P.2d at 867–68 ("Thus, a comparative fault instruction for misuse, as well as one for assumption of risk, would be proper even if negligence theories have not been alleged . . . ."). Specifically, Defendants argue that Plaintiffs misused the Polaris RZR and, therefore, they are entitled to introduce evidence of Plaintiffs' conduct.

"A prima facie case of strict products liability is established by showing that when the product left the defendant's control, it was in a defective condition that made it unreasonably dangerous and the defect was a proximate cause of plaintiff's injuries." *Jimenez*, 904 P.2d at 864. As Plaintiffs note, contributory negligence is not a defense to a strict products liability suit. *See id.* "Contributory negligence is not applicable to strict liability because, under the doctrine of strict liability, no duty rests upon the ultimate consumer or user to search for or guard against the possibility of product defects." *Id.* Rather, the Court found that the two recognized affirmative defenses to a strict products liability claim are: (1) assumption of risk and (2) product misuse. *Id.* Arizona defines these various liabilities as follows:

> (1) Failure to discover a defect in the product which the plaintiff should, if he was reasonably diligent, have discovered is *contributory negligence*; (2) notwithstanding the discovery of such a defect, if the plaintiff nevertheless uses the article it is *assumption of risk*; and (3) the plaintiff's use of the product for certain purposes or in a manner not reasonably foreseen by the

---

[1] As an initial matter, the Court finds that Plaintiffs' notification to the Court and Defendants in their motion in limine that they intend to dismiss their negligence claim to be improper. Thus, if Plaintiffs wish to dismiss their negligence claim they must do so in a proper manner.

manufacturer is *misuse*.

*Id.* (emphasis added; internal quotations and brackets deleted).

Thus, Arizona law provides that a defendant in a strict products liability action shall not be liable if it proves that the proximate cause of the plaintiff's injury was "a use or consumption of the product that was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable or was contrary to any express and adequate instructions or warnings appearing on or attached to the product . . . ." A.R.S. § 12-683(3); *see also Monje v. Spin Master Inc.*, 2015 WL 13648554, at *6 (D. Ariz. July 24, 2015), *aff'd*, 679 Fed. Appx. 535 (9th Cir. 2017). Arizona law defines a reasonably foreseeable use as one "that would be expected of an ordinary and prudent purchaser, user or consumer and that an ordinary and prudent manufacturer should have anticipated." A.R.S. § 12-681(8). "[S]ome abnormal, or unintended uses will not constitute a legal misuse of the product, if they are reasonably foreseeable." *Kavanaugh v. Kavanaugh*, 641 P.2d 258, 263 (Ariz. Ct. App. 1981) (citations omitted). "Whether misuse of a product is reasonably foreseeable is generally a question of fact for the jury." *Adams v. Pac. Cycle, L.L.C.*, 2009 WL 532629, at *7 (Ariz. Ct. App. Mar. 3, 2009).

Therefore, under Arizona law, Plaintiffs' conduct is relevant to the defenses of assumption of the risk and product misuse. *United States Aviation Underwriters*, 2005 WL 8161454, at *2. Thus, the Court finds that Plaintiffs' conduct is relevant to prove that he used the product in a manner not reasonably foreseen by the product manufacturer. *Id.* Additionally, Plaintiffs' conduct is the type of evidence that is relevant to proving what caused the accident, an essential element of a strict products liability claim and arguably a matter for the jury to determine.[2] Accordingly, Plaintiffs' Motion is denied without prejudice.

### 4. **<u>Doc. 189</u>**

In this Motion in Limine, Plaintiffs argue that the Court should exclude "any

---

[2] However, the Court notes that "not every improper use of a product will constitute misuse rather than contributory negligence. Careless and thus improper handling or operation of the product is negligent use but not misuse." *Jimenez*, 904 P.2d at 870.

evidence or argument regarding the absence of other similar incidents ("OSIs") on the grounds that: (1) such evidence is without proper foundation; and (2) such evidence, if presented, permits an improper inference."  (Doc. 189 at 1-2).  Defendants contend that Plaintiffs' Motion is premature because, as long as Defendants lay proper foundation, evidence regarding the absence of other similar accidents is admissible.  (Doc. 233 at 2).  The Court agrees.  At this time, this Motion is too speculative and vague.  Plaintiffs can object to specific testimony or evidence at the appropriate time during trial.  Accordingly, Plaintiffs' Motion is denied without prejudice.

### 5.  <u>Doc. 203</u>

In this Motion in Limine, Plaintiffs argue that the Court should exclude "the use of the 'risk-benefit test' . . . and any evidence pertinent to that legal test and move for the application of the 'consumer expectation' test . . . to gauge whether the Polaris RZR was defective and not crashworthy."  (Doc. 203 at 1).  Defendants contend that Plaintiffs are asserting negligence and product liability theories based on design defect claims and under Arizona law the risk-benefit test is appropriate in determining if a design defect is unreasonably dangerous.  (Doc. 234 at 1-2).[3]

"A manufacturer is strictly liable for injuries caused by use of any product that was in a 'defective condition unreasonably dangerous.'" *Golonka v. GM Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App. 2003) (quoting *Dart v. Wiebe Mfg., Inc.*, 709 P.2d 876, 878 (Ariz. 1985)).  In Arizona, two models may be used to determine whether a product was defectively designed: the consumer expectation test and risk-benefit analysis.  *See Long v. TRW Vehicle Safety Sys., Inc.*, 796 F. Supp. 2d 1005, 1009 (D. Ariz. 2011).  Under the consumer expectation test, "the fact-finder determines whether the product 'failed to perform as safely as an ordinary consumer would expect when used in an intended or

---

[3] Defendants further provide that "Plaintiffs blatantly misstate the law in an attempt to mislead the Court by making up quotes to suit their argument."  (*Id.* at 2).  The Court notes that Plaintiffs expanded the applicability of the holding in *Feuerstein v. Home Depot, U.S.A., Inc.*, 2014 WL 2557122 *4 (D. Ariz. June 6, 2014); however, the Court does not agree with Defendants' characterization of Plaintiffs' motives.  Nonetheless, the Court will take this opportunity to remind both parties that they are responsible for accurately citing authority and evidence to this Court.

reasonable manner.'" *Golonka*, 65 P.3d at 962 (quoting *Dart*, 709 P.2d at 879). Application of the consumer expectation test is warranted where "the ordinary consumer, through the use of a product, has developed an expectation regarding the performance safety of the product." *Brethauer v. GM Corp.*, 211 P.3d 1176, 1183 (Ariz. Ct. App. 2010). The risk-benefit analysis tests asks the fact-finder to decide, in light of relevant factors, whether "the benefits of [a] challenged design . . . outweigh the risk of danger inherent in [the] design." *Dart*, 709 P.2d at 879. If not, the design was defective and unreasonably dangerous. *Id.* Courts apply the consumer expectation test when an ordinary customer through use of a product develops "an expectation regarding the performance safety of the product." *Brethauer*, 211 P.3d at 1183. However, "when application of the consumer expectation test is unfeasible or uncertain . . . courts additionally or alternatively employ the risk/benefit analysis to determine whether a design is defective and unreasonably dangerous." *Golonka*, 65 P.3d at 962.

The Court finds persuasive the conclusion reached in *Brethauer*, and several other cases, that consumers have developed reasonable expectations about how safely seatbelts should perform. *See Nance v. Toyota Motor Sales USA, Inc.*, 2014 WL 4702781, at *2 (D. Ariz. Sept. 22, 2014) ("In Arizona, the consumer expectation test applies to claims that seatbelts were defectively designed and unreasonably dangerous when they failed to restrain belted passengers."); *Brethauer*, 211 P.3d at 1183 ("We are persuaded that consumers have expectations about how safely seatbelts will perform."). Thus, the Court finds that under Arizona law—the applicable law in this case—the consumer expectation test applies to claims that seatbelts were defectively designed in that they failed to restrain belted passengers. *See Brethauer*, 211 P.3d at 1183–84; s*ee also Nance*, 2014 WL 4702781, at *2 ("It is for the jury to decide whether ordinary consumers expect that properly functioning seatbelts will keep a passenger's head inside a vehicle during a rollover crash."). The Court recognizes that this case concerns not only the design of the restraint harness system/seatbelt, but also the design of the entire ROPS; nonetheless, the Court finds that the ordinary consumer could reasonably expect, similar to a seatbelt, that

ROPS should restrain a passenger body within the confines of the vehicle during a rollover crash. *See Nance*, 2014 WL 4702781, at *2 ("Ordinary consumers could reasonably expect that a seatbelt should restrain a passenger's body within the confines of the vehicle.").

Therefore, the Court will provide the consumer expectation test jury instruction. Accordingly, Plaintiffs' Motion is granted.

### 6. <u>Doc. 204</u>

In this Motion in Limine, Plaintiffs argues that the Court should preclude "[D]efendants from making any reference to, or from cross-examining Plaintiffs' expert Alan Cantor regarding issues that arose more than 21 years ago in a case styled *Wiley v. General Motors Corporation*, including whether Mr. Cantor was sanctioned in that case." (Doc. 204 at 2). Specifically, Plaintiffs argue that "evidence of the granting of a mistrial and the basis for it, as well as any alleged conduct by Mr. Cantor in an unrelated 21-year old case is simply not relevant." (*Id.* at 3). Defendants contend that "Mr. Cantor's prior sworn testimony may be used to impeach him" and that "[s]pecific instances of a witness's misconduct are also admissible to undermine his or her character for veracity." (Doc. 235 at 1-2).

In *Wiley v. General Motors*, a mistrial was declared based on the defendant's objection that Mr. Cantor had removed seventeen seconds from a demonstrative videotape that he had shown to the jury during his testimony. *See Pierson v. Ford Motor Co.*, 2008 WL 7084522, at *5 (N.D. Cal. Aug. 1, 2008), *supplemented*, 2008 WL 7074289 (N.D. Cal. Oct. 3, 2008), *and supplemented*, 2009 WL 1034233 (N.D. Cal. Apr. 16, 2009). The court in *Wiley v. General Motors* did not make a finding that Mr. Cantor engaged in intentional misconduct.

The Court finds that the probative value of this material is far outweighed by the prejudice that will occur if it is allowed. The mistrial took place more than twenty years ago and involved a piece of demonstrative evidence that Plaintiffs are not offering at this trial. To explain the circumstances around the seventeen second omission in the videotape would require the parties to spend a considerable amount of resources and time responding

to an issue that is of marginal relevance to Mr. Cantor's testimony here. Thus, these factors weigh in favor of excluding this information. *See Milne v. Volkswagen AG*, 2009 WL 10702722, at *2 (D. Vt. Jan. 22, 2009). However, pursuant to Rule 801(d), Defendants may of course use Mr. Cantor's prior recorded testimony for impeachment purposes should his testimony in this trial be different than prior testimony. *See Pierson*, 2008 WL 7084522, at *5. Accordingly, Plaintiffs' Motion is granted.

## 7. **Doc. 206**

In this Motion in Limine, Plaintiffs argue that the Court should exclude any mention of claims that were pled in Plaintiffs' original Complaint that have been withdrawn or dismissed, including Plaintiffs' negligence, warnings, and punitive damages claims. (Doc. 206 at 1). Specifically, Plaintiffs provide that they "have informed the [D]efendants that the evidence proffered at trial will be limited to the legal theory of strict products liability-crashworthiness-design defects. (Count One of Plaintiffs' Complaint)." Defendants contend that the "evidence of the existence of warnings is clearly relevant to [Defendants'] defenses of misuse and assumption of the risk, while evidence of nonparties Jet Rent and its owner Mark Frandsen's (jointly, 'Jet Rent') fault is expressly permitted by the law." (Doc. 239 at 1).

On January 23, 2017, Defendants filed a Notice of Nonparty at Fault pursuant to A.R.S. § 12-2506(b)(5), which provided notice to Plaintiffs "that they intend to assert that Jet Rent and/or its owners, employees, or agents, is at fault, in whole or in part, for the damages alleged in [P]laintiffs' Complaint." (Doc. 24). Plaintiffs argue that "because an allegation of comparative fault of a non-party is an affirmative defense, the defendant must prove the nonparty was causatively at fault" and because "the issues in this case relate to the design of the product, fault requires expert testimony." (Doc. 206 at 2). Plaintiffs provided no case law that supports that position. Thus, as of now, the Court finds this request to be too vague and speculative. Plaintiffs can object at the appropriate time during trial. As to evidence regarding warnings, the Court finds that this evidence is admissible because it may be relevant to [Defendants'] defenses of misuse and assumption of the risk.

*See United States Aviation Underwriters*, 2005 WL 8161454, at *2. Accordingly, Plaintiffs' Motion is denied without prejudice.

### 8. <u>Doc. 209</u>

In this Motion in Limine, Plaintiffs argue that Defendants should be precluded "from making any comments, reference to, or argument regarding any alleged 'agreement' with Mark Frandsen relating to the subject RZR and the alleged fault of nonparties Jet Rent or Mark Frandsen." (Doc. 209 at 1). Specifically, Plaintiffs provide that during Mr. Frandsen's deposition, he

> testified that he believed he had an agreement with Plaintiffs that Jet Rent would not be named as party in the lawsuit. In fact, a letter was sent to Mr. Frandsen confirming that it was Plaintiffs' counsel's plan— at the time—not to name Jet Rent as a defendant. This letter and any discussions between counsel and Mr. Frandsen regarding the acquisition of the remnants of the RZR constitute inadmissible hearsay that is irrelevant to the issues in this case.

(*Id.* at 2). Defendants contend that "evidence of the agreement and Jet Rent's negligence is not only relevant; the jury is entitled by law to consider it." (Doc. 240 at 3). Plaintiffs have provided no authority to support their position and at this time the Court finds their concerns speculative. Accordingly, Plaintiffs' Motion is denied without prejudice.

### 9. <u>Doc. 210</u>

In this Motion in Limine, Plaintiffs argue that the Court should preclude "[D]efendants, their counsel, and witnesses from making any comments, reference to, or argument that the 2011 RZR 800 complied with voluntary standards written by the industry and/or complied with irrelevant industry practices or customs on the grounds that: (1) there were no industry standards applicable to the crashworthiness of the RZR; and, (2) evidence of industry practices or customs is not relevant in a strict liability case." (Doc. 210). Defendants contend that, in a strict liability case in Arizona, both state of the art and industry standards may be considered on the issue of whether a product is in a defective condition unreasonably dangerous to the user. (Doc. 241 at 2).

"A manufacturer is strictly liable for injuries caused by use of any product that was

in a 'defective condition unreasonably dangerous.'" *Golonka v. GM Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App. 2003) (quoting *Dart v. Wiebe Mfg., Inc.*, 709 P.2d 876, 878 (Ariz. 1985)). In any products liability case in Arizona, a defendant is not liable if it proves that "the defect in the product is alleged to result from inadequate design or fabrication, and if the plans or designs for the product or the methods and techniques of manufacturing, inspecting, testing and labeling the product conformed with the state of the art at the time the product was first sold by the defendant." A.R.S. § 12–683(2). State of the art is defined as "the technical, mechanical and scientific knowledge of manufacturing, designing, testing or labeling the same or similar products that was in existence and reasonably feasible for use at the time of manufacturing." A.R.S. § 12–681(10); *see also Bauerline v. Equity Residential Properties Mgmt. Corp.*, 2006 WL 3834285, at *8 (D. Ariz. Dec. 29, 2006).

Plaintiffs argue that customs of an industry are not the same as the state of the art defense and Defendants' compliance with voluntary standards written by the industry is irrelevant. (Doc. 210 at 3). Under Arizona law, customs of an industry are not the same as the state of the art defense; however, the Court nonetheless finds them relevant. *See Bauerline*, 2006 WL 3834285, at *8. Voluntary industry standards may be admissible because these standards may constitute substantive evidence on the strict liability issue of whether a product is in a defective condition unreasonably dangerous to the user. *See Hohlenkamp v. Rheem Mfg. Co.*, 655 P.2d 32, 36 (Ariz. Ct. App. 1982). Accordingly, Plaintiffs' Motion is denied without prejudice.

**10.  <u>Doc. 213</u>**

In this Motion in Limine, Plaintiffs argue that the Court should limit the testimony of Defendants' expert, Eddie Cooper. (Doc. 213). Defendants contend that "Plaintiffs' challenges go - if at all - to the weight of Cooper's testimony, not its admissibility." (Doc. 236). The Court agrees. *See Primiano*, 598 F.3d at 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."). Moreover, the Court finds that this

Motion is akin to a *Daubert* motion and that the deadline for *Daubert* motions has since passed. (Doc. 174). Accordingly, Plaintiff's Motion is denied without prejudice.

### 11. Doc. 215

In this Motion in Limine, Plaintiffs argue that the Court should exclude "a riding Demonstration" that was conducted by Defendants' expert, Dr. Graeme Fowler, and exclude materials that were not timely disclosed. (Doc. 215 at 1). Specifically, Plaintiffs argue that the "Riding Demonstration" conducted on May 9, 2018, near the area where the subject accident occurred, should be excluded because it is not reliable and "is nothing more than 'junk science.'" (*Id.* at 2). Additionally, Plaintiffs provide that Dr. Fowler was deposed on August 22, 2018, and on September 28, 2018, and October 1, 2018, Defendants provided several YouTube videos that support Dr. Fowler's opinion. (*Id.*) Defendants contend that the "Riding Demonstration" show similar circumstances as on the day of the accident and that the challenged YouTube videos simply serve as general background information for Dr. Fowler and that even if "the videos themselves are excluded from evidence in this matter, Plaintiffs have provided no basis upon which the Court should limit Dr. Fowler's ability to offer his full opinions in this case as stated in his report and expanded upon in his deposition." (Doc. 237 at 2-3).

The Court finds that the majority of this Motion is akin to a *Daubert* motion and that the deadline for *Daubert* motions has since passed. (Doc. 174). Moreover, concerns regarding the admission of "shaky" evidence are resolved through the trial process through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596; *see also Tavilla v. Cephalon Inc.*, 2012 WL 1190828, at *4 (D. Ariz. Apr. 10, 2012) ("vigorous cross-examination is still the preferred method for determining the truth of questionable opinion evidence."). Plaintiffs have failed to specifically identify how the "Riding Demonstration" differs from the accident scene. Moreover, while "it must ordinarily be shown that the experiments were conducted under substantially similar conditions to those prevailing during the occurrence in controversy[;]" the Court notes that "the conditions do not need to be identical." *Herbert*

*v. Lumbermens*, Inc., 2010 WL 2403754, at *6 (Ariz. Ct. App. June 15, 2010). Minor differences in the conditions go to the weight of the evidence, not its admissibility. As to the materials that Plaintiffs contend were not timely disclosed, the Court finds that Plaintiffs have not identified with specificity what videos were not timely disclosed; therefore, this request is too vague for the Court to render a decision on. Accordingly, Plaintiffs' Motion is denied without prejudice.

### 12. **Doc. 216**

In this Motion in Limine, Plaintiffs argue that the Court should limit the testimony of Defendants' expert, Dr. Elizabeth Raphael. (Doc. 216). Specifically, Plaintiffs argue that the "third-party testing known as the 'Malibu Tests' and 'Controlled Rollover Impact System[,]" Dr. Raphael's opinions from the Exponent testing that she was not physically present for, and duplicative testimony should all be excluded. (*Id.* at 1-2). The Court finds that this Motion is essentially a *Daubert* motion and that the deadline for *Daubert* motions has passed. (Doc. 174). Moreover, Plaintiffs did in fact file a *Daubert* motion to exclude Dr. Raphael, which addressed the majority of Plaintiffs arguments here. (Doc. 179). Thus, the Court refers the parties to its Order on the parties' *Daubert* Motions. (Doc. 268). Accordingly, Plaintiffs' Motion is denied without prejudice.

### 13. **Doc. 217**

In this Motion in Limine, Plaintiffs argue that the Court should preclude "[D]efendants, their counsel, and witnesses from making references to irrelevant and inadmissible health and disability insurance payments, Medicare, and other collateral sources." (Doc. 217). Defendants contend that Plaintiffs' Motion is grossly overbroad and at odds with Arizona law. (Doc. 238). Specifically, Defendants argue that the collateral source rule should not be so broadly applied because "some of the evidence at issue, including the testimony of [Defendants'] expert Reg Gibbs, is admissible to prove whether Plaintiffs' medical bills were reasonable." (*Id.* at 1). The Court agrees. Thus, at this time, Plaintiffs' Motion is too broad and speculative. Plaintiffs can object at the appropriate time during trial. Accordingly, Plaitniffs' Motion is denied without prejudice.

### 14. <u>Doc. 218</u>

In this Motion in Limine, Plaintiff argues that the Court should "limit[] the [D]efendants, their counsel, and [Defendants' expert,] Dr. Rosen to those opinions expressed by Dr. Rosen in his letter report and as identified" in Defendants' expert's, Mr. Gibb, May 10, 2018 Plan." (Doc. 218 at 2). Specifically, Plaintiff argues that as "the parties are now preparing the case for trial, it would be prejudicial to the Plaintiffs now at this late date to receive new opinions and the bases for such new opinions." (*Id.* at 2). Defendants argue that "Plaintiffs knowingly chose, as part of their legal strategy, not to depose Dr. Rosen or Mr. Gibbs. As such, they cannot expect him to simply read his written opinions at trial when they cross-examine him." Defendants further argue that "[w]hile Dr. Rosen will not be providing new, undisclosed opinions, he is free to elaborate on his proffered opinions and to opine on any information received after his expert reports were drafted." (Doc. 244 at 2). The Court agrees. *See party Harrelson v. Dupnik,* 2014 WL 2510530, at *4 (D. Ariz. Mar. 12, 2014), *report and recommendation adopted as modified*, 2014 WL 2510569 (D. Ariz. June 4, 2014) (finding that Rule 26(a)(2)(B) "does not limit an expert's testimony simply to reading his report[;]" rather Rule 26(a)(2)(B) "contemplates that the expert will supplement, elaborate upon, [and] explain and subject himself to cross-examination upon his report in his oral testimony.") (internal quotation and citation omitted). The Court finds that Plaintiffs' concerns regarding Dr. Rosen's testimony are speculative and vague because Plaintiffs have failed to identify specific information or opinions that they wish to exclude. Plaintiffs can object at the appropriate time during trial. Accordingly, Plaintiffs' Motion is denied without prejudice.

### 15. <u>Doc. 221</u>

In this Motion in Limine, Plaintiffs argue that the Court should "limit[] the cumulative, vague, speculative, and irrelevant opinions and testimony of the [Defendants'] expert witness, Kevin Breen." (Doc. 221 at 1). Specifically, Plaintiffs argues that "Mr. Breen's anticipated testimony on these topics does not comport with the evidentiary standards for admissibility. Further, it is significantly duplicative of other defense expert

testimony." (*Id.* at 2). Defendants contend that "Mr. Breen's opinions in this matter are both supported and have been disclosed. Plaintiffs' challenges go to the weight his opinions should be given by the trier of fact, not to their admissibility." (Doc. 242 at 2).

The Court finds that this Motion is essentially a *Daubert* motion and that the deadline for *Daubert* motions has since passed. (Doc. 174). Additionally, the Court finds that Plaintiffs' concerns are better resolved through the trial process through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596; *see also Tavilla v. Cephalon Inc.*, 2012 WL 1190828, at *4 (D. Ariz. Apr. 10, 2012) ("vigorous cross-examination is still the preferred method for determining the truth of questionable opinion evidence."). As to the duplicative nature of Mr. Breen's testimony, the Court finds that, while Plaintiff may be right, the Court will reserve judgment on whether an expert is duplicative until trial, when it will be in a better position to evaluate the issue of whether the testimony is duplicative. Accordingly, Plaintiffs' Motion is denied without prejudice.

### 16. <u>Doc. 223</u>

In this Motion in Limine, Plaintiffs argue that the Court should exclude the Accident Report and the personal opinions and conclusions of two of the three responding officers from the Yuma County Sheriff's Officer. (Doc. 223). Specifically, Plaintiffs argue that the Accident Report contains hearsay and that neither of the two officers have first-hand knowledge of what happened in the accident and therefore the lay opinions must be precluded. (*Id.* at 3). Defendants contend that in Arizona, police reports, and the statements therein, qualify for the public records hearsay exception and that the two responding officers, who will testify as lay witnesses, do have personal knowledge of the accident. (Doc. 245).

Rule 801(c) define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." A police report, including the police officer's statements and observations, are admissible in civil cases under the public records

hearsay exception. *See* Fed. R. Evid. 803(8); *see also Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973) ("Entries in a police report based on an officer's observation and knowledge may be admitted, but statements attributed to other persons are clearly hearsay."); *Blanton v. Cnty. of Sacramento*, 2012 WL 2798920, at *1 n.4 (E.D. Cal. 2012) ("The police officer's statements and observations recorded in a police report are admissible, as is the summary of [plaintiff's] statement made to Officer Bricker under the public-records hearsay exception contained in Fed. R. Evid. 803(8)"); *Josfan v. Indochine*, 2012 WL 113371, at *2 (C.D. Cal. 2012) ("A police officer's statements and observations recorded in a police report are admissible under the public-records hearsay exception contained in Federal Rule of Evidence 803(8).").

Here, Plaintiffs argue that the Accident Report (Doc. 223-1 at 2-10) contains hearsay, but they do not dispute that the responding officers arrived on scene and investigated the accident. Thus, the personal observations and knowledge of the responding officers contained in the Accident Report are not hearsay and are admissible under Rule 803(8). Additionally, the Accident Report also contains summaries of statements that Ms. Thompson, a Plaintiff in this matter, made to the officers, which the Court finds to be admissible pursuant to Rule 801(d)(2)(A). Thus, the Court finds that the Accident Report is admissible pursuant to Rules 801(d)(2)(A) and 803(8).

Sergeant Terry Owens, Deputy Arturo Oviedo, and Sergeant Scott Bjornstad all responded to the incident for Yuma County Sherriff's Office and all three have been designated as lay witnesses. (Doc. 222 at 10-11, 15-16). Plaintiffs only seek to limit the testimony of Sergeant Owens and Deputy Oviedo because they argue that their testimony is based on speculation, not personal observation. Under Rule 701, lay witnesses may offer testimony that is "rationally based" on his/her perception, "helpful" to understanding the testimony or a fact at issue, and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." At this time, Court finds that Plaintiffs' concerns are too speculative. Plaintiffs can object at the appropriate time during trial. However, the Court reminds the parties that must avoid duplicate testimony. Accordingly, Plaintiffs'

Motion is denied without prejudice.

### 17. **Doc. 224**

In this Motion in Limine, Plaintiffs argue that the Court should preclude any "reference to the terms on the back of the rental Agreement—labeled 'Waiver of Liability'." (Doc. 224 at 1). Specifically, Plaintiffs argue that they never read or signed the waiver Jet Rent purportedly showed them, the waiver document does not reference Defendants, and therefore Defendants should be precluded from offering this document as evidence. (*Id.* at 3). Defendants contend that Arizona law recognizes assumption of the risk as an affirmative defense to products liability actions, and therefore, the liability waiver is relevant to their assumption of risk defense. (Doc. 246 at 2). Defendants further argue that whether Plaintiffs read the agreement is a disputed fact and should be left to the jury. (*Id.* at 3).

The Court finds that the dispositive fact in this Motion is that the Rental Agreement and the Waiver of Lability (Doc. 246-1 at 2-3) was a contract only between Jet Rent and Plaintiffs. Defendants were not a party to the Rental Agreement and the Waiver of Lability. Therefore, the contract is irrelevant to Defendants' defenses. Accordingly, Plaintiffs' Motion is granted.

### 18. **Doc. 225**

In this Motion in Limine, Plaintiffs argue that the Court should exclude all "evidence or argument that operating off-highway recreational vehicles ('OHRV') like the Polaris RZR is an 'inherently risky or dangerous activity' and as such, paralyzing injuries such as those suffered by [Mr.] Thomson are a well-known risk that the Plaintiffs assumed." (Doc. 225 at 1). Defendants contend that "[a]ssumption of the risk is a question of fact for the jury, which is entitled to consider evidence that the [Plaintiffs] assumed the risks of operating a RZR at an unsafe speed, in an unfamiliar environment, with little or no prior experience operating a RZR." (Doc. 247 at 1).

In order for the doctrine of assumption of risk to be applicable in Arizona, a general knowledge of a danger is not sufficient but, rather, the plaintiff must have actual knowledge

of the specific risk which injured him and appreciate its magnitude.  *See Sw. Pet Products, Inc. v. Koch Indus., Inc.*, 273 F. Supp. 2d 1041, 1061 n.31 (D. Ariz. 2003); *Jimenez v. Sears, Roebuck & Co.*, 904 P.2d 861, 865 (1995) ("knowledge of a product's defect is not necessary to establish misuse but is essential for assumption of risk.").  The Court finds that whether Plaintiffs assumed the risk is, under Arizona law, an issue that must be submitted to a jury (if the requisite evidence for an instruction on the defense is adduced).  *See Sw. Pet Products*, 273 F. Supp. 2d at 1061 n.31.  Accordingly, Plaintiffs' Motion is denied without prejudice.

### 19.  <u>Doc. 226</u>

In this Motion in Limine, Plaintiffs argue that the Court "exclude any references or argument by [Defendants] that the Plaintiffs have any responsibility for the spoliation of the RZR[.]"  (Doc. 226 at 1).  Specifically, Plaintiffs argue "that: (1) the Plaintiffs did not own or control the RZR; (2) the changed condition of the RZR was not caused in any way by the Plaintiffs; and (3) the changed condition of the RZR has in no way hampered Polaris' ability to understand the circumstances of this accident[.]"  (*Id.*) Defendants contend that, in Arizona, the duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation and that Plaintiffs took no steps to preserve the RZR.  (Doc. 248 at 2).

In diversity cases,[4] state law determines a party's duty to preserve evidence that is outcome-determinative, but federal rules govern sanctions for breach of that duty.  *State Farm Fire & Cas. Co. v. Broan Mfg. Co., Inc.*, 523 F. Supp. 2d 992, 995 (D. Ariz. 2007).  Arizona law imposes upon litigants a duty to preserve evidence which they know or should know is relevant in the action or is reasonably likely to be requested during discovery.  *Souza v. Fred Carries Contracts, Inc.*, 955 P.2d 3, 6 (Ariz. Ct. App. 1997).  Sanctions in the Ninth Circuit are left to the broad discretion of the district courts "to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992); *see also*

---

[4] This case was removed from state court on the basis of diversity jurisdiction. (Doc. 1).

*Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence.").

Here, the Polaris RZR was owned by Jet Rent and rented to Plaintiffs on the day of the accident. After the accident, the Polaris RZR was photographed at the scene by the responding police officers and then it was released to Jet Rent's representative. Defendants have not provided any evidence that the Polaris RZR was in Plaintiffs' control or possession after the accident. Moreover, Defendants have not provided any authority to suggest that Plaintiffs have an affirmative duty to seek out and preserve evidence that is not in their control or possession. *See Souza*, 955 P.2d at 6 (finding that "plaintiff and her counsel had an affirmative duty to preserve relevant evidence within their control") (emphasis added)). Accordingly, the Court will grant Plaintiffs' Motion.

### 20. <u>Doc. 227</u>

In this Motion in Limine, Plaintiffs argue that the Court should "preclude Polaris, their attorneys and witnesses from referring to any allegations of misuse concerning the subject RZR." (Doc. 227 at 1). Defendants contend that "[m]isuse is an affirmative defense to a strict liability action and a question of fact for the jury." (Doc. 249 at 1).

As previously discussed, under Arizona law the two recognized affirmative defenses to a strict products liability claim are: (1) assumption of risk and (2) product misuse. "Misuse has been variously referred to as use for a purpose or in a manner that, from the manufacturer or seller's view, was unintended, unforeseeable, unanticipated, unexpected, non-customary, or abnormal." *Jimenez v. Sears, Roebuck & Co.*, 904 P.2d 861, 865 (1995). The Court finds that whether Plaintiffs misused the product, under Arizona law, is an issue that must be submitted to a jury (if the requisite evidence for an instruction on the defense is adduced). *See Sw. Pet Products*, 273 F. Supp. 2d at 1061 n.31. Accordingly, Plaintiffs' Motion is denied without prejudice.

### B. Defendants' Motions in Limine

#### 1. <u>Doc. 190</u>

In this Motion in Limine, Defendants argue that the Court should preclude all "testimony, evidence, or argument related to the 'Golden Rule,' public/community safety, and similar 'Reptile' tactics." (Doc. 190). Plaintiffs aver that this Motion in Limine is Defendants' attempt "to unnecessarily limit Plaintiffs' counsel's ability to present our case the way [they] deem best[,]" and "ask the Court to defer adjudication and to instruct defense counsel to object to specific testimony at trial." (Doc. 190). The "Golden Rule" argument essentially asks the jury to put itself in the position of the party and "Reptile" strategy uses tactics to appeal to jurors' most primitive instincts of safety and self-preservation so that they override the portion of the brain that uses logic.

At this time, the Court will deny this Motion. Defendants have not provided any specific evidence which they wish to be excluded; thus, the Court finds the Motion to be too speculative. Accordingly, Defendants' Motion is denied without prejudice.

## 2. **Doc. 191**

In this Motion in Limine, Defendants argue that the Court should preclude all "testimony, evidence, or argument related to the financial status of [Defendants] or Plaintiffs . . . ., including the net-worth, size, or market share of Polaris and its ability to pay a settlement or judgment." (Doc. 191). Plaintiffs contend that "[D]efendants' net worth, size, or market share are all irrelevant factors in a product liability claim, [but] references to the size of Polaris may be relevant with respect to the design defect claim." (Doc. 255 at 1). In other words, Plaintiff is arguing that "Polaris should not be exempted from the rules that apply to everyone else when the alleged tort is attributed to economic motivations." (*Id.* at 2).

At this time, Plaintiffs' concerns regarding what arguments Defendants may make in relation to economic motivations are speculative. Thus, the Court finds that Defendants' net-worth, size, and market share, and Defendants' ability—or inability—to pay a settlement or judgment is irrelevant to Plaintiffs' claims and therefore will be precluded. However, if Defendants introduced evidence of economic motivations, Plaintiff may at that time argue as to the admissibility of Defendants' size and financial resources. Accordingly,

Defendants' Motion is granted in part and denied in part.

### 3. **Doc. 192**

In this Motion in Limine, Defendants argue that the Court should exclude "from evidence all videos of Polaris vehicles that Polaris did not create, produce, endorse, or sponsor all." (Doc. 192 at 1). Defendants provide that "proffered by Plaintiffs as Exhibit Nos. 0067–0085 are countless amateur videos of Polaris vehicles with which Polaris is not associated[,]" and "[s]uch videos are inadmissible under Federal Rules of Evidence 401, 402, 403, 901, and 1002 because they are irrelevant, unfairly prejudicial, and incapable of being authenticated." (*Id.*) Plaintiffs contend "that excerpts of films are relevant because they provide information [their] experts relied upon to explain the handling characteristics of these vehicles and their foreseeable uses off-road, including the risks of rollover and the importance of well-designed roll cages and seat belt systems." (Doc. 262 at 1).

The Court shares Defendants' concerns regarding the authentication of these videos. "Authentication is a condition precedent to admissibility." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Under Rule 901(a), to satisfy the requirement of authentication, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Orr*, 285 F.3d at 773. This rule requires the proponent of the evidence to make a prima facie showing of authenticity such that a reasonable juror could find in favor of authenticity. *United States v. Yin*, 935 F.2d 990, 996 (9th Cir. 1991). Evidence can be authenticated through testimony from a "person with knowledge" or testimony about the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(1), (4). Plaintiffs argue its experts, Mr. Uhl and Mr. Cantor, will be able to authenticate the videos and that Messrs. Uhl and Cantor will be able to testify that the videos "do indeed depict the typical off-road operation of these side-by-side vehicles." (Doc. 262 at 2). The Court disagrees. There is no way for Messrs. Uhl and Cantor to know whether these videos have been edited or whether the side-by-side vehicles have been altered in any way. Thus, the Court finds that the videos are not capable of being

authenticated under Rule 901.

Plaintiffs also attempt to invoke Rule 703 as grounds for the admission of this evidence. (Doc. 262 at 2-3). Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Plaintiffs' reliance on Rule 703 is misplaced. Rule 703 simply permits an expert witness to rely on inadmissible facts or data to base their conclusions or inferences; it does not allow the admittance of evidence that is otherwise inadmissible. Accordingly, Defendants' Motion is granted.

### 4. <u>Doc. 193</u>

In this Motion in Limine, Defendants argue that the Court should bar any "reference to the size or location of the law firms representing [Defendants] or Plaintiffs . . . at trial, as well as the number of attorneys at the firms, their billing rates, experience, or amount of fees incurred." (Doc. 193 at 1). Specifically, Defendants "anticipate[] that Plaintiffs will make such references to garner animosity from jurors towards the large, out-of-town law firm that represents [Defendants] and to ingratiate themselves with the jury via a 'home-court' bias towards the local firm that represents Plaintiffs." (*Id.* at 1-2). In Response, Plaintiffs provide that they "agree that the resources of the law firm representing any given party in this matter are wholly irrelevant to any fact of consequence." (Doc. 264 at 1). Plaintiffs however aver that "during *voir dire*, it is appropriate to identify the lawyers and witnesses for the venire panel to determine whether anyone knows any of these people[,]" and "in cross-examination of experts it is appropriate to ask questions of experts regarding the extent of their work for lawyers representing [Defendants]." While the Court finds that Defendants' Motion does not cover those situations raised by Plaintiffs, the Court nonetheless agrees that the parties may explore the nature of the relationship between each party and their experts. Additionally, the parties should be aware that the Court will conduct *voir dire* and will ascertain whether any of the potential jurors know any of the

counsel for either party. Therefore, the parties are prohibited from referring to the size, location, number of attorneys, their billing rates, experience, and amount of fees incurred by the law firms representing Defendants and Plaintiffs, as it is irrelevant to the litigation. Accordingly, Defendant's Motion is granted.

**5.    Doc. 194**

In this Motion in Limine, Defendants argue that because Plaintiffs have already dismissed their punitive damages claims against Defendants, the Court should bar any "comments by counsel for Plaintiffs . . . that the jury should 'send a message,' 'teach a lesson,' 'make a statement,' or deter others with its verdict, punish Polaris, act as the conscience of the community, or similar statements." (Doc. 194 at 1). Plaintiffs contend that although they "do not have any intention of making any argument that supports their dismissed punitive damages claim, Plaintiffs reserve their right to make targeted statements that the [D]efendants should be held responsible for the consequences of its own misconduct." (Doc. 256 at 1).

At this time, the Court will deny this Motion. Defendants' request is overly broad and they have not provided any specific evidence which they wish to be excluded; thus, the Court finds the Motion to be too speculative. Defendants can object at the appropriate time during trial. Accordingly, Defendants' Motion is denied without prejudice.

**6.    Doc. 195**

In this Motion in Limine, Defendants argue that "all nonparty witnesses who may be called to testify in this matter" should be excluded from the courtroom for the entire duration of the trial. (Doc. 195). Defendants further provide that "[a] sequestration Order is especially appropriate where many of Plaintiffs' fact witnesses are family members, including their children and step-children." (*Id.* at 3). Plaintiffs contend that "Defendants make this assertion without any factual basis—because there is none—that the Plaintiffs' children or step-children . . . would attempt to tailor, shape or fabricate their testimony, or engage in collusion." (Doc. 260 at 1). Plaintiffs also argue that "to the extent that none of the Plaintiffs' children or step-children will be called as witnesses at the trial, Rule 615

would not apply to them."  (*Id.*)

Rule 615 states that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony."  Rule 615 goes on, however, to explain that it does not authorize exclusion of: "(b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; [or] (c) a person whose presence a party shows to be essential to presenting the party's claim or defense."  The purpose of a Rule 615 exclusion order is to "reduce the danger that a witness's testimony will be influenced by hearing the testimony of other witnesses, and to increase the likelihood that the witness's testimony will be based on her own recollections."  *United States v. Hobbs*, 31 F.3d 918, 921 (9th Cir. 1994).

First, the Court finds that Plaintiffs are correct that Rule 615 only applies to non-party witnesses; therefore, any of Plaintiffs' children or step-children that are not witnesses will be permitted to be present in the courtroom for the entirety of the trial.  However, Plaintiffs have designated Mr. Thompson's sons, Michael Thompson and Camryn Thompson, and Ms. Thompson's daughters, Amber Cahue and Regina Cahue, as witnesses.  (Doc. 222 at 9-10).  Plaintiffs provide no authority that Mr. Thompson's sons or Ms. Thompson's daughters meet any of Rule 615's exceptions.  Thus, Plaintiffs' children and step-children that have been designated as witnesses are excluded from the courtroom prior to their testimony; however, the Court will permit them to be present in the courtroom after they have completed testifying.  Aside from Plaintiffs' children and step-children, all other non-party witnesses are excluded from the courtroom for the entire duration of the trial pursuant to Rule 615.  Accordingly, Defendants' Motion is granted in part and denied in part.

### 7.  <u>Doc. 196</u>

In this Motion in Limine, Defendants request the Court "bar the personal opinions of Plaintiffs' Counsel at trial."  (Doc. 196 at 1).  Defendants provide that they "anticipate that Plaintiffs' Counsel will attempt to argue and interject their own personal opinions during the course of the trial of this matter."  (*Id.*)  Plaintiffs contend that Defendants "fail[]

to specify the personal opinions they anticipate Plaintiffs' counsel will attempt to argue and interject during the trial. Nor have Defendants identified any topic on which they anticipate that Plaintiffs' counsel will attempt to argue and interject their own personal opinions." (Doc. 258 at 1-2). The Court agrees. At this time, the Court will deny this Motion. Defendants' have not provided any specific evidence which they wish to be excluded; thus, the Court finds the Motion to be speculative. Defendants can object at the appropriate time during trial. Accordingly, Defendants' Motion is denied without prejudice.

### 8. **Doc. 197**

In this Motion in Limine, Defendants request the Court "bar any lay witness from opining, concluding, speculating, implying, or otherwise testifying as to the nature and extent of [Mr. Thompson's] alleged injuries, disabilities, physical conditions, diagnoses, prognoses, and/or otherwise concerning his physical capabilities." (Doc. 197 at 1). Specifically, Defendants argue that "[n]o lay witness, including [Ms. Thompson], is competent to testify as to [Mr. Thompson's] medical prognosis and the extent of his claimed disability. (*Id.* at 2). Plaintiffs contend a "[l]ay witnesses may testify to their own physical injuries, including when the injuries started or worsened, if the injuries are typically observable by an ordinary person." (Doc. 254 at 3).

A witness is permitted to testify as to "scientific, technical or other specialized" information if the witness is "qualified as an expert by knowledge, skill, experience, training or education" and the testimony is based upon sufficient facts or data, the testimony is based upon reliable analysis and the witness applies this reliable analysis to the data. Fed. R. Evid. 702. However, an individual lacking such qualifications may only testify as to opinions "rationally based on the witness's perception" and that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Plaintiffs will not be permitted to offer any medical opinion or to report what any medical professionals told them about Mr. Thompson's injuries or prognosis. However,

Mr. Thompson may testify about his own perceptions of what he felt when the injury occurred, how it felt over time and how it feels now, how his condition has impacted his life, and as to any other information that is within his own personal knowledge and based upon his own perceptions. *See Nehara v. California*, 2013 WL 1281618, at \*9 (E.D. Cal. Mar. 26, 2013) (holding that plaintiff could testify as to any information that was within his own personal knowledge and based upon his own perceptions, but could not offer opinions or report on what medical professionals told him about his condition). Likewise, Ms. Thompson may testify about how Mr. Thompson's injuries have impacted her life and as to any other information that is within her own personal knowledge and based upon her own perceptions. Accordingly, Defendants' Motion is granted in part and denied in part.

### 9. <u>Doc. 198</u>

In this Motion in Limine, Defendants argue that the Court should bar "all evidence or references to the existence of insurance coverage or lack thereof for [Defendants], including but not limited to policy amounts and liability or umbrella coverage." (Doc. 198 at 1). Plaintiffs provide that they "agree that any collateral sources [are] inadmissible in this case." (Doc. 257 at 1). Specifically, Plaintiffs "request the Court preclude both sides from making reference to the existence of insurance coverage for any of the parties." (*Id.* at 2). In light of the parties' representations, Defendants' Motion is granted.

### 10. <u>Doc. 199</u>

In this Motion in Limine, Defendants argue that the Court should bar "Plaintiffs, their attorneys, witnesses, agents, and anyone else from discussing, mentioning, alluding or referring to in any manner during trial or in the presence of the jury any notion that [Defendants'] conduct was intentional, reckless, willful or wanton, or in conscious disregard of Plaintiff's [sic] rights or safety, or from using any inflammatory terms directed against Polaris's conduct in allegedly causing the injuries." (Doc. 199 at 1). Specifically, Defendants argue that, as Plaintiffs have already dismissed their punitive damages claims against Defendants, "[a]ny suggestion that Polaris's conduct was intentional, reckless, willful or wanton, or in conscious disregard of Plaintiffs' rights or safety, raises the specter

of a wrong far beyond Plaintiffs' allegations." (*Id.* at 2).  Plaintiffs contend that they do not intend to offer any evidence or testimony in support of an award of punitive damages and that Defendants have not identified what evidence would constitute "inflammatory terms." (Doc. 263 at 1-2).  Additionally, Plaintiffs provide "that this case will be tried on a theory of strict liability-crashworthiness only. To this end, Plaintiffs will move to dismiss their negligence claim." (*Id.* at 1).

Plaintiffs appear to agree that they will not argue that Defendants' conduct was intentional, reckless, willful or wanton, or in conscious disregard of Plaintiff's rights or safety.  The only issue Plaintiffs take with this Motion, is the prohibition on the use of "inflammatory terms" without defining what an inflammatory term is.  The Court finds that, without a definition, the phrase "inflammatory terms" is too broad and vague.  Defendants can object at the appropriate time in trial to specific testimony.  Therefore, Defendants' Motion is granted in part and denied in part.

### 11. <u>Doc. 200</u>

In this Motion in Limine, Defendants argue that pursuant to Rule 407, the Court should "exclude[] all evidence, reference, or testimony related to any subsequent remedial measures taken by Polaris and any argument that Polaris engaged in such subsequent remedial measures." (Doc. 200 at 1).  Plaintiffs contend Defendants failed to identify the supposed remedial measures and therefore this Motion should be denied.  (Doc. 228 at 1).

Rule 407 provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures."

The Court agrees that subsequent remedial measures are precluded by Rule 407; however, Rule 407 does have exceptions.  Thus, as Defendants have not provided the specific evidence they seek to exclude, the Court cannot determine if the evidence is

precluded by Rule 407 or if it fits into an exception. Without reference to specific evidence, the Court cannot determine the applicability of Rule 407, or even conduct a relevancy and prejudice analysis. Accordingly, Defendants' Motion is denied without prejudice.

### 12. **Doc. 201**

In this Motion in Limine, Defendants argue that the Court should "exclude[] all evidence, reference, testimony, or argument related to other accidents, incidents, complaints, and lawsuits involving Polaris and/or all terrain and other recreational vehicles, whether or not designed and manufactured by Polaris that are not the subject of this case." (Doc. 201 at 1). Plaintiffs contend that Defendants do "not identify what specific evidence it asks the Court to exclude, and it implicitly argues that all accidents are dissimilar and therefore they must be excluded— even if similarity is proven—because of unfairness." (Doc. 229 at 1). The Court agrees.

As Defendants provide:

> Evidence related to other accidents to prove a design defect or Polaris's notice of same is not admissible *unless competent evidence establishes that such other accidents are substantially similar to the underlying accident.* *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2000). Evidence of a dissimilar accident or lawsuit involving such accidents is irrelevant because it may involve different circumstances or theories of causation. FED. R. EVID. 402; *see also Jaramillo v. Ford Motor Co.*, 116 Fed. App'x 76, 79 (9th Cir. 2004) (new trial in products liability rollover defect case was warranted because district court admitted evidence of other accidents in violation of Rule 402).

(Doc. 201 at 2) (emphasis added). Defendants have not identified any "accidents, incidents, complaints, and lawsuits" that they wish to preclude; therefore, the Court cannot determine whether the "accidents, incidents, complaints, and lawsuits" are substantially similar or dissimilar to the underlying accident. Defendants can object at the appropriate time in trial to specific testimony. Accordingly, Defendants' Motion is denied without prejudice.

### 13. **Doc. 202**

In this Motion in Limine, Defendants argue that the Court should exclude the "'Day-

In-The-Life' Video depicting [Mr.] Thompson . . . that Plaintiffs intend to admit as Exhibit No. 0063." (Doc. 202 at 1). Specifically, Defendants argue that the Video is not relevant, the Video's probative value is substantially outweighed by the danger of unfair prejudice, the Video is cumulative of other medical records, and the Video is inadmissible hearsay. (Doc. 202 at 1-3). Plaintiffs contend that "[a] day-in-the-life video is akin to a photograph and admissible if a foundation is laid by someone having personal knowledge of the filmed object and that the video is an accurate portrayal of that." (Doc. 251 at 2). Specifically, Plaintiffs argue that the Video is "relevant because they corroborate the Plaintiffs' testimony regarding [Mr. Thompson's] recurring complications and ongoing (daily) physical challenges since the accident." (*Id.* at 3).

The Court notes that it has not watched the Video. However, Plaintiffs provide that the Video does not have audio and depicts Mr. Thompson "rising in the morning, being dressed and groomed, leaving the house to attend outpatient rehabilitation before returning home where he is assisted by his caregiver with showering. A small portion of the [V]ideo shows how [Mr. Thompson] operates his modified vehicle." (*Id.* at 1). Defendants have not specified how the Video is unduly prejudicial, nor have they identified portions of the Video that are edited or that do not depict a typical day in the life of Mr. Thompson. *Contra Pages-Ramirez v. Hosp. Espanol Auxilio Mutuo De Puerto Rico, Inc.*, 2008 WL 11357891, at *2 (D.P.R. Apr. 29, 2008) ("After carefully reviewing a portion of the video, and in light of the substantial editing the film underwent, the Court finds that the video is more unfairly prejudicial to [defendant's] interests than it is probative to [p]laintiffs' case."); *Bolstridge v. Cent. Maine Power Co.*, 621 F. Supp. 1202, 1203 n.1 (D. Me. 1985) (finding defendants specifically identified "several aspects of the film indicate that the day depicted is not typical for the [p]laintiff and is unduly prejudicial"). Additionally, as Mr. Thompson will be subject to cross-examination, the possibility that the Video will be prejudicial is significantly reduced. *See Bannister v. Town of Noble, Okl.*, 812 F.2d 1265, 1269–70 (10th Cir. 1987) ("While it is true that opposing counsel will not be present to question the victim during the making of a film, this difficulty is lessened if the victim can be cross-examined

at trial regarding the events depicted in the film. Films are frequently used at trial in conjunction with live testimony."). Thus, at this time, the Court does not find that the Video is unduly prejudicial.

Defendants generally argue that the Video is cumulative of Mr. Thompson's medical records, but do not point to specific medical records. Thus, the Court does not have the necessary information to determine whether the Video is cumulative. However, the Court does note that the Video, as described by Plaintiffs, depicts more than just Mr. Thompson's injuries; it shows how those injuries effect his daily life.

As to Defendants' argument that the Video is inadmissible hearsay, the Court finds that because it has not seen the Video, it cannot determine whether it is hearsay. However, the Court notes that the general conclusion is that such videos are not hearsay and are admissible if subject to cross-examination through the witness who verifies and uses the film. *See Grimes v. Employers Mut. Liab. Ins. Co. of Wisconsin*, 73 F.R.D. 607, 610 (D. Alaska 1977). Moreover, some courts have concluded that, although these videos might contain some elements of hearsay, they are admissible under Rule 807. *See id.* at 611 ("However, even though the plaintiff's film is hearsay, the evidence is admissible in this instance under Rule [807][5].").

Accordingly, Defendants' Motion is denied without prejudice.

### 14.    Doc. 205

In this Motion in Limine, Defendants argue that the Court should "instruct the jury that they are permitted to draw an adverse inference from the destruction or spoliation of evidence against the party or witness responsible for that behavior." (Doc. 205 at 1). As discussed in Section II(A)(19) of this Order, the Defendants have not established that Plaintiffs had control of the Polaris RZR and helmet. *See Souza*, 955 P.2d at 6 (finding that "plaintiff and her counsel had an affirmative duty to preserve relevant evidence <u>within their control</u>") (emphasis added)). Accordingly, Defendants' Motion is denied without

---

[5] Rule 803(24) has been transferred to Rule 807. *See.* Fed. R. Evid. 803 advisory committee's note ("The contents of Rule 803(24) and Rule 804(b)(5) have been combined and transferred to a new Rule 807. This was done to facilitate additions to Rules 803 and 804. No change in meaning is intended.").

prejudice.

**15.** __Doc. 207__

In this Motion in Limine, Defendants argue that the Court should "bar Plaintiffs' liability expert Alan Cantor from testifying regarding an alleged 'Volvo study' about which he has no personal knowledge and which he failed to disclose until his rebuttal report." (Doc. 207 at 1). Specifically, Defendants argue that that the Volvo Study was "conducted by Volvo car company in which Volvo purportedly 'conducted a series of inverted drop tests (more severe than an inverted roll) and measured seat belt excursion of a dynamic test dummy's movement in a 3-point seat belt . . . .'" (*Id.* at 1-2) (alteration in original)). Defendants also provide that they have "no objection to Cantor testifying about his own testing and results, which were allegedly consistent with the Volvo study." (Doc. 207 at 3).

Plaintiffs represent that Mr. Cantor relied on the Volvo study when forming his opinions and that it will be offered to demonstrate general principles of kinematics in rollover accidents and how restraint systems can and should be designed to minimize vertical excursion in rollover accidents. (Doc. 265 at 2-3). Moreover, Defendants concede that Mr. Cantor testified that "he validated the results of the Volvo study with a test program that he ran and for which he could provide supporting data." (Doc. 207 at 3). Thus, at this time, the Court finds that the Volvo test appears to be sufficiently reliable and relevant to the facts in this case for the jury to consider it. Accordingly, Defendants' Motion is denied without prejudice.

**16.** __Doc. 208__

In this Motion in Limine, Defendants argue that the Court should bar "Plaintiffs' expert Brian Benda, Ph.D. from testifying to facts, conclusions, and opinions contained in his 'Clarifying Addendum.'" (Doc. 208 at 1). Specifically, Defendants provide that Plaintiffs' expert disclosure deadline was April 13, 2018; Plaintiffs disclosed Dr. Benda and produced his expert report on April 13, 2018; Defendants deposed Dr. Benda on June 28, 2018, at which Dr. Benda testified that he had no opinion regarding whether an

alternative ROPS alone would have prevented the injury; and on August 1, 2018, Plaintiffs produced a "Clarifying Addendum" from Dr. Benda, in which he rendered an opinion regarding whether an alternative ROPS alone would have prevented the injury. (*Id.* 2-3).

Plaintiffs contend that, upon review of the Dr. Benda's transcript, which was obtained on July 19, 2018, Dr. Benda realized that the testing he had performed and produced to the Defendants provided an answer to the hypothetical question posed. In other words, Plaintiffs argue that Dr. Benda's August 1, 2018 Clarifying Addendum is simply Dr. Benda clarifying his answer to this hypothetical question and identifying the previously disclosed data that supported that opinion. (Doc. 250 at 2).

Rule 26(a)(2) requires parties to produce a written report by each expert witness that includes "a complete statement of all opinions to be expressed [by that witness] and the basis and reasons therefor." This report must be "detailed and complete" and state "the testimony the witness is expected to present during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26 advisory committee's note. A party that fails to disclose expert testimony in compliance with these rules may not present the expert's testimony at trial unless the failure to disclose was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

Rule 26(e)(1) permits, indeed requires, that an expert supplement his or her report and disclosures in certain limited circumstances. Those circumstances are when the party or expert learns the information previously disclosed is incomplete or incorrect in some material respect. *See* Fed. R. Civ. P. 26(e); *Collinge v. IntelliQuick Delivery, Inc.*, 2017 WL 3887337, at *2 (D. Ariz. Sept. 6, 2017). Supplementation, however, is "not intended to provide an extension of the expert designation and report production deadlines" and may not be used for this purpose. *Metro Ford Truck Sales, Inc. v. Ford Motor Co.,* 145 F.3d 320, 324 (5th Cir. 1998). Permissible supplementation under the Rules instead "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998). Parties should, and are required to, provide

additional or corrective information for an expert's opinions, but they cannot submit reports "significantly different from the original reports and, in affect, alter[] their theories." *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003).

After reviewing the Dr. Benda's Clarifying Addendum in conjunction with his deposition testimony and expert report, the Court concludes that the Clarifying Addendum is a permissible supplementation. Accordingly, Defendants' Motion is denied without prejudice.

### 17. <u>Doc. 211</u>

In this Motion in Limine, Defendants argue that the Court should bar "Plaintiffs' expert Guy Fried, M.D. from testifying to facts, conclusions, and opinions contained in his Addendum Report. (Doc. 211 at 1). Specifically, Defendants provide that Plaintiffs' expert disclosure deadline was April 13, 2018; Plaintiffs disclosed Dr. Fried and produced is expert report on August 29, 2017; Defendants deposed Dr. Fried on July 11, 2018; and on July 30, 2018, Plaintiffs produced an "Addendum Report" from Dr. Fried, which for the first time addresses Mr. Thompson's medical bills. (*Id.* 2 -3). Plaintiffs contend that Dr. Fried's August 27, 2017 Report specifically provided "that all of Mr. Thompsons' [sic] medical services to date were both necessary and reasonable." (Doc. 252 at 1). Plaintiffs further provide that "[m]ore than a week before Dr. Fried's deposition, Plaintiffs produced to the [D]efendants a copy of Dr. Fried's entire expert file, which included three CDs of Mr. Thompson's accident-related medical and billing records and a summary of the same that had been reviewed by Dr. Fried to date." (*Id.*)

As discussed above, Rule 26(e)(1) permits, indeed requires, that an expert supplement his or her report and disclosures in certain limited circumstances. Those circumstances are when the party or expert learns the information previously disclosed is incomplete or incorrect in some material respect. *See* Fed. R. Civ. P. 26(e). The Court finds that Dr. Fried's Addendum Report is an impermissible supplementation and therefore he cannot testify to the facts, conclusions, and opinions contained in his Addendum Report. In his Addendum Report, Dr. Fried opines that:

[t]he acute and rehabilitative in-patient care provided was essential and those costs were reasonable. [St. Joseph's Hospital Medical Center and Rehabilitation Institute of Chicago.] Further, the charges for emergency transportation, equipment, medications, medical diagnostic tests, physician charges and in-home care were necessary and reasonable. Additional emergent hospital charges were likewise necessary and reasonable. . . In 2015, it was reported (SCIMS) that the average first year cost of treatment for a high tetraplegic was $1,064,716. In my experience, these published estimates are on the low-side (average) because they do not account for a variety of factors including the actual charges, out-of-pocket expenses and variability of levels of care and costs in different geographic regions of the country. In my experience, the ordinary costs of care for a C-5/C-6 quadriplegic with expected medical complications and extensive rehabilitation in-patient care in major metropolitan communities has, over the past several years, ranged from $1.5 to $2 Million Dollars in the first 2 years post-injury. And, certainly, Mr. Thompson's past costs of care are in align with these typical expenses.

Finally, as previously mentioned, the Life Care Plan provides for reasonable and necessary costs of care that in my opinion Mr. Thompson will need for the rest of his life.

(Doc. 211-4 at 1-2). The <u>only</u> reference to the reasonableness of Mr. Thompson's medical costs in Dr. Fried's Report was his opinion that "[t]he medical services provided to date have been reasonable and necessary in relation to the patient's injury and accident occurring on 2/19/2014." (Doc. 211-2 at 15). The Court finds that Dr. Fried's Addendum Report offers new and expanded opinions and discussion that were not contained in his prior Report or discussed at his deposition, and therefore exceeds the bounds of permissible supplementation and must be excluded.

Plaintiffs further argue that if "the Court views the disclosure as untimely . . . the Court [should] exercise its discretion and allow for this supplementation" and that the "late disclosure is harmless[.]" (Doc. 252 at 3). The Court disagrees. Rule 37(c)(1) requires that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1); *see also Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir.

2005) (exclusion of evidence from a witness that was not timely disclosed unless substantial justification for failure to timely disclose is shown, and the failure is not harmless). Plaintiffs have not met these requirements. Therefore, Dr. Fried's testimony will be limited to the scope of his August 29, 2017 Report and July 11, 2018 deposition. Accordingly, Defendants' Motion is granted.

### 18. <u>Doc. 212</u>

In this Motion in Limine, Defendants argue that the Court should exclude "all graphic photographs depicting [Mr.] Thompson's . . . injuries that he allegedly sustained in this case. (Doc. 212 at 1). Specifically, Defendants have moved to exclude photos (Docs. 212-1, 212-2, 212-3, 212-4, 212-5, 212-6, 212-7, 212-8, 212-9, 212-10, 212-11, and 212-12) that they argue are irrelevant and because the danger of unfair prejudice substantially outweighs any probative value. Plaintiffs contend that Defendants' motion is "predicated upon an inaccurate characterization of the photographs at issue and the highly relevant importance of these photos." (Doc. 253 at 1).

Under Rule 401, evidence is relevant if it has any tendency to make the existence of a fact of consequence more or less probable. However, pursuant to Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of unfair prejudice. The Court finds Defendants' arguments regarding the admissibility of the photos to be unpersuasive. Here, most of the photos depict the Polaris RZR and its positioning after the incident, the positioning of Mr. Thompson after incident, and the features of the terrain. Thus, the Court finds these photos to be relevant and that the probative value is not substantially outweighed by the risk of unfair prejudice. However, since the nature of Mr. Thompson's injuries is uncontested, the photographs of Mr. Thompson in his hospital bed following the incident (Doc. 212-9 and 212-10) are irrelevant to Plaintiffs' claims or Defendants' defenses. Accordingly, Defendants' Motion is denied in part and granted in part as follows: Docs. 212-1, 212-2, 212-3, 212-4, 212-5, 212-6, 212-7, 212-8, 212-11, and 212-12, subject to proper foundation, are admissible; and Doc. 212-9 and 212-10 are irrelevant, and therefore inadmissible.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motions in Limine (Docs. 186, 187, 188, 189, 206, 209, 210, 213, 215, 216, 217, 218, 221, 223, 225, and 227) and Defendants' Motions in Limine (Docs. 190, 194, 196, 200, 201, 202, 205, 207, and 208) are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' Motions in Limine (Docs. 203, 204, 224, and 226) and Defendants' Motions in Limine (Docs. 192, 193, 198, and 211) are **GRANTED**.

**IT IS FINALLY ORDERED** that Defendants' Motions in Limine (Doc. 191, 195, 197, 199, and 212) are **GRANTED in part** and **DENIED in part** as set forth in this Order.

Dated this 17th day of May, 2019.

Honorable Diane J. Humetewa
United States District Judge